ERIC D. HOUSER (SBN 130079)
HOUSER & ALLISON
A Professional Corporation
9970 Research Drive
Irvine, California 92618
Telephone:   (949) 679-1111
Facsimile:    (949) 679-1112

Attorneys for Defendants,
BNC MORTGAGE, LLC, erroneously sued
herein as BNC MORTGAGE, INC.

ORIGINAL
FILED

JAN 18  AM 10: 48

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

SC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

JIM E. MOORE,

Plaintiffs,

v.

CHASE BANK; BNC MORTGAGE,
INC.; NDEx West LLC; STIRLING
FUNDING CORPORATION; KEVIN
CAYLOR; and DOES 1-20,

Defendants.

Case No. C08 0350

**NOTICE OF REMOVAL OF
ACTION BASED UPON FEDERAL
QUESTION**

**[28 U.S.C. § 1441(a)]**

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Defendant BNC MORTGAGE, LLC,

erroneously sued herein as BNC MORTGAGE, INC. ("BNC"), hereby removes to

this Court the above-captioned action described further below:

1.    A complaint was filed in the Contra Costa Superior Court on or about

January 4, 2008, entitled Jim E. Moore v. Chase Bank, et al., Case No. C0800040

("State Court Action").  Copies of the summons, complaint and pleadings filed

and served to date, with a copy of the Court Docket in the State Court Action are attached hereto collectively as **Exhibit "A"**.

2.    BNC was served and/or received the summons and complaint on or about January 7, 2008.

3.    BNC removes this case within 30 days of service, and within one year from the filing of the complaint.

4.    BNC has reviewed the docket in the State Court action and made inquiry concerning the other named defendants.  At the time of this removal, the docket does not reflect appearances by the defendants and Ocwen has not received any objection to the instant removal.  Accordingly, this removal is submitted without formal joinder by the other defendants at this time.

5.    This action is removable to the instant Court because it could have originally been filed in this Court pursuant to the jurisdiction conferred by 28 U.S.C. § 1334(b).  This action could have also been originally filed in this Court pursuant to 28 U.S.C. § 1441(a) because substantial federal questions are alleged and presented in the complaint, and thus jurisdiction exists as conferred by 28 U.S.C. § 1331. Supplemental jurisdiction exists with respect to any remaining claims pursuant to 28 U.S.C. § 1367.

6.    Plaintiff's complaint is based upon and alleges violations of four separate Federal Acts: (1) the Truth in Lending Act ("TILA") 15 U.S.C. §§ 1601, et seq. and corresponding Regulation Z C.F.R. §§ 3500.1 et seq.; (2) the Fair Debt

I:\CIVIL\AURORA LOAN SERVICES\Moore (42262)\Fld\NORFED.doc

1  Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et. seq.; (3) the Real

2
3  Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et. seq.; and (4)

4  the Homeowner's Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1602, et seq.

5  (Cplt. ¶¶ 6,18,19, 22, 23, 26, 28, 32, 33, 36, 43, 54, 60, 69, 72; Exhs. "2", "3",

6
7  "4").  Plaintiff alleges and prays for remedies based upon violations of these

8  Federal Acts, including but not limited to a rescission of the subject loan pursuant

9  to TILA.  (Cplt., prayer ¶ 4, Exh. "4").  Plaintiff's right to relief, if any, under

10
11  these Federal Acts depends upon the resolution of substantial questions of Federal

12  Law and confers federal jurisdiction.

13      7.      Accordingly, this action is properly removed to this Court pursuant to

14
15  28 U.S.C. § 1441(a) regardless of any diversity of citizenship or amount in

16  controversy.

17  DATED: January 17, 2008                    HOUSER & ALLISON
                                               A Professional Corporation
18

19

20                                             Eric D. Houser
                                               Attorneys for Defendants,
21                                             BNC MORTGAGE, LLC,
                                               erroneously sued herein as BNC
22                                             MORTGAGE, INC.

23

24

25

26

27

28

I:\CIVIL\AURORA LOAN SERVICES\Moore (42262)\Pld\NORFED.doc

Westlaw.

CIVMSC08-00040                                                      Page 1


TO ORDER COPIES OF ANY DOCUMENTS LISTED BELOW, CALL WESTLAW COURTEXPRESS
          1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply).


This docket is current through 01/15/2008

Dockets - CALIFORNIA - CONTRA COSTA COUNTY

CASE INFORMATION


Case Title:            MOORE v. CHASE BANK ET AL.
Court:                 SUPERIOR COURT, CONTRA COSTA COUNTY
Division:              MARTINEZ
Case Number:           CIVMSC08-00040
Case Type:             CIVIL
Case Subtype:          OTHER REAL PROPERTY/QUIET TITLE
Date Filed:            01/04/2008


PARTICIPANT INFORMATION


Name:                  JIM E MOORE
Type:                  PLAINTIFF
Status:                FIRST PAPER FEE PAID
Participant ID:        1
Attorney:              THOMAS SPIELBAUER
Attorney Address:      1250 OAKMEAD PARKWAY, STE. 210
                       SUNNYVALE, CA 94085
Attorney Phone:        408-451-8499


Name:                  CHASE BANK
Type:                  DEFENDANT
Status:                SERVE REQUIRED (WAITS)
Participant ID:        2

Name:                  BNC MORTGAGE, INC.
Type:                  DEFENDANT
Status:                SERVED 01/07/2008
Participant ID:        3

Name:                  NDEX WEST, LLC.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

**EXHIBIT "A"**

CIVMSC08-00040                                        Page 2

```
Type:                   DEFENDANT
Status:                 SERVED 01/07/2008
Participant ID:           4

Name:                   STIRLING FUNDING CORPORATION
Type:                   DEFENDANT
Status:                 SERVE REQUIRED (WAITS)
Participant ID:           5

Name:                   KEVIN CAYLOR
Type:                   DEFENDANT
Status:                 SERVE REQUIRED (WAITS)
Participant ID:           6
```

COMPLAINT INFORMATION

| Complaint Date: | Disposition or Status: | Disposition Date: | Description: |
|---|---|---|---|
| 01/04/2008 | ACTIVE | -- | Complaint Number: 1<br>Complaint Type:<br>COMPLAINT |

CALENDAR INFORMATION

| Date/Time: | Description: | Location: | Judge: |
|---|---|---|---|
| 05/22/2008 8:30 AM | Event: CASE MANAGEMENT CONFERENCE | Department: 16 | |
| 01/25/2008 8:30 AM | Event: SPECIAL SET HEARING ON: ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION SET BY JIM E. MOORE | Department: 16 | |

DOCKET PROCEEDINGS

| Date: | Entry #: | Description: | Date Docketed: | Party: |
|---|---|---|---|---|

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

**EXHIBIT "A"**

05/22/2008                    **Docket Entry:** CASE MANAGEMENT
                              CONFERENCE  **Date:** 05/22/2008  **Time:**
                              8:30 AM  **Dept.:** 16


                              Send Runner to the Court


03/10/2008                    **Docket Entry:** CHECK FOR PROOF OF
                              SERVICE  **Disposition:** VACATED  **Date:**
                              03/10/2008  **Time:** 7:00 AM  **Dept.:** 16


                              Send Runner to the Court


02/21/2008                    **Docket Entry:** CHECK FOR REQUEST FOR
                              ENTRY OF DEFAULT  **Date:** 02/21/2008
                              **Time:** 7:00 AM  **Dept.:** 16


                              Send Runner to the Court


01/25/2008                    **Docket Entry:** SPECIAL SET HEARING ON:
                              ORDER TO SHOW CAUSE RE PRELIMINARY
                              INJUNCTION SET BY JIM E. MOORE  **Date:**
                              01/25/2008  **Time:** 8:30 AM  **Dept.:** 16


                              Send Runner to the Court


01/11/2008                    **Docket Entry:** DECLARATION OF THOMAS
                              SPEILBAUER, ESQ FILED RE: SERVICE OF
                              SUMMONS , COMPLAINT AND SUPPORTING
                              DOCUMENTS  **Date:** 01/11/2008


                              Send Runner to the Court


® 2008 Thomson/West. No Claim to Orig. US Gov. Works.

**EXHIBIT "A"**

CIVMSC08-00040                                                              Page 4

01/10/2008                **Docket Entry:** PROOF OF PERSONAL
                          SERVICE FILED ON COMPLAINT OF JIM
                          MOORE AS TO BNC MORTGAGE, INC. WITH
                          SERVICE DATE OF 01/07/08 **Date:**
                          01/10/2008


                          Send Runner to the Court


01/08/2008                **Docket Entry:** PROOF OF PERSONAL
                          SERVICE FILED ON COMPLAINT OF JIM
                          MOORE AS TO NDEX WEST, LLC. WITH
                          SERVICE DATE OF 01/07/08 **Date:**
                          01/08/2008


                          Send Runner to the Court


01/07/2008                **Docket Entry:** CLERK`S TICKLER TO
                          CHECK FOR REQUEST FOR ENTRY OF
                          DEFAULT WAS SET FOR 2/21/08 AT 7:00
                          IN DEPT. 16 **Date:** 01/07/2008


                          Send Runner to the Court


01/04/2008                **Docket Entry:** SPECIAL SET HEARING WAS
                          SET FOR 1/25/08 AT 8:30 IN DEPT. 16
                          **Date:** 01/04/2008


                          Send Runner to the Court


01/04/2008                **Docket Entry:** ORDER TO SHOW CAUSE AND
                          TEMPORARY RESTRAINING ORDER FILED
                          **Date:** 01/04/2008


                          Send Runner to the Court


© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

**EXHIBIT "A"**

| 01/04/2008 | **Docket Entry:** DECLARATION RE: ADVANCE NOTICE FILED BY JIM E. MOORE  **Date:** 01/04/2008 |
|---|---|

Send Runner to the Court

| 01/04/2008 | **Docket Entry:** CASE ENTRY COMPLETE **Date:** 01/04/2008 |
|---|---|

Send Runner to the Court

| 01/04/2008 | **Docket Entry:** ORIGINAL SUMMONS ON COMPLAINT OF JIM MOORE FILED  **Date:** 01/04/2008 |
|---|---|

Send Runner to the Court

| 01/04/2008 | **Docket Entry:** COLOR OF FILE IS PINK **Date:** 01/04/2008 |
|---|---|

Send Runner to the Court

| 01/04/2008 | **Docket Entry:** EX-PARTE APPLICATION FOR FOR TRO AND OSC RE PRELIMINARY INJUNCTION FILED BY JIM E MOORE **Date:** 01/04/2008 |
|---|---|

Send Runner to the Court

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

**EXHIBIT "A"**

CIVMSC08-00040                                                          Page 6

01/04/2008              **Docket Entry:** EX-PARTE APPLICATION
                        FOR TRO AND OSC RE PRELIMINARY
                        INJUNCTION FILED BY JIM E MOORE
                        **Date:** 01/04/2008


                        Send Runner to the Court


01/04/2008              **Docket Entry:** COMPLAINT FILED.
                        SUMMONS IS ISSUED  **Date:** 01/04/2008


                        Send Runner to the Court


01/04/2008              **Docket Entry:** CASE HAS BEEN ASSIGNED
                        TO DEPT. 16  **Date:** 01/04/2008


                        Send Runner to the Court


01/04/2008              **Docket Entry:** CASE MANAGEMENT
                        CONFERENCE WAS SET FOR 5/22/08 AT
                        8:30 IN DEPT. 16  **Date:** 01/04/2008


                        Send Runner to the Court


01/04/2008              **Docket Entry:** CLERK`S TICKLER TO
                        CHECK FOR PROOF OF SERVICE WAS SET
                        FOR 3/10/08 AT 7:00 IN DEPT. 16
                        **Date:** 01/04/2008


                        Send Runner to the Court


TO ORDER COPIES OF ANY DOCUMENTS LISTED ABOVE, CALL WESTLAW COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply).

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

**EXHIBIT "A"**

Thomas Spielbauer, Esq.
SBN 78281
THE SPIELBAUER LAW FIRM
1250 Oakmead Parkway, Suite 210
Sunnyvale, CA 94085
(408)451-8499
Fax: (610)423-1395
thomas@spielbauer.com

Attorneys for Jim E. Moore, Plaintiff



## IN THE SUPERIOR COURT
## OF THE STATE OF CALIFORNIA
## CONTRA COSTA COUNTY

|  |  |
|---|---|
| JIM E. MOORE,<br><br>               Plaintiff.<br><br>v.s.<br><br>CHASE BANK; BNC MORTGAGE, INC.; NDEx West LLC; STIRLING FUNDING CORPORATION; KEVIN CAYLOR; and DOES 1-20,<br><br>               Defendants. | No:  C 08-00040<br><br>ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER<br><br>Code Civ.Proc. § 527(a) |

On reading the verified complaint of plaintiff, declaration of counsel, and the papers on file in the above-entitled action, it appears to the satisfaction of the court that this is a proper case for granting a temporary restraining order and an order to show cause for a preliminary injunction, and that, unless the temporary restraining order prayed for be granted, great or irreparable injury will result to plaintiff before the matter can be heard on notice.

IT IS HEREBY ORDERED that the above-named defendants, and each of them, appear in Department 16 of this Court, located the Wakefield Taylor Courthouse, 725 Court Street, Martinez CA 94553, on 1/26/08, at 8:30am, or as soon thereafter as the matter may be heard, then and there to show cause, if any they have, why they and their agents, servants, employees,

-1-

EXHIBIT "A"

1  and representatives should not be enjoined and restrained during the pendency of
2  this action from engaging in, committing, or performing, directly or indirectly,
3  any and all of the following acts:  Undertaking or permitting actions of any kind
4  which shall cause the auction or foreclosure sale of the residence located at 1258
5  Duffy Drive, Brentwood, CA 94513 under authority of a trust deed recorded with
6  the Contra Costa County Recorder;  From undertaking or permitting actions of
7  any kind which shall cause the sale of or the passing of title to the property of
8  1258 Duffy Drive, Brentwood, CA 94513 during the pendency of this action;
9  From the reporting of any kind of derogatory information concerning the sale and
10  the plaintiff during the pendency of this action.

11      Defendants CHASE BANK, BNC MORTGAGE CORPORATION and
12  NDEx West LLC,  and their agents, servants, and employees are hereby restrained
13  and enjoined, pending a hearing for a preliminary injunction, from undertaking or
14  permitting any actions of any kind which shall cause the sale or foreclosure sale
15  or passing or slander of title of the residence located at 1258 Duffy Drive,
16  Brentwood, CA 94513.  Defendants CHASE BANK, BNC MORTGAGE
17  CORPORATION and  NDEx West LLC are further enjoined from undertaking
18  any action to effect an assignment of rents or hinder plaintiff's ability to manage
19  his property or enjoy the fruits of his property.

20      This temporary restraining order shall remain in full force and effect until a
21  preliminary injunction hearing is held in this matter by this court or the Federal
22  District Court or the United States Bankruptcy Court should this matter be
23  removed.

24      Defendants are further enjoined from undertaking any action which will
25  hinder or interfere or slander plaintiff's ability to manage his property or enjoy
26  the fruits of their property.

27      The defendants shall file their response to this order to show cause by no
28  later than ___1/17/08___.  Plaintiffs shall file their reply to defendants'

-2-

**EXHIBIT "A"**

1  response by no later than ___1/22/08___. ~~Both parties shall serve~~
2  ~~courtesy copies to Department __.~~ Both parties may serve each other by
3  confirmed email or confirmed fax.
4       As a part of any response, defendants shall submit a detailed an itemized
5  accounting with supporting documentation of the amounts they are demanding as
6  reinstatement of the trust deed note on the property of 3903 Whitney Avenue,
7  Sacramento, CA 95821.  Such documentation will supply all documentation
8  relevant to justify the fees and amounts they are demanding.
9       In order to insure that the preliminary injunction hearing is held and
10 sufficient information is presented whereby this court can make an informed
11 decision as to whether it should issue a preliminary injunction in light of the
12 plaintiff's allegations in his verified complaint, defendants Defendants CHASE
13 BANK, BNC MORTGAGE CORPORATION and  NDEx West LLC shall
14 furnish as a part of their response the following documentation to counsel for
15 plaintiff: any Loan Submission forms for plaintiff's September 2004 Loan,
16 Transmittal Form (#1008), Document Order Form, Initial Loan Application ( #
17 1003),  Final Loan Application (#1003),  Property  Appraisal, Loan Benefit
18 Analysis, Underwriter's Worksheet, BNC's and Chase's  Mortgage Loan Credit
19 Guidelines, Underwriting Guidelines, All documents regarding the sale or
20 attempted sale of the loan to investors and any subsequent repurchase, all
21 documents pertaining to the securitization or attempted securitization of this loan,
22 Yield Spread Premiums earned in this matter, by the brokers or through the sale
23 to investors of this Moore loan, and Commissions and or Premiums paid to BNC
24 Mortgage Corporation and Chase Bank Employees or any of their successors
25 from this loan event.
26 //
27 //
28

-3-

**EXHIBIT "A"**

1       IT IS FURTHER ORDERED that copies of the complaint, declaration, and

2   this order to show cause and temporary restraining order be served on defendants

3   not later than ~~JAN 7, 2008~~ ~~Such service may be effected upon defendants by~~

4   ~~United States Express Mail.~~

5       IT IS FURTHER ORDERED that copies of the complaint, declaration, and

6   this order to show cause and temporary restraining order be served on defendants

7   not later than JAN 7, 2008

8   Dated: January 4, 2008

9

10   _____

11   Judge of the Superior Court

12   Judith S. Craddick

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "A"**

Thomas Spielbauer, Esq.
SBN 78281
THE SPIELBAUER LAW FIRM
1250 Oakmead Parkway, Suite 210
Sunnyvale, CA 94085
(408)451-8499
Fax: (610)423-1395
thomas@spielbauer.com

Attorneys for Jim E. Moore, Plaintiff

**IN THE SUPERIOR COURT**
**OF THE STATE OF CALIFORNIA**
**CONTRA COSTA COUNTY**

| | |
|---|---|
| JIM E. MOORE,<br><br>                              Plaintiff.<br><br>v.s.<br><br><br><br>CHASE BANK; BNC MORTGAGE,<br>INC.; NDEx West LLC; STIRLING<br>FUNDING CORPORATION; KEVIN<br>CAYLOR; and DOES 1-20,<br><br>                              Defendants. | No:<br><br>DECLARATION RE: ADVANCE<br>NOTICE |

I, Thomas Spielbauer, do hereby declare.

I am an attorney at law duly admitted to practice before all the courts of the State of California and the attorney of record herein for the plaintiff, Jim Moore, in the above-described action.

On December 31, 2007, I mailed a 13 page letter via United States overnight mail to defendant Chase Home Finance in care of Edwina Costella. I sent this exact same letter to each of the other recipients. The mail was sent to P.O. Box 78116, Phoenix, AZ 85034. The address of Chase Home Finance is 1820 E.Sky Harbor Cir. So. #AZ12175, Phoenix, AZ. The United States Post Office assigned this letter a tracking number of EB090054075US. I also faxed a copy of this letter to Ms. Costello at (877)287-7559 and received a fax

-1-

**EXHIBIT "A"**

confirmation of delivery. The United States Postal web site (www.usps.gov)
reports that this letter was delivered to the Chase Bank Building on January 2,
2008 at 11:02 a.m. and was signed for by D. Roberts.

On December 31, 2007, I mailed the same letter via United States overnight
mail to defendant NDEx West LLC. NDEx is the trustee in this matter. This
letter was sent to NDEx West LLC at its address of 15000 Surveyor Blvd # 500,
Addison, TX 75001. I also faxed a copy of this letter to NDEx at (972)661-7800
and received a fax confirmation of delivery. I further emailed a copy of this letter
to NDEx West LLC to its email address of rein@ndexwest.com. The United
States Post Office assigned this letter a tracking number of EB090054061US.
The United States Postal web site (www.usps.gov) reports that this letter was
delivered to NDEx on January 3, 2008 at 7:50 a.m. and was signed for by W.
Buchanan.

On December 31, 2007, I mailed the same letter via United States overnight
mail to the law firm of Barrett, Burke, Wilson, Castle, and Daffin. The letter was
to the attention of Christie. This letter was sent to Christie at the firm's address
of 15000 Surveyor Blvd # 100, Addison, TX 75001. I also faxed a copy of this
letter to Christie at (972)386-7673 and received a fax confirmation of delivery.
The United States Post Office assigned this letter a tracking number of
EB090056221US. The United States Postal web site (www.usps.gov) reports
that this letter was delivered to Barrett, Burke, Wilson, Castle, and Daffin on
January 3, 2008 at 7:50 a.m. and was signed for by W. Buchanan.

On December 31, 2007, I mailed the same letter via United States overnight
mail to defendant BNC Mortgage, Inc. to its address of 1901 Main Street
Irvine, CA 92614. BNC was the mortgage originator in September 2004. This is
the address which BNC Mortgage used in its loan documentation. BNC
Mortgage does not have an agent for the service of process in California. I also
faxed this same letter to BNC at (877)553-4058 and received a fax confirmation

-2-

**EXHIBIT "A"**

1  of delivery.   The United States Post Office assigned the letter a tracking number

2  of EB090056249US on December 31st.  The United States Postal web site

3  (www.usps.gov) reported on January 2, 2008 that the letter was undeliverable to

4  this address.

5       On December 31, 2007, I mailed the same letter via United States overnight

6  mail to defendant Stirling Funding Corporation, 1800 Thibodo Road #300, Vista,

7  CA 92083.  I also faxed a copy of this letter to Sterling at (760)860-9829 and

8  received a fax confirmation of delivery.  Sterling was the mortgage broker for the

9  September 2004 loan.   The United States Post Office assigned the letter a

10  tracking number of  EB090054058US.  United States Postal web site

11  (www.usps.gov) reported on January 2, 2008 that the letter was undeliverable to

12  this address.

13       On December 31, 2007, I mailed the same letter via United States overnight

14  mail to defendant Kevin Caylor in care of Stirling Funding Corporation, 26391

15  Crown Valley Pky, Ste.220, Mission Viejo, CA 92691.  I also faxed a copy of this

16  letter to Sterling at (760)860-9829 and received a fax confirmation of delivery.

17  Sterling and Caylor were the mortgage brokers for the September 2004 loan.

18  The United States Post Office assigned the letter a tracking number of

19  EB090056235US .  United States Postal web site (www.usps.gov) reported on

20  January 2, 2008 that the letter was undeliverable to this address.

21       In the letter, I discussed the legal issues of Mr. Moore's cause of action.

22  As it pertains to the issue of advanced notification, I wrote on page 13 the

23  following admonition:

24  //

25  //

26

27

28

-3-

EXHIBIT "A"

1   In anticipation of the need for litigation, I hereby provide you the following, and required, notice. Unless the trustee sale is
2   postponed, I intend to approach the Superior Court with an exparte application that the court issue a temporary restraining order
3   prohibiting the sale set for January 7, 2008 at 1:30 p.m. and an injunction prohibiting the sale generally. I will approach the Contra
4   Costa Superior Court on **Friday, January 4, 2008 at 1:30 p.m.** on an exparte basis in **Department 60** seeking a temporary restraining
5   order prohibiting the sale. The Superior Court is located at the same location as is the scheduled foreclosure sale which is set for the
6   following Monday. The Courthouse is located at **649 Main Street, Martinez CA 94553.**
7
8       Please provide to me a telephone number to which I can verbally advise you of the department and time. Please also provide
9   me a fax number to where this information and notice can be faxed. **You should immediately forward this letter to your legal counsel,**
10  particularly if you are inclined to not postpone the foreclosure sale.

11  On January 3, 2008, I telephoned Edwina Costello and left a voicemail

12  requesting that she advise me as to Chase's position concerning my letter of

13  December 31st and the TRO. She never responded to my telephone call.

14      As of the signing of this declaration in the morning of Friday, January 4,

15  2008, I have received no communication of any kind from CHASE, NDEx, BNC,

16  Sterling Funding, nor Kevin Caylor in regards to my letter of December 31, 2007,

17  my request for a postponement, nor my notification concerning a TRO.

18      I declare under penalty of perjury that the foregoing is true and correct to

19  the best of my knowledge and information. Executed in San Jose, California this

20  January 4, 2008.

21

22

23  Thomas Spielbauer
    Attorney for Plaintiff

24

25

26

27

28

-4-

Thomas Spielbauer, Esq.
SBN 78281
THE SPIELBAUER LAW FIRM
1250 Oakmead Parkway, Suite 210
Sunnyvale, CA 94085
(408)451-8499
Fax: (610)423-1395
thomas@spielbauer.com

Attorneys for Jim E. Moore, Plaintiff

**IN THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA
CONTRA COSTA COUNTY**

| | |
|---|---|
| JIM E. MOORE, <br><br> Plaintiff. <br><br> v.s. <br><br> CHASE BANK; BNC MORTGAGE, INC.; NDEx West LLC; STIRLING FUNDING CORPORATION; KEVIN CAYLOR; and DOES 1-20, <br><br> Defendants. | No: C08 00040 <br><br> EX PARTE APPLICATION OF JIM MOORE FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; CERTIFICATION RE: NOTICE |

Plaintiff Jim Moore applies for a temporary restraining order restraining defendants Chase Bank, BNC Mortgage Corporation, NDEx West LLC, their agents, servants, and employees, from conducting a trustee's sale of the plaintiff's home located at 1258 Duffy Drive, Brentwood, CA 94513. This trustee's sale is currently scheduled for Monday, January 7, 2008 at 1:30 p.m. at the courthouse steps located at 725 Court Street, Martinez, CA.

Plaintiff JIM MOORE further applies for an order to show cause why a preliminary injunction should not be granted enjoining defendants and their agents, servants, and employees from conducting any kind of foreclosure sale or alienation or transfer or attempted transfer of title and ownership of the property located at 1258 Duffy Drive, Brentwood, CA 94513 during the pendency of this action.

-1-

**EXHIBIT "A"**

1    This application is made on the grounds that plaintiff's complaint

2    demonstrates that he is entitled to the relief demanded, and on the ground that

3    great and irreparable injury will result to plaintiff before the matter can be

4    decided without the imposition of a restraining order. Additionally, a declaratory

5    judgment which is in the plaintiff's favor will be rendered ineffectual by a

6    foreclosure sale of plaintiff's property. Pecuniary compensation will not afford

7    adequate relief, particularly in light of the fact that it would be extremely difficult

8    to ascertain the amount of compensation which could afford adequate relief. The

9    property located at 1258 Duffy Drive, Brentwood, CA 94513 is a three bedroom

10    and two bath home in which plaintiff and his family lives. The plaintiff and his

11    wife and three children reside in this home and have resided there since 2002.

12    Restraint of the sale is necessary if a declaratory judgment is to have any effect

13    and accomplish its purpose of avoiding a multiplicity of litigation.

14    This application is based on the verified complaint on file in this case, on

15    the attached memorandum of points and authorities.

16    Dated: January 4, 2008

17

18

19    _____
      Thomas Spielbauer
20    Attorney for Plaintiff

21

22

23

24

25

26

27

28

-2-

EXHIBIT "A"

## MEMORANDUM OF POINTS AND AUTHORITIES

Under California Civil Code §2924 et seq., a lender must properly serve and record a notice of default setting forth the borrower's breach in order to effect a foreclosure. After 90 days, three months, have elapsed, the lender must thereafter properly serve and record the Notice of Trustee Sale at least 20 days prior to the actual sale. Assuming proper compliance with the law, the property is then auctioned to the highest bidder at the foreclosure sale.

California foreclosure law, which is nonjudicial in its entirety, was intended to reflect a fair balance of the respective interests of the trustors, the trustees and the beneficiaries. While beneficiaries want an inexpensive and speedy remedy for defaults, trustors need protection against the loss of their property rights. This is particularly true since the entire foreclosure process occurs without judicial oversight.[1] The harshness of non-judicial foreclosure has been recognized. "The exercise of the power of sale is a harsh method of foreclosing the rights of the grantor."[2]

The statutory requirements are intended to protect the trustor from a wrongful or unfair loss of the property[3], and a valid foreclosure by the private

---

[1] Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and Mortgages, Chapter 10 §10.179; *I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal. 3d 281.

[2] *Anderson v. Heart Federal Savings* (1989) 208 Cal.App.3d 202, 215, citing to *System Inv. Corporation v. Union Bank* (1971) 21 Cal.App.3d 137, 153.

[3] *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830; accord, *Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 503; *Lo Nguyen v. Calhoun* (6th District 2003) 105 Cal.App.4th 428, 440.

-3-

**EXHIBIT "A"**

1    power of sale requires ***strict compliance*** with the requirements of the statute.[4]  It

2    has been a cornerstone of foreclosure law that the statutory requirements,

3    intending to protect the trustor from a wrongful or unfair loss of the property,

4    must be complied with strictly.[5]  Close does not count.

5         As a result, any trustee's sale based on a statutorily deficient Notice of

6    Default is invalid.[6]  Additionally, any trustee's sale based on a statutorily

7    deficient Notice of Trustee Sale is invalid.[7]

8         The California Sixth District Court of Appeal observed, "Pursuing that

9    policy [of judicial interpretation], the courts have fashioned rules to protect the

10   debtor, one of them being that the notice of default will be strictly construed and

11   must correctly set forth the amounts required to cure the default."[8]  The same

12   reasoning applies to a notice of trustee sale.

13

_____

14      [4] Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and

15   Mortgages, Chapter 10 §10.179; *Anderson v. Heart Federal Sav. & Loan Assn.*,
     208 Cal. App. 3d 202, 211 (3d Dist. 1989), reh'g denied and opinion modified,
16   (Mar. 28, 1989); *Miller v. Cote* (4th Dist. 1982) 127 Cal. App. 3d 888, 894; *System
     Inv. Corp. v. Union Bank* (2d Dist. 1971) 21 Cal. App. 3d 137, 152-153; *Bisno v.*
17   *Sax* (2d Dist. 1959) 175 Cal. App. 2d 714, 720.

18

19      [5] Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and
     Mortgages, Chapter 10 §10.182.
20

21      [6] Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and
     Mortgages, Chapter 10 §10.182; *Anderson v. Heart Federal Sav. & Loan Assn.* (3d
22   Dist. 1989) 208 Cal. App. 3d 202, 211, reh'g denied and opinion modified, (Mar.
     28, 1989); *Miller v. Cote* (4th Dist. 1982) 127 Cal. App. 3d 888, 894; *System Inv.*
23   *Corp. v. Union Bank* (2d Dist. 1971) 21 Cal. App. 3d 137, 152-153; *Saterstrom v.*
     *Glick Bros. Sash, Door & Mill Co.*(3d Dist. 1931) 118 Cal. App. 379.
24

25      [7]*Anderson v. Heart Federal Sav. & Loan Assn.* (3d Dist. 1989) 208 Cal.
     App. 3d 202, 211, ,reh'g denied and opinion modified, (Mar. 28, 1989).
26

27      [8] *Sweatt v. The Foreclosure Co., Inc.* (1985 - 6th District) 166 Cal.App.3d 273 at 278,
28   citing to *Miller v. Cote* (1982) 127 Cal.App.3d 888, 894 and *System Inv. Corp. v. Union Bank*
     (1971) 21 Cal.App.3d 137, 152-153.

-4-

EXHIBIT "A"

1

2    In the case of *Anderson v. Heart Federal Savings*[9], Heart Federal Savings

3    initiated foreclosure proceedings against Anderson due to the fact that Anderson

4    fell behind in his payments. Heart noticed Anderson of the amount due, to

5    include principal and interest. Heart Federal later raised its demand to $40,000.

6    Anderson attempted to tender $25,000 which Heart Federal refused.

7        The appellate court set aside the resulting foreclosure sale in *Anderson v.*

8    *Heart Federal Savings*. The court was deeply disturbed by the gross

9    improprieties of the beneficiary, particularly in light of the comprehensive

10   legislative scheme dealing with non-judicial foreclosure sales in California. The

11   Appellate Court made the following, and very pointed, observations.

12         "The statutory requirements must be strictly
13         complied with, and a trustee's sale based on statutorily
           deficient notice of default is invalid. [Citations.] The
14         beneficiary is bound by its notice of default and cannot
           insist upon any grounds of default other than those
15         stated in that notice. [Citation.]"[10]

16         "The provisions of section 2924 of the Civil Code
           ... must be strictly followed. [Citation.] The person
17         relying upon the notice of default is bound by its
           provisions, and cannot insist upon any grounds of
18         default other than those stated in that notice.
           [Citations.]"[11]

19
           "The obligation of the beneficiary to provide the
20         trustor with an accurate accounting of the amounts due
           to cure a default is governed by statute."[12]

21

22   _____

23      [9] *Anderson v. Heart Federal Savings* (1989) 208 Cal.App.3d 202.

24      [10] *Anderson v. Heart Federal Savings* (1989) 208 Cal.App.3d 202, 211.

25      [11] *Anderson v. Heart Federal Savings* (1989) 208 Cal.App.3d 202, 211,
26   citing to *Bisno v. Sax* (1959) 175 Cal.App.2d 714, 720 and to *Tomczak v. Ortega*
     240 Cal.App.2d 902, 904 and to *System Inv. Corporation v. Union Bank* (1971)
27   21 Cal.App.3d 137, 152-153.

28      [12] *Anderson v. Heart Federal Savings* (1989) 208 Cal.App.3d 202, 215.

**EXHIBIT "A"**

> "Compliance with this provision [California Civil Code §2924c(b)(1)] necessarily requires that the beneficiary provide accurate information in response to an inquiry by the trustor."[13]

> A trustor is entitled to an accurate determination of the amounts actually and legally owed. This information is in possession of the beneficiary. The trustor, borrower, is under no obligation to second-guess the amount.[14]

Courts will set aside a foreclosure sale when there has been fraud, when the sale has been improperly, unfairly, or unlawfully conducted, or when there has been such a mistake that it would be inequitable to let it stand.[15]

The Notice of Trustee Sale must contain "A description of the security instrument and an identification of the parties to the instrument."[16] The notice of trustee sale must also include, among other information, an accurate statement of the total amount of the unpaid balance of the obligation secured by the real property to be sold as well as a statement of the costs, and expenses, and advances incurred at the time of the initial publication of the notice of sale.[17] Inherent in this requirement is the fact that the notice must contain an *accurate* statement of the total amount due.

The principles of equity apply to foreclosure sales. One of the principles of

---

[13] *Anderson v. Heart Federal Savings* (1989) 208 Cal.App.3d 202, 216.

[14] *Anderson v. Heart Federal Savings* (1989) 208 Cal.App.3d 202, 217.

[15] *Bank of America Nat. Trust & Savings Ass'n v. Reidy* (1940) 15 Cal. 2d 243, 248; *Whitman v. Transtate Title Co.*(4th Dist. 1985) 165 Cal. App. 3d 312, 322-323; *In re Worcester* (9th Cir. 1987) 811 F.2d 1224, 1228.
See also *Smith v. Williams* (1961) 55 Cal. 2d 617, 621; *Stirton v. Pastor* (4th Dist. 1960) 177 Cal. App. 2d 232, 234; *Brown v. Busch* (3d Dist. 1957) 152 Cal. App. 2d 200, 203-204.

[16] California Civil Code, §2924f, subd. (b)(1)

[17] California Civil Code §2924f(b)(1); Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and Mortgages, Chapter 10 §10.198.

-6-

**EXHIBIT "A"**

equity, as directly stated in the Maxims of Jurisprudence, is California Civil Code §3517. Section 3517 mandates, "No one can take advantage of his own wrong." Equity does not allow one to take advantage of his own wrong nor will it assist in perpetration of fraud on another or the public.[18]   A party cannot take advantage of his own fault or wrong.[19]

While the Federal Truth in Lending Act (TILA) is not specifically pled as a cause of action, the legislative purpose of that act is worth considering, particularly since defendant BNC Mortgage Corporation provided TILA disclosures to plaintiff Jim Moore. TILA was enacted by Congress to "avoid the uninformed use of credit."[20] In order to effectuate this purpose, the TILA has been liberally construed in the Ninth Circuit.[21] Even technical or minor violations of the TILA impose liability on the creditor.[22] " 'To insure that the consumer is protected ... [the TILA and accompanying regulations must] be absolutely complied with and strictly enforced.' "[23]

The verified complaint of Jim Moore proves that the defendants in this case are overcharging Mr. Moore. The verified complaint proves that the mortgage agreement which was executed in September 2004 is unconscionable, oppressive,

---

[18] *Bowman v. Bowman* (App. 4 Dist. 1932) 125 Cal.App. 602, rehearing denied 125 Cal.App. 602.

[19] *Archibald Estate v. Matteson* (App. 1907) 5 Cal.App. 441.

[20] *Mourning v. Family Publications Serv. Inc.*, 411 U.S. 356, 377, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973) (quoting 15 U.S.C. Sec. 1601).

[21] *Eby v. Reb Realty, Inc.*, 495 F.2d 646, 650 (9th Cir.1974).

[22] *Semar v. Platte Valley Federal Savings & Loan Association* (9th Cir.1986) 791 F.2d 699, 704.

[23] Id. (quoting *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir.1983)).

**EXHIBIT "A"**

1   and should be declared void against public policy. Additionally, the verified

2   complaint establishes that Mr. Moore was misled, which was the intent of BNC

3   Mortgage's incomprehensible, filled legalese and filled with mumbo-jumbo

4   promissory note and trust deed of September 23, 2004. It was a note which had a

5   basement APR of 7.706% and a ceiling of 15.225%.

6        With these legal concepts in mind, it is clear from the verified complaint

7   that the beneficiary and the trustee have failed to properly comply with the

8   requirements of California Civil Code §2924 et seq.. They should not be allowed

9   to benefit from the harsh and severe consequences that non-judicial foreclosure

10  law permits.

11       As set forth in the verified complaint, there are serious deficiencies and

12  much egregious malfeasance in the loan and the security which is the basis of the

13  foreclosure sale. BNC, STERLING, and Kevin Caylor engaged in fraud and the

14  classic bait and switch in the execution of this loan. They offered an attractive

15  interest rate and terms only to switch them at the last minute. They provided to

16  Mr. Moore a favorable Truth in Lending Disclosure statement to lure and lull Mr.

17  Moore and then switched the terms at the time of signing. Mr. Moore had stated

18  that he wanted a 30 year fixed rate note with no more than a 7.5% interest rate.

19  These defendants then offered him only a slightly adjustable loan, which indeed

20  appeared favorable to Mr. Moore. Instead, they foisted upon Mr. Moore an

21  oppressive exploding adjustable rate mortgage, one which guaranteed that Mr.

22  Moore would lose his home to a foreclosure sale after two years. The interest rate

23  capped at 15.225%. That is predatory. The loan was so offensive that it triggered

24  the provisions of HOEPA, which is a part of the Federal Truth in Lending Act.

25       Then, in true fraudulent fashion. BNC, Sterling, and Kevin Caylor, and

26  their agents, dumped the difficult to understand papers upon Mr. Moore, who has

27  only a limited education. The notary signing agent threw papers at Mr. Moore on

28  September 23, 2004, rushing him through the signing process so that he had

EXHIBIT "A"

1  signed numerous documents in ten point type or less, all within the period of
2  fifteen minutes. The notary was so rushed that she failed to provide a proper
3  rescission document in the manner she was required by Truth in Lending.

4      The remaining defendants eagerly benefitted from these bad acts. Chase
5  Bank either was involved in this process from the beginning (by the wholsale
6  funding this loan) or shortly thereafter acquired an interest in this loan. The
7  proper RESPA disclosures were never provided to Mr. Moore. These disclosures
8  would have advised Mr. Moore of Chase's exact role in this activity. As
9  mentioned in the complaint, NDEx was subsequently brought on board to do the
10  dirty work of seizing Jim Moore's home even though it is now totally aware of
11  the bad and illegal acts of the prior financial institutions and their agents in this
12  matter.

13      The reality is that this is a poster child model of the subprime meltdown or
14  crisis. The crisis occurred as a direct result of the acts of greed as manifested by
15  each of the participants in this matter. The only slight difference is that this loan
16  apparently was not sold to Wall Street investors, which was the intended market
17  of these subprime securities. BNC and Chase licked their chops over the dream of
18  credit card rate interest on a $300,000+ home loan. They never bothered,
19  however, to qualify Mr. Moore at the 15.225% compounding interest rate to see if
20  he could afford this oppressive interest rate. They qualified Mr. Moore only at
21  the lowest interest rate of the loan. They never bothered to disclose to Mr. Moore
22  the slavery which this interest rate was intended to produce. They never reflected
23  on the fact that these kinds of loans were not only harmful to Mr. Moore and to
24  the economy as well, but were unrealistic as well. This loan is a poster child of
25  unbridled greed given birth by misrepresentation and deceit.

26      California Civil Code §3517 deserves repeating. That section states, "No
27  one can take advantage of his own wrong." Yet this is exactly what the
28  defendants are attempting to do.

-9-

**EXHIBIT "A"**

On top of this egregious behavior is the fact that the notice of trustee sale is defective. It should be noted that the trustee, NDEx, operates out of Texas. Plaintiff's counsel has noted that Texas trustees like to operate by their own rules, which rules may note comport to California foreclosure law requirements.

The Notice of Sale must contain the name, street address, and either a toll-free telephone number or telephone number in California of the trustee.[24] The only telephone number posted on the notice of trustee sale (Exhibit 1 of the complaint) is the telephone number to the sales information line of Priority Posting. This is an automated telephone number that a prospective bidder can call to ascertain the current status of a piece of property. One only receives recorded information and cannot speak to a live person.

It would be a huge stretch of the imagination to believe that when the California legislature enacted California Civil Code §2924f(b)(1) requiring telephone numbers on the Notice of Trustee Sale, it had in mind sales information which would enure to the convenience of bidders at trustee sales. The telephone number requirement, as demonstrated in a toll-free number mandate, was to foster debtor-creditor communication. It was mandated to facilitate either reinstatement or redemption of the default. It was mandated in order to serve the public policy of preventing the loss of a home through a foreclosure sale, without any court oversight, when such a sale could be avoided.

Unfortunately for CHASE and NDEx, in addition to their own malfeasance, they take this loan subject to the wrongdoing of BNC, STERLING, Kevin Caylor and other parties to this loan transaction who may not yet be identified.

There is the legal maxim requires that he who seeks equity must do

---

[24] California Civil Code §2924f(b)(1).

-10-

**EXHIBIT "A"**

1  equity.[25] The right to conduct a non-judicial foreclosure, to seize a man's home,
2  is rooted in equity. Yet BNC, CHASE, and NDEx will come before this court
3  with filthy hands, all the while casting mud and speaking dispersions against Jim
4  Moore in order to obtain the permission of this court to take Jim Moore's home.
5      These failures and violation of law mandate a declaration that the
6  foreclosure process does not meet the requirements of California non-judicial
7  foreclosure law. This foreclosure is therefore invalid. These law violations
8  further justify without question the granting of an exparte order restraining the
9  foreclosure sale scheduled for Monday, January 7, 2008 at 1:30 p.m.. At the
10 bare bones minimum, these errors justify a judicial declaration that the
11 beneficiary and the trustee need to go back to the beginning and comply with the
12 procedural requirements of California Civil Code §2924 et seq.. These errors
13 further justify a judicial declaration that this BNC Mortgage Corporation loan of
14 September 23, 2004 is void, is subject to rescission, and is not secured by the
15 trust deed which was likewise executed on September 23, 2004 for the reasons set
16 forth in the verified complaint.

## INJUNCTIONS

### I.

A PRELIMINARY INJUNCTION SHOULD BE ISSUED WHERE
PLAINTIFF'S RIGHT TO RELIEF IS APPARENT FROM THE COMPLAINT
AND THE RELIEF CONSISTS IN RESTRAINING THE COMMISSION OR
CONTINUANCE OF THE ACT COMPLAINED OF, TO AVOID
IRREPARABLE INJURY DURING LITIGATION, AND WHERE THE LEGAL
REMEDY IS INADEQUATE.

An injunction may be granted when it appears by the complaint that the
plaintiff is entitled to the relief demanded and such relief, or any part thereof,
consists in restraining the commission or continuance of the act complained of,

_____

[25] *Wells Fargo & Company v. Robinson* (1859) 13 Cal. 133, 134; *Dickson,
Carlson and Campillo v. Pole* (2000) 83 Cal. App. 4th 436, 445.

-11-

**EXHIBIT "A"**

1    either for a limited period or perpetually.[26]

2    An injunction may be granted when it appears by the complaint or

3    affidavits that the commission or continuance of some act during the litigation

4    would produce great or irreparable injury to a party in the action.[27] The term

5    "irreparable injury" means that species of damages, whether great or small, that

6    ought not to be submitted to on the one hand or inflicted on the other.[28] This

7    definition warrants the use of the injunctive power of the court against a wrong

8    which a trial judge deems insufferable because it constitutes an overbearing

9    assumption by one person of superiority and domination over the rights and

10   property of others.[29]

11   An injunction may be granted when pecuniary compensation would not

12   afford adequate relief[30] or where it would be extremely difficult to ascertain the

13   amount of compensation which would afford adequate relief.[31]

14   An injunction should also be granted where the restraint is necessary to

15   prevent a multiplicity of judicial proceedings. [32]

16

17   ———————————

18   [26] CCP § 526 first subd (1); *Dingley v. Buckner* (1909) 11 Cal.App. 181,
     183-184.

19

20   [27] CCP § 526 first subd (2); *Smith v. Smith* (1942) 49 Cal.App.2d 716,
     718-719, 122 P.2d 346

21

22   [28] *Wind v. Herbert* (1960) 186 Cal.App.2d 276, 285, 8 Cal.Rptr. 817

23   [29] *Fretz v. Burke* (1967) 247 Cal.App.2d 741, 746, 55 Cal.Rptr. 879

24   [30] CCP § 526 first subd (4)

25   [31] CCP § 526 first subd (5); *Union Oil Co. v Domengeaux* (1939) 30 Cal
26   App2d 266, 270-271, 86 P2d 127)

27   [32] CCP § 526 first subd (6); *Rynsburger v. Dairymen's Fertilizer Coop., Inc.*
28   (1968) 266 Cal.App.2d 269, 279, 72 Cal.Rptr. 102; *Aldrich v Transcontinental
     Land & Water Co.* (1955) 131 Cal.App.2d 788, 796-797, 281 P.2d 362

**EXHIBIT "A"**

1    The federal standard for the grant of a preliminary injunction is similar to

2    that of California.  The case of *Miss World Limited v. Mrs. America Pageants,*

3    *Inc.*[33], however, made an observation which is helpful in understanding, and

4    applying, California law.  *Miss World* defined the standard for the grant of a

5    preliminary injunction.  "To obtain a preliminary injunction, a party must show

6    either (1) a likelihood of success on the merits and the possibility of irreparable

7    injury, or (2) the existence of serious questions going to the merits and the

8    balance of hardships tipping in its favor." [Citation.] "These are not two distinct

9    tests, but rather the opposite ends of a single 'continuum in which the required

10   showing of harm varies inversely with the required showing of meritoriousness.'"

11   [Citations.][34]

12   This Court is reminded of California Civil Code §3387 which conclusively

13   presumes that a person's home is so unique that monetary damages  cannot

14   adequately compensate for its loss.

II.

GROUNDS FOR A PERMANENT INJUNCTION

17   A trial court should grant a permanent injunction when (1) When pecuniary

18   compensation would not afford adequate relief;[35]  (2) When it would be extremely

19   difficult to ascertain the amount of compensation that would afford adequate

20   relief;[36]  (3) When the restraint is necessary to prevent a multiplicity of judicial

---

23      [33] *Miss World Limited v. Mrs. America Pageants, Inc.*  (9th Cir. 1988) 856

24   F.2d 1445.

25      [34] *Miss World Limited v. Mrs. America Pageants, Inc.*  (9th Cir. 1988) 856

26   F.2d 1445, 1448.

27      [35] Civ. Code § 3422(1)

28      [36] Civ. Code § 3422(2)

-13-

**EXHIBIT "A"**

1  proceedings.[37]  These grounds are the same as four of the grounds listed for the

2  granting of a preliminary injunction

3      In this matter, the plaintiff's hme will be sold by foreclosure sale, a

4  property which is unique and into which he has invested much.

5  III.

6  TRO/PRELIMINARY INJUNCTION BOND

7      A trial court must evaluate two factors in determining whether it should

8  issue a preliminary injunction.  One factor is the likelihood that Jim Moore will

9  prevail on the merits at trial.[38]  The second factor is the balance of any interim

10  harm to Jim Moore if the injunction is denied compared with the harm to

11  Carrington LLC if the injunction is issued.[39]

12      The more likely that Jim Moore will ultimately prevail, however, the less

13  severe the harm that must be shown, especially when the injunction maintains,

14  rather than alters, the status quo.[40]  Thus, if Mr. Moore can make a sufficiently

15  strong showing of likelihood of success on the merits, the trial court has

16  discretion to issue the injunction notwithstanding that his inability to show that

17  the balance of harms tips in their favor.[41]

18

19

20      [37] Civ. Code § 3422(3)

21      [38] See *Teachers Ins. & Annuity Assn. v. Furlotti* (1999) 70 Cal. App. 4th

22  1487, 1493, and *Dodge, Warren & Peters Insurance Services, Inc. v. Riley* (2003) 105 Cal. App. 4th 1414, 1418.

23      [39] See *14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.

24  App. 4th 1396, 1402; *Pro-Family Advocates v. Gomez* (1996) 46 Cal. App. 4th 1674, 1681; *Hunt v. Superior Court* (1999) 21 Cal. 4th 984, 999.

25

26      [40] *King v. Meese* (1987) 43 Cal. 3d 1217, 1227; *14859 Moorpark*

27  *Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal. App. 4th 1396, 1407.

28      [41] *14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal. App. 4th 1396, 1407.

-14-

**EXHIBIT "A"**

1    The harm that Jim Moore will suffer, however, is enormous. Jim Moore

2  have invested much into this property of 1258 Duffy Drive, Brentwood, CA

3  94513. He has paid the mortgage on this property for over five years.

4    *California courts retain common law authority to waive the requirement*

5  *of an undertaking in cases involving litigants with limited means.*[42]

6    Given the equities involved in this case, Jim Moore requests that this

7  Court impose no bond pursuant to its authority described in *Conover v. Hall*. The

8  verified complaint establishes good cause as to why no bond should be imposed.

9    Jim Moore lives on a modest income. He supports his family on that

10  income. Given the need for Jim Moore to engage professional assistance to

11  exercise his legal rights in this matter, his financial resources is now being

12  stretched dramatically.

13    The fraudulent and illegal activities of the defendants are the direct cause

14  the foreclosure which they commenced on his property. It is this very kind of

15  predatory lending, particularly against modest income families that has become a

16  plague.

17    Certainly the defendants, and particularly CHASE and NDEx, should have

18  no objection to the granting of both the temporary restraining order as well as a

19  preliminary injunction if a condition of the restraining order and subsequent

20  injunction is that *Jim Moore commence making his monthly mortgage payment of*

21  *$$1,950.47. This is the amount as disclosed on the September 15, 2004 Truth in*

22  *Lending Disclosure.* They also should have no objection to no bond and no

23  additional conditions to the grant of a temporary restraining order.

24    The defendants should not be heard to complain about the granting of a

25  TRO nor a preliminary injunction, particularly if monthly mortgage payments are

26  made. Such orders will simply preserve the status quo.

27

28
_____

[42] *Conover v. Hall* (1974) 11 Cal. 3d 842, 847, 850-852.

-15-

**EXHIBIT "A"**

1    Alternatively, Jim Moore requests that this Court impose a bond of $100.

2    For the reasons set forth in these papers, plaintiff prays that this court grant

3    the requested temporary restraining order, preliminary injunction, and set the

4    matter for hearing for a full permanent injunction.

5    Respectfully submitted

6

7

8

9    Thomas Spielbauer, Esq.
     Attorney for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-16-

**EXHIBIT "A"**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, ~ _er number, and address): | FOR COURT USE ONLY |
|---|---|

Thomas Spielbauer, Esq.    /8281
SPIELBAUER LAW FIRM
1250 Oakmead Parkway, Suite 210
Sunnyvale, CA 94085
TELEPHONE NO.: (408)451-8499    FAX NO.: (610)423-1395
ATTORNEY FOR (Name): Plaintiff, Jim E. Moore

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Contra Costa
STREET ADDRESS: 725 Court Street
MAILING ADDRESS: 725 Court Street
CITY AND ZIP CODE: Martinez, CA 94553
BRANCH NAME: Wakefield Taylor Courthouse

CASE NAME:
Moore v. Chase Bank et Al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited    ☐ Limited | ☐ Counter    ☐ Joinder | C08    00040 |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | DEPT: |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☑ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision
3. Type of remedies sought (check all that apply):
   a. ☑ monetary    b. ☑ nonmonetary; declaratory or injunctive relief    c. ☑ punitive
4. Number of causes of action (specify): Seven
5. This case ☐ is ☑ is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: January 4, 2008
Thomas Spielbauer, Esq.
_____    ► _____
(TYPE OR PRINT NAME)                           (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. January 1, 2007] | CIVIL CASE COVER SHEET | American LegalNet, Inc. www.FormsWorkflow.com | Cal. Rules of Court, rules 3.220, 3.400–3.403; Standards of Judicial Administration, § 19 www.courtinfo.ca.gov |

**EXHIBIT "A"**

1 | Thomas Spielbauer, Esq.
SBN 78281
2 | THE SPIELBAUER LAW FIRM
1250 Oakmead Parkway, Suite 210
3 | Sunnyvale, CA 94085
(408)451-8499
4 | Fax: (610)423-1395
thomas@spielbauer.com
5 |
Attorneys for Jim E. Moore, Plaintiff
6 |



7 | IN THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA
8 | CONTRA COSTA COUNTY

9 | JIM E. MOORE,                    No: **C08 · 0004·0**
10 |              Plaintiff.
11 | v.s.                            COMPLAINT FOR
                                   DECLARATORY JUDGMENT
12 |                                PURSUANT TO CCP §1060,
                                   UNFAIR BUSINESS PRACTICES,
13 | CHASE BANK; BNC MORTGAGE,       UNCONSCIONABLENESS,
   INC.; NDEx West LLC; STIRLING   FRAUD, GOOD FAITH AND
14 | FUNDING CORPORATION; KEVIN     FAIR DEALING, AND FOR AN
   CAYLOR; and DOES 1-20,          ACCOUNTING
15 |
16 |              Defendants.

17 | Plaintiff, Jim Moore, alleges:     PER LOCAL RULE 5 THIS
                                      CASE IS ASSIGNED TO
18 |                                   DEPT _____ 16 ·

19 |              **PARTIES**           SUMMONS ISSUED

20 |     1. Plaintiff Jim Moore is and at all times herein mentioned was a resident

21 | of Contra Costa County, California. Jim Moore resides at 1258 Duffy Drive,

22 | Brentwood, CA 94513.

23 |     2. Defendant JP CHASE BANK (herein after referred to as CHASE) is a

business entity with a principal place of business at 1111 Polaris Parkway,

Columbus, OH 43240. CHASE is a New York Corporation. CHASE does

business in California and within the County of Contra Costa, California on a

regular basis. CHASE's agent for the service of process in the State of

California is C. T. Corporation System, 818 West Seventh Street, Los Angeles,

-1-

**EXHIBIT "A"**

1  CA 90017.  Plaintiff is uncertain as to the role of CHASE at the time of the loan

2  origination.  However, CHASE was directly involved and appears to be the

3  decision maker in the foreclosure process.

4      3. Defendant NDEx LLC (herein after referred to as NDEx) is a business

5  entity with a principal place of business located at 15000 Surveyor Blvd., Ste.

6  100, Addison, TX 75001.  NDEx is a Delaware Corporation.  NDEx's agent for

7  the service of process in the State of California is C. T. Corporation System, 818

8  West Seventh Street, Los Angeles, CA 90017.  NDEx is the trustee of an alleged

9  deed of Trust on the property of 1258 Duffy Drive, Brentwood, CA 94513.  That

10 trust deed number is Contra Costa County number 2004-037887220.  NDEx

11 regularly conducts business in Contra Costa County, California.

12     4. BNC Mortgage Corporation (herein after referred to as BNC) is a

13 business entity with a principal place of business in California at 1901 Main

14 Street, Irvine, CA 92614.  BNC is a Delaware Corporation.  BNC regularly

15 conducts business in Contra Costa County, California.  BNC Mortgage

16 Corporation does not have an agent registered with the California Secretary of

17 State for the service of process in California.  BNC Mortgage was the loan

18 originator in this matter.

19     5. Stirling Funding Corporation (herein after referred to as STIRLING) is a

20 business entity with a principal place of business at 1800 Thibodo Road #300,

21 Vista, CA 92083.  STIRLING does not have an agent for the service of process in

22 the State of California.  STIRLING regularly conducts business in Contra Costa

23 County, California.  STIRLING was the loan broker in this matter.  Kevin Caylor

24 was the loan broker agent in this matter.

25     6. As a result of their mortgage activities, defendants BNC, Stirling, Kevin

26 Caylor and Chase are subject to and must comply with the Federal Truth in

27 Lending Act (15 U.S.C .§§1601-1666j) and with the Act's corresponding

28 Regulation Z (24 C.F.R. §§3500.1-3500.17).

-2-

**EXHIBIT "A"**

1    7. Defendants BNC, CHASE and NDEx, and their agents and successors,

2    are debt collectors as defined by California Civil Code §1788.2(c), the California

3    Fair Debt Collection Practices Act, and as defined by 15 USCA § 1692a(6), the

4    Federal Fair Debt Collection Practices Act.

5    8. Defendants, and each of them, were at all times alleged in this complaint

6    required to comply with and the federal Real Estate Settlement Procedures Act

7    (RESPA), 12 U.S.C. §2601-2617.

8    9. Plaintiff is informed and believes, and thereon alleges, that each

9    Defendant is and at all relevant times herein was, the agent, employee, alter-ego,

10    principal, employer, or co-conspirator of each of the remaining co-Defendants,

11    and in committing the acts herein alleged, was acting in the scope of their

12    authority as such agents, employees, principals, employers, alter-egos, or co-

13    conspirators and with the permission and consent of the remaining co-

14    Defendants.

15    10. DOES 1-20, inclusive, are individuals and/or businesses whose forms

16    are unknown and were agents, principals, employees, employers, and co-

17    conspirators of each and every other named or unnamed Defendant in this

18    complaint. Plaintiff is informed and believes, and thereon alleges, that each of

19    such Defendants is, and at all relevant times was, acting within the scope of their

20    authority as such agents, employees, or alter-egos and with the permission and

21    consent of the remaining named and un-named co-Defendants.

22    11. The true names and/or capacities of Defendants 1-20, inclusive, are

23    unknown to Plaintiff, and therefore he sues said Defendants by such fictitious

24    names. Plaintiff is informed and believes and thereon alleges that each of the

25    Defendants fictitiously named herein as a DOE is responsible for the events and

26    happenings hereinafter referred to, and thereby proximately caused the injuries

27    and damages to Plaintiff as hereinafter alleged. Plaintiff will seek leave of the

28    Court to amend this complaint to allege the true names and/or capacities of said

-3-

EXHIBIT "A"

1  fictitiously named Defendants when ascertained.

2      12. Whenever in this Complaint an act or omission of a corporation or

3  business entity is alleged, the said allegation shall be deemed to mean and include

4  an allegation that the corporation or business entity acted or omitted to act

5  through its authorized officers, directors, agents, servants, and/or employees,

6  acting within the course and scope of their duties, that the act or omission was

7  authorized by corporate managerial officers or directors, and that the act or

8  omission was ratified by the officers and directors of the corporation.

9                              **JURISDICTION**

10     13. The transactions and events which are the subject matter of this

11 complaint all occurred within the County of Contra Costa, State of California.

12     14. The property located at 1258 Duffy Drive, Brentwood, CA 94513 is

13 located in the County of Contra Costa, California.  The APN 017-201-019-1.

14                          **JURY TRIAL DEMAND**

15     15. Plaintiff Jim Moore  requests a jury trial on all issues in this matter.

16                          **FACTUAL ALLEGATIONS**

17     16. During September 2004, Kevin Caylor of Sterling Funding Corporation

18 telephoned Plaintiff Jim Moore concerning a refinance of his home.  This

19 telephone call was a cold call and not one made in response to a request for

20 information from Mr. Moore. The caller, Kevin Caylor, was an officer or

21 representative of Stirling Funding.   At the time Mr. Caylor made the telephone

22 call, he advised that Stirling Funding could refinance Mr. Moore's home under

23 very favorable terms.  He explained that he could obtain a loan with lower interest

24 rates and lower monthly mortgage payment.  Based on these presentations, Jim

25 Moore agreed to refinance through Stirling Funding.

26     17. Jim Moore informed Mr. Caylor during September 2004 that he, Mr.

27 Moore,  required  a 30 year fixed rate loan between 6.5% and 7.5%, with

28 impounds.  Mr. Caylor advised that he could and would arrange for this financing

-4-

**EXHIBIT "A"**

1   under those terms.

2       18. Mr. Caylor, STIRLING and BNC thereafter provided to Jim Moore

3   initial disclosure loan documents. The Truth In Lending disclosure quoted an

4   APR of 7.706%. This was to be the interest rate for the first two years with a

5   mortgage payment during those two years of $1948.23. Mr. Caylor, STIRLING

6   and BNC further told Jim Moore that the interest rate would adjust to a payment

7   of a little less than ten dollars more per month thereafter, to an amount of

8   $1,957.44 and for the remaining twenty-eight years of the loan. The last

9   payment was to be for $1,950.47.

10      19. These representations were confirmed by the Truth in Lending

11  Disclosure of September 15, 2004 provided to Mr. Moore. The Truth in Lending

12  Disclosure is attached to this complaint as Exhibit 2. This Truth in Lending

13  Disclosure clearly reflected that the monthly mortgage payments for the first two

14  years was to be $1,948.23. In the third year, the rate was to adjust for the

15  remaining 28 years to monthly mortgage payments of $1,957.44. The last

16  payment was to be for $1,950.47.

17      20. Within two weeks, Mr. Caylor and STIRLING advised Jim Moore by

18  telephone that he had been approved for this loan and the documents had been

19  drawn. He was told that a notary would visit him thereafter and he would then

20  sign the loan documents. No terms were discussed during this telephone

21  conversation. The loan was to be a 30 year note for the approximate amount of

22  $300,000+.

23      21. A week later, on September 23, 2004, a notary and signing agent came

24  to Mr. Moore's home in order to have Jim Moore sign the loan documents which

25  had been prepared by Stirling and BNC.

26      22. The Truth in Lending statement provided at the last minute, and at the

27  time of signing on September 23, 2004 revealed a different story concerning the

28  loan. This truth in lending disclosure advised that the there would be 24 initial

-5-

**EXHIBIT "A"**

monthly mortgage payments of $2,268.02. Thereafter, there would be 335 payments of $2,428.98 with one last payment of $2,420.87. This disclosure, however, did not take into account the six month increase in interest permitted by the promissory note. This second Truth in Lending disclosure was inaccurate. This September 23, 2004 Truth in Lending disclosure is attached as Exhibit 3.

23. The ceiling of interest according to this promissory note of September 23, 2004 was 15.225%. This ceiling was concealed from Jim Moore up to and during the time of signing of the promissory note.

| Monthly Mortgage Payments | | |
|---|---|---|
| Promised | TILA Disclosed | Actual |
| 24 payments of $1,948.23 | 24 payments of $2,268.02 | Ceiling of 15.225%. |
| 335 payments of $1,954.44 | 335 payments of $2,428.98 | Adjustable 6.925% above index every 6 months after first 2 years. |
| 1 payment of $1,950.47 | 1 payment of $2,420.87 | |

24. These were the only disclosures which Mr. Caylor and defendants STIRLING and BNC made to Jim More concerning the loan and the adjustability of the mortgage. No other explanations were provided.

25. A Good Faith Estimate was provided at the time of signing. This good faith estimate, however, did not reflect the real interest rate. It quoted a broker fee of $2,800 plus processing fee of $695 and an Administration Fee of $595. All of this was false. The broker fee, excluding the yield spread premium, was $5,995 instead of $2,800.

26. On or about September 23, 2007, a notary public arrived at Mr. Moore's home for the purpose of his signing the loan documents. This notary acted as the agent for Mr. Caylor, STIRLING and BNC. The signing took place in Jim Moore's home located at 1258 Duffy Way, Brentwood, CA. Throughout

**EXHIBIT "A"**

1   this signing, the notary was in a hurry and rushed Mr. Moore through the signing

2   process. She began handing papers for Mr. Moore to sign without giving him the

3   opportunity to review the papers and the terms of the loan. The documents were

4   voluminous. As a result, Jim Moore relied upon the representations which had

5   been made to him concerning the rates, monthly mortgage payments, adjustable

6   interest rate, fees and commissions upon the prior representations of Mr. Caylor,

7   STIRLING and BNC, as well as upon the documents which had previously been

8   provided to him. He relied on Exhibit 2. The notary made no explanations to

9   Mr. Moore. She was gone within fifteen minutes, and all documents had been

10   signed. The loan note was for $302,600 and was a thirty year note. This note is

11   attached to this complaint as Exhibit 5. The Trust Deed is attached as Exhibit 6.

12       27. The promissory note contains an attorney fee provision whereby the

13   losing party would be required to pay the losing party's attorney fees in the event

14   of litigation.

15       28. One of the documents which the notary provided to Jim Moore was the

16   NOTICE OF RIGHT TO CANCEL. A true and correct copy of that document is

17   attached to this complaint as Exhibit 4. This notice was defective in that the

18   alleged notice did not conspicuously state the date of the transaction nor the date

19   by which the three day rescission period terminated. As such, Mr. Moore's time

20   to rescind never perfected and never began to run.

21       29. Kevin Caylor and STIRLING originally represented to Jim Moore that

22   the broker fee was going to be $2,800. In reality, it turned out to be $11,824,

23   including the yield spread premium, and $5,995 not including the yield spread

24   premium.

| Broker Commission | |
|---|---|
| Promised | Actual |
| $2,800 | $11,824 |

-7-

EXHIBIT "A"

30. The broker included a rebate/yield spread premium of $4,539. This Yield Spread Premium was never disclosed to Jim Moore prior to his signing the loan documents and trust deed.

31. The loan was to have been a 30 year fixed loan with an interest rate of 6.5% to 7.5%, and an APR of 7.706% as initially promised. The loan provided on September 23, 2004, however, was a two year fixed rate loan which would then adjust 2% after two years and then 1% every six months. The ceiling of the loan was 15.225%. The initial APR of the September 23, 2004 loan was 9.186%.

| Interest Rate | | |
|---|---|---|
| **Promised** | **Actual** | |
| 6.5% to 7.5% | 8.225% for two years. Adjustable 6.925% above index every 6 months after first 2 years. | Ceiling interest rate of 15.225%. |
| APR of 7.706% | APR of 9.186%, and climbing | |

32. The language which Defendants Kevin Caylor, STIRLING and BNC used in the promissory note was incomprehensible, filled legalese and filled with mumbo-jumbo, all designed to confused the average purchaser such as Plaintiff Jim Moore. It was designed to insure that he did not comprehend the nature of the agreement and the extraordinary costs that it contained. Additionally, these defendants did not provide a copy of this document prior to requiring Jim Moore to sign this and the other documents. Additionally, they did not provide Mr. Moore time to review these documents but in fact rushed him through the signing. As a result, Mr. Moore relied upon the Truth in Lending Disclosure which is Exhibit 2 to this complaint and the representations which Mr. Caylor, STERLING and BNC had made to him previously.

-8-

**EXHIBIT "A"**

33. The Truth in Lending Act, 15 U.S.C. §1639, mandates that the annual percentage rate, the finance charge and the amount of the maximum monthly payment based on the maximum interest rate allowed be disclosed in a clear and conspicuous manner and in a tabular format. 15 U.S.C. §1639 requires that all material disclosures be made at least 3 business days prior to the consummation of the loan. The September 23, 2004 disclosures, Exhibit Jim, were in fact grossly inaccurate.

34. The September 23, 2004 loan was also governed by The Homeowner's Equity Protection Act, HOEPA, 15 U.S.C. 1602 et seq.. To be governed, a loan must have an APR in excess of 8% of the yield on treasury securities having a comparable maturity at the time the loan was made. The T-Bill yield is and was approximately 5.03%, bringing the trigger rate of a covered loan 13.03%. The ceiling or cap of this loan was in fact 15.225%.

35. Defendants never provided to the plaintiff the notice that this loan transaction was covered by HOEPA.

36. Regulation Z, §226.32(e)(3) mandates that BNC provide the following notice to any successors to the note: "NOTICE: This is a mortgage subject to special rules under the federal Truth in Lending Act. Purchasers or assignees of this mortgage could be liable for all claims and defenses with respect to the mortgage that the borrower could assert against the creditor." The defendants are thereby culpable for the acts of each other. Any successors in interest are subject to this HOEPA and Regulation Z provision.

37. Jim Moore thereafter commenced making mortgage payments under the new loan. He was able to make his payments during the first two years of the loan, when the rate was fixed. However, after two years, he had significant difficulty making the increasing mortgage payments, particularly after the interest rate on the loan began to explode. As a result, Mr. Moore was not able to tender the full monthly mortgage payments during the year 2007.

**EXHIBIT "A"**

1    38. Plaintiff is informed and believes that during August 2007, BNC and

2    NDEx and Chase recorded a notice of default on the property of 1258 Duffy

3    Drive, Brentwood, CA 94513.

4    39.  During November 2007, BNC and NDEx and Chase recorded a notice

5    of trustee sale on the property of 1258 Duffy Drive, Brentwood, CA 94513.  This

6    notice of trustee sale is attached to this complaint as Exhibit 1.  This notice of

7    trustee sale set the sale date for December 6, 2007 at 1:30 p.m..  The sale date,

8    however, was postponed to January 7, 2008 at 1:30 p.m..

9    40.  During December 2007, Jim Moore attempted to refinance into an

10    affordable loan.  He qualifies for FHA Secured, a loan program with a reasonable

11    and fixed interest rate.  Mr. Moore, however, has been unable to re-finance due to

12    the high fees and charges which BNC, Chase and NDEx are demanding from Jim

13    Moore.  These bloated charges and fees caused the balance on this loan to exceed

14    the maximum borrower debt ratio permitted by FHA Secured.

15    41. The notice of trustee sale demanded $307,967.68 as the reasonably

16    estimated amount due on this loan.  This amount is more than $5,000 the original

17    principal of the loan and is being demanded despite the fact that Jim Moore has

18    made over two years of payments of approximately $2,000 per month on this loan.

19    42. On or about December 31, 2007, plaintiff Jim Moore sent to defendants

20    a reinstatement request (beneficiary statement), and a payoff demand request

21    pursuant to California Civil Code §2943; a request for verification of the amounts

22    demanded and of the alleged debt pursuant to the Fair Debt Collection Practices

23    Act 15 U.S.C. 1692g; a qualified written request pursuant to the Real Estate

24    Settlement and Procedures Act (RESPA), 12 U.S.C. 2605(e); and a request for an

25    accounting.  These requests were sent via United States Express mail and were

26    delivered to the defendants and/or their agents on January 2, 2008 and January 3,

27    2008.

28

-10-

**EXHIBIT "A"**

43. On or about December 31, 2007, plaintiff Jim Moore sent to the defendants a notice of rescission pursuant to the Federal Truth in Lending Act, 15 U.S.C.§1635f. This rescission was sent via United States Express mail and was delivered to the defendants and/or their agents on January 2, 2008 and January 3, 2008.

## FIRST CAUSE OF ACTION
## REQUEST FOR DECLARATORY JUDGMENT

44. Plaintiff Jim Moore re-alleges and incorporates by reference paragraphs 1 to 43 of this complaint.

45. An actual controversy has arisen and now exists between plaintiff and defendants concerning their respective rights and duties. Plaintiff desires a judicial determination of his rights and duties.

46. A valid foreclosure by the private power of sale requires strict compliance with the requirements of California Civil Code §2924 et seq..

47. California Civil Code §2924f mandates that the Notice of Trustee Sale contain an *accurate* statement of the total amount of the unpaid balance and reasonably estimated costs, expenses, advances at the time of the initial publication of the notice of sale.

48. California Civil Code §2924f(b)(1) requires that defendants state the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice in the notice of sale.

49. California Civil Code §2924c(e) permits plaintiff the right to reinstate the loan at any time up to five business days before the trustee sale.

50. Plaintiff is informed and believes and thereupon alleges that the amount stated in the Notice of Trustee Sale is grossly inaccurate. Defendants have not provided an itemized accounting for these amounts. This inaccuracy is significant and invalidates the foreclosure process. This inaccuracy has made it impossible

-11-

EXHIBIT "A"

1  for plaintiff to undertake effective action to reinstate or redeem the secured

2  obligation.   These inaccuracies denied plaintiff of the protections and procedures

3  of California Civil Code §2924 et seq..   They specifically have precluded him

4  from refinancing with FHA Secured.

5       51. Defendants have scheduled a trustee sale and intend to proceed with the

6  sale on January 7, 2008 despite their violations of California Non-Judicial

7  Foreclosure Law, California Civil Code §2924 et seq..

8       52. Plaintiff also requests that this court find that the agreement which

9  defendant BNC entered into with plaintiff be found to be unconscionable as

10  defined by California Civil Code §1670.5.

11       53. The Notice of Trustee Sale, Exhibit 1, further does not contain the

12  information required in California Civil Code §2924f(b)(1). Specifically, this

13  code section requires either a toll-free telephone number or a telephone number in

14  California of the Trustee. The Notice of trustee sale merely contains a sales

15  telephone number of (714)573-1695 to Priority Posting. This telephone number

16  provides recorded information about property sales. One cannot speak with a live

17  person nor leave a message. This "telephone number" on the Notice of Trustee

18  Sale does not comply with the requirements of California Civil Code §2924f(b)(1).

19       54. Plaintiff also requests that this court find that the agreement which

20  defendant BNC entered into with plaintiff be found to be void and be subject to

21  rescission.

22       55. A judicial declaration is necessary and appropriate at this time and under

23  these circumstances in order that plaintiff may ascertain his rights and duties and

24  avoid the specter of a foreclosure sale and the loss of his property. Such trustee's

25  sale, absent a judicial determination negating the Notice of Trustee Sale, or the

26  issuance of a restraining order, is scheduled to occur on Monday, January 7, 2008

27  at 1:30 p.m., or thereafter. Such a trustee's sale would for surely cause Jim Moore

28  the unjust loss of his home.

-12-

**EXHIBIT "A"**

56. Defendants' actions in this matter have been wilful and knowing.

## SECOND CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES
(BNC, Caylor, Stirling, Chase and NDEx)

57. Plaintiff realleges and incorporates by reference paragraphs 1 to 56 of this complaint.

58. California Business and Professions Code §17200 prohibits any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Business and Professions Code §17500 et seq..

59. California Business and Professions Code §17500 et seq. prohibits the making of a statement or a publication or a declaration concerning any circumstance or matter of fact connected with the proposed performance or disposition of real or personal property, which pronouncements is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

60. Defendants BNC, Caylor, and Stirling made the following untrue and misleading statements, and engaged in the following unfair business practices. They misrepresented the terms of the loan, first by agreeing to provide a 30 year fixed rate interest loan of 6.5% to 7.5% and then switching the loan to an exploding ARM with a ceiling of 15.225%. They failed comply with the disclosure provisions of the Federal Truth in Lending Act. They failed to comply with the disclosure provisions of the Homeowner Equity Protection Act, a part of the Truth in Lending Act. They engaged in unfair business practices through the manner in which their signing agent rushed Jim Moore through the signing process.

61. Defendants BNC, Chase and NDEx then unlawfully initiated a non-judicial foreclosure on the plaintiff's home by recording without proper legal basis a notice of default and notice of trustee sale.

**EXHIBIT "A"**

62. California Civil Code §§2924 and 2924c(b)(1) require that the notice of default contain an accurate statement that a breach of the secured obligation has occurred and specification of the nature of the default.

63. Defendants BNC, Chase and NDEx have falsely stated in their notice of sale that the reasonable estimate of costs, expenses, and advances is $307,967.68 on a loan principal of $302,600, and after Jim Moore has made two years of monthly mortgage payments.

64. Amounts consisting of foreclosure fees, late fees, additional interest, and other fees, which defendants BNC, Chase, and NDEx have demanded from plaintiff are erroneous and fraudulent, and are based on fraudulent representations, violations of the Federal Truth in Lending Act, violations of HOEPA, and concealed excessive charges and fees. These are facts which the defendants, and each of them, knew and should have reasonably known.

65. Defendants BNC, Chase and NDEx attempted to mislead and defraud plaintiff by requiring him to pay sums of money which he did not and does not owe to defendants, and by requiring this money under threat of foreclosure, with the intent of taking possession of plaintiff's home if he did not pay these sums.

66. Defendants further violated Business and Professions Code §17200 and §17500 et seq. by violating California Civil Code §2924c(b)(1), California Civil Code §2924f, subd. (b)(1), California Civil Code §2924 and by their actions as alleged in this complaint.

## THIRD CAUSE OF ACTION
### FRAUD

67. Plaintiff realleges and incorporates by reference paragraphs 1 to 66 of this complaint.

68. California Civil Code §1572 states that fraud exists when any of the following act and situations occur. Actual fraud consists in any of the following

-14-

EXHIBIT "A"

1  acts, committed by a party to the contract, or with his connivance, with intent to

2  deceive another party:

3       a. The suggestion, as a fact, of that which is not true, by one who does
         not believe it to be true; b. The positive assertion, in a manner not
4       warranted by the information of the person making it, of that which is
         not true, though he believes it to be true; c. The suppression of that
5       which is true, by one having knowledge or belief of the fact; d. A
         promise made without any intention of performing it; or, e. Any other
6       act fitted to deceive.

7       69. Defendants BNC, Caylor, and Stirling committed fraud in the following

8  ways. They misrepresented the terms of the loan, first by agreeing to provide a 30

9  year fixed rate interest loan of 6.5% to 7.5% and then switching the loan to an

10 exploding ARM with a ceiling of 15.225%, and without disclosing this act at the

11 time of signing nor prior to signing. They failed comply with the disclosure

12 provisions of the Federal Truth in Lending Act. They failed to comply with the

13 disclosure provisions of the Homeowner Equity Protection Act, a part of the Truth

14 in Lending Act. They committed fraud through the manner in which their signing

15 agent rushed Jim Moore through the signing process.

16      70. Defendants BNC, Chase and NDEx then committed fraud by unlawfully

17 demanding money they were not legally entitled to. Then they initiated a non-

18 judicial foreclosure on the plaintiff's home by recording without proper legal basis

19 a notice of default and notice of trustee sale.

20      71. Defendants BNC, Chase and NDEx committed fraud by falsely stating

21 in their notice of sale that the reasonable estimate of costs, expenses, and advances

22 is $307,967.68 on a loan principal of $302,600, and after Jim Moore has made two

23 years of monthly mortgage payments.

24      72. Amounts consisting of foreclosure fees, late fees, additional interest,

25 and other fees, which defendants BNC, Chase, and NDEx have demanded from

26 plaintiff are erroneous and fraudulent, and are based on fraudulent representations,

27 violations of the Federal Truth in Lending Act, and concealed excessive charges

28

-15-

**EXHIBIT "A"**

1 and fees. These are facts which the defendants, and each of them, knew and

2 should have reasonably known.

3      73. Defendants BNC, Chase and NDEx attempted to mislead and defraud

4 plaintiff by requiring him to pay sums of money which he did not and does not

5 owe to defendants, and by requiring this money under threat of foreclosure, with

6 the intent of taking possession of plaintiff's home if he did not pay these sums.

7      74. Defendants' actions in engaging in the actions alleged in this complaint

8 have been wilful and malicious.

9 **FOURTH CAUSE OF ACTION**<br>**UNCONSCIONABILITY**

10

11      75. Plaintiff realleges and incorporates by reference paragraphs 1 to 74 of

12 this complaint.

13      76. Civil Coded §1670.5(a) states:

14           If the court as a matter of law finds the contract or any clause
of the contract to have been unconsciable at the time it was made,

15 the court may refuse to enforce the contract, or it may enforce the
remainder of the contract without the unconscionable clause, or it

16 may so limit the application of any unconscionable clause as to avoid
any unconscionable result.

17

18      77. The mortgage agreement which plaintiff entered into with BNC and

19 which was apparently assigned to Chase, is unconscionable. The unconscionability

20 of the contract has been detailed in this complaint. Defendants sought the charge

21 plaintiff inflated and unlawful fees. They misrepresented the loan they would

22 provide to plaintiff. They threatened, and in fact attempted, to seize plaintiff's

23 home through a non-judicial foreclosure sale if plaintiff did not pay their

24 demanded fees, or agree to pay them. Defendants, and each of them, sought to

25 impose upon plaintiff a mortgage agreement which carried excessive interest fees

26 and whose true nature was concealed from plaintiff.

27      78. The September 2004 BNC promissory note was incomprehensible, filled

28 legalese and filled with mumbo-jumbo. This incomprehensibility was intended to

-16-

**EXHIBIT "A"**

1   insure that the plaintiff did not comprehend its terms, which in turn permitted the

2   defendant BNC, Chase and their successors to mislead the plaintiff and thereby

3   financially profit from its terms.

4       79. Defendants' actions in engaging in the actions alleged in this complaint

5   have been wilful and malicious.

6                          **FIFTH CAUSE OF ACTION**
          **CONTRACTUAL BREACH OF THE CONVENANT OF GOOD FAITH**
7                             **AND FAIR DEALING**

8       80. Plaintiff realleges and incorporates by reference paragraphs 1 to 78 of

9   this complaint.

10      81. Every contract imposes upon each party a duty of good faith and fair

11  dealing in its performance and its enforcement.  This implied covenant of good

12  faith and fair dealing requires that no party will do anything that will have the

13  effect of impairing, destroying, or injuring the rights of the other party to receive

14  the benefits of their agreement.  This covenant implies that in all contracts each

15  party will do all things reasonably contemplated by the terms of the contract to

16  accomplish its purpose.   This covenant protects the benefits of the contract that

17  the parties reasonably contemplated when they entered into the agreement,

18      82. The terms of the promissory note and trust deed imposed upon the

19  defendants a duty of good faith and fair dealing in this matter.

20      83. Defendants enjoyed substantial discretionary power affecting the rights

21  of plaintiff during the events alleged in this complaint.  Defendants were required

22  to exercise such power in good faith.

23      84. California foreclosure law and procedure is based on the social policy.

24  The goal of California non-judicial foreclosure law under California Civil Code

25  §2924 et seq. is to provide fast, efficient and non-judicial remedies to beneficiaries

26  while at the same time providing protection to trustors. California non-judicial

27  foreclosure law also is intended to protect the trustor from the wrongful or unfair

28  loss of his property.

                                    -17-

**EXHIBIT "A"**

85. California non-judicial foreclosure law requires strict compliance on the part of beneficiaries and trustees.

86. Defendants wilfully breached their implied covenant of good faith and fair dealing with plaintiff Jim Moore. BNC, Chase, and NDEx attempted to non-judicially foreclose on plaintiff's home

87. Defendants breached their covenant of good faith and fair dealing with plaintiff by violating California Civil Code §§2924f and by their actions as alleged in this complaint.

88. The September 2004 BNC promissory note was incomprehensible, filled legalese and filled with mumbo-jumbo. This incomprehensibility was intended to insure that the plaintiff did not comprehend its terms, which in turn permitted the defendant BNC, Chase, and NDEx and their successors to mislead the plaintiff and thereby financially profit from its terms. In this manner, defendants breached their duty of good faith and fair dealing.

89. Defendants have wilfully breached their implied covenant of good fath and fair dealing for the reasons and actions which are outlined in the Second, Third and Fourth Causes of Action.

90. Defendants' actions in this matter have been wilful and knowing.

91. As a result of defendants' breach of this covenant, plaintiff Jim Moore has suffered injury. The injury has caused plaintiff to suffer the specter of a foreclosure sale of his home and incur attorney fees and other costs and expenses in order to prevent this sale.

//

//

-18-

**EXHIBIT "A"**

**SEVENTH CAUSE OF ACTION**
**ACCOUNTING**

92. Plaintiff realleges and incorporates by reference paragraphs 1 to 91 of this complaint.

93. There is and was a relationship between and among defendants BNC, Chase and their agents and successors and plaintiff Jim Moore. In this relationship, BNC, Chase and their agents and successors received mortgage payments from plaintiff. BNC, Chase and their agents and successors had a legal duty to accurately and timely account for these payments and to properly apply these payments to the trust deed mortgage.

94. Only defendants BNC, Chase and their agents and successors have the information as to how they received, accounted for, and applied the mortgage payments tendered by plaintiff in this matter. Only defendants BNC, Chase and their agents and successors have information as to what charges and fees and costs they added to the amounts they were demanding from Jim Moore and the justification for these amounts.

95. An accurate amount that plaintiff Jim Moore owes and owed to defendants BNC, Chase and their agents and successors can only be determined by information in the possession of these defendants, and by a detailed and itemized accounting. The amounts which Jim Moore owes is uncertain at this time and cannot be determined without an accounting.

96. *Whann v. Doell*[1] and *James Church v. Superior Court*[2] authorize an accounting when there is an unknown amount due that cannot be determined without an accounting.

---

[1] *Whann v. Doell* (1923) 192 Cal. 680, 684.

[2] *James Church v. Superior Court* (1955) 135 Cal.App.2d 352, 359.

-19-

**EXHIBIT "A"**

97. Jim Moore requests an accounting from the defendants in this matter so that he can know what is lawfully owed and what is not.

## PUNITIVE DAMAGES

98. Plaintiff realleges and incorporates by reference paragraphs 1 to 97 of this complaint.

99. Plaintiff Jim Moore alleges that defendants, and each of them, are guilty of malice, fraud and oppression as defined by California Civil Code §3294, and that Jim Moore should recover, in addition to actual damages, damages to make an example of and to punish defendants and each of them for their actions.

## PRAYER

WHEREFORE, plaintiff prays judgment as follows:

1. For a declaration that the notice of trustee Sale filed on or about December 6, 2007 and attached as Exhibit 1 and is invalid, unlawful, and does not provide the necessary foundation for the conduct of a trustee sale, as described in California Civil Code §2924 et seq..

2. For a declaration that defendants have violated California Civil Code §2924f and §2624d in this non-judicial foreclosure process.

3. For a declaration that the promissory note executed on or about September 23, 2004 and secured by Alameda trust deed x1 is unconscionable.

4. This Court order the remedy of rescission of the loan in this matter.

5. For an injunction permanently prohibiting the defendants, and each of them, and their successors and agents from conducting a non-judicial foreclosure sale of plaintiff's home located at 1258 Duffy Drive, Brentwood, CA 94513.

6. Defendants render a full, complete, detailed, and itemized accounting reflecting the amounts they claim are past due, the principal, interest, taxes, assessments, insurance premiums, or advances, and recurring obligations, and particularly attorney and trustee fees. That they render proof of existence of their

-20-

EXHIBIT "A"

1  alleged note and security interest on  1258 Duffy Drive, Brentwood, CA 94513.

2  That defendants substantiate their accounting with detailed documentation.

3          7.  That Plaintiff Jim Moore  be declared to be the prevailing party.

4          8. For attorney fees pursuant to California Civil Code §1717.

5          9. For general and special damages.

6          10. For punitive damages.

7          11. For such other and further relief as the court may deem proper.

8

9  SPIELBAUER LAW FIRM

10

11

12

13  Thomas Spielbauer, Esq.
    Attorney for Plaintiff
14  [Signature by Fax/Email]

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-21-

**EXHIBIT "A"**

1

## VERIFICATION

2   I, Jim E. Moore, am the plaintiff in the above-entitled action. I have read the

3   foregoing complaint and know the contents thereof. The same is true of my own

4   knowledge, except as to those matters which are therein alleged on information

5   and belief, and as to those matters, I believe it to be true.

6   I declare under penalty of perjury under the laws of the State of California

7   that the foregoing is true and correct.

8   January 4, 2008

9

10  Jim E. Moore

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "A"**

1

## TABLE OF EXHIBITS

2

3                                                                        Exhibit

4

5    Notice of Trustee Sale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6

7    Truth in Lending Disclosure of September 15, 2004 . . . . . . . . . . . . . . . . . . . . . . . 2

8

9    Truth in Lending Disclosure of September 23, 2004 . . . . . . . . . . . . . . . . . . . . . . . 3

10

11   Notice of the Right to Cancel (TILA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

12

13   Promissory (Exploding ARM) Note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

14

15   Deed of Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "A"**

# Exhibit 1

Notice of Trustee Sale

EXHIBIT "A"

NOV-09-2007 FRI 03:33 PM PRIOITY POSTING          FAX NO. 01                    P. 27/34

Recording requested by:
STEWART TITLE OF CALIFORNIA, INC.

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

*334765*

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
NTSP20070161903582

Space above this line for Recorder's use only

Trustee Sale No.: 20070161903582        Title Order No.: 00696401        FHA/VA/PMI No.: 21971669

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 09/23/2004. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NDEx West, LLC, as duly appointed Trustee under and pursuant to Deed of Trust Recorded on 10/01/2004 as Instrument No. 2004-0378372-00 of official records in the office of the County Recorder of CONTRA COSTA County, State of CALIFORNIA.

EXECUTED BY:    JAMES E MOORE A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY,
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (payable at time of sale in lawful money of the United States).
DATE OF SALE:    12/06/2007        TIME OF SALE:    1:30 P.M.
PLACE OF SALE:    AT THE COURT ST. ENTRANCE TO THE COUNTY COURTHOUSE, 725 COURT ST., (CORNER
OF MAIN AND COURT ST.) MARTINEZ, CA.
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
1158 DUFFY WY, BRENTWOOD, CALIFORNIA 94513
APN#:    017-201-019-1

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $307,967.68. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
PRIORITY POSTING & PUBLICATION
17501 IRVINE BLVD., SUITE ONE
TUSTIN, CA 92780
714-573-1965
www.priorityposting.com

NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

NDEx West, L.L.C. as Authorized Agent

_____    Dated: 11/09/2007

PCU9_NoticeOfTrusteeSale.rpt - Pub - 05/17/2007 - Ver-15                    Page 1 of 1

## EXHIBIT "A"

# Exhibit 2
Truth in Lending Disclosure
of September 15, 2004

EXHIBIT "A"

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

CREDITOR:
　　BNC MORTGAGE, INC.
　　P.O. BOX 19656
　　IRVINE, CA 92623-9656
BORROWERS: JAMES  MOORE

[x] Preliminary  [ ] Final
DATE: 09/15/2004
LOAN NO.: COS008341
Type of Loan: 2 YEAR FIXED 1/7

ADDRESS: 1258 DUFFY WY
CITY/STATE/ZIP: BRENTWOOD, CA 94513
PROPERTY: 1258 DUFFY WY BRENTWOOD CA 94513

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 7.706 (e)  % | $ 432,642.93 (e) | $ 271,807.46 (e) | $ 704,450.39 (e) |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE monthly BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE monthly BEGINNING |
|---|---|---|---|---|---|
| 24 | $1,948.23 | 12/01/2004 | | | |
| 335 | $1,957.44 | 12/01/2006 | | | |
| 1 | $1,950.47 | 11/01/2004 | | | |

DEMAND FEATURE: [X] This loan does not have a Demand Feature.  [ ] This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
[X] This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 1258 DUFFY WY BRENTWOOD CA 94513

ASSUMPTION:   Someone buying this property  [X] cannot assume the remaining balance due under original mortgage terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES:    $70.00

PROPERTY INSURANCE: [ ] Property hazard insurance in the amount of $0.00   with a mortgage clause to the lender
is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance [ ] is  [X] is not available through the lender at an estimated cost of $0.00  for a  year term.

LATE CHARGES:    If your payment is more than 10  days late, you will be charged a late charge of 6.000  % of the overdue payment.

PREPAYMENT:    If you pay off your loan early, you
[X] may  [ ] will not  have to pay a penalty.
[ ] may  [X] will not  be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.
e means estimate   . All of the numerical disclosures except the late fee disclosure are estimates.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____
JAMES  MOORE    BORROWER/DATE

_____
BORROWER/DATE

_____
BORROWER/DATE

_____
BORROWER/DATE

**EXHIBIT "A"**

# Exhibit 3

Truth in Lending Disclosure
of September 23, 2004

Dec 04 07 01:44p    Patrick Pulatie          925-522-0371              p.1

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

CREDITOR:
    BNC MORTGAGE, INC.
    P.O. BOX 19656
    IRVINE, CA 92623-9656
BORROWERS: JAMES E. MOORE

☐ Preliminary  ☒ Final
*DATE:* 09/23/2004
*LOAN NO.:* COS008341
*Type of Loan:* 2 YEAR FIXED 1/7

ADDRESS: 1258 DUFFY WY
CITY/STATE/ZIP: BRENTWOOD, CA 94513
PROPERTY: 1258 DUFFY WY BRENTWOOD CA 94513

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.186 (e)    % | $ 577,381.07 (e) | $ 293,180.58 (e) | $ 870,561.65 (e) |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE<br>monthly BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE<br>monthly BEGINNING |
|---|---|---|---|---|---|
| 24  | $2,268.02 | 11/01/2004 | | | |
| 335 | $2,428.98 | 11/01/2006 | | | |
| 1   | $2,420.87 | 10/01/2034 | | | |

DEMAND FEATURE:  ☒ This loan does not have a Demand Feature.       ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
☒ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY:   You are giving a security interest in the property located at: 1258 DUFFY WY BRENTWOOD CA 94513

ASSUMPTION:  Someone buying this property  ☒ cannot assume the remaining balance due under original mortgage terms
☐ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES:     $ 70.00

PROPERTY INSURANCE:       ☐ Property hazard insurance in the amount of $0.00                with a mortgage clause to the lender
is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance ☐ is  ☒ is not available through the lender at an estimated cost of  $0.00           for a           year term.

LATE CHARGES:    If your payment is more than 10       days late, you will be charged a late charge of 6.000         % of the
overdue payment.

PREPAYMENT:   If you pay off your loan early, you
☒ may  ☐ will not    have to pay a penalty.
☐ may  ☒ will not    be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date,
and prepayment refunds and penalties.
e means estimate  .  All of the numerical disclosures except the late fee disclosure are estimates.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____
JAMES E. MOORE                          BORROWER/DATE

_____
BORROWER/DATE

_____
BORROWER/DATE

_____
BORROWER/DATE

**EXHIBIT "A"**

# Exhibit 4

Notice of the Right to Cancel (TILA)

**EXHIBIT "A"**

## NOTICE OF RIGHT TO CANCEL

Application No. COS008341                    Loan No. COS008341
Borrowers: JAMES E. MOORE

Property Address: 1258 DUFFY WY, BRENTWOOD, CA 94513

**YOUR RIGHT TO CANCEL:**
You are entering into a transaction that will result in a mortgage, lien or security interest on/in your home. You have a legal right under federal law to cancel this transaction, within three business days from whichever of the following events occurs last:

> ENTER
> DATE

1. the date of the transaction, which is _____ ; or
2. the date you receive your Truth in Lending disclosures; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL:**

If you decide to cancel this transaction, you may do so by notifying us by faxing this form to (877) 553-4058 or in writing, at:

BNC MORTGAGE, INC.
1901 Main Street
Irvine, CA 92614-6524
ATTN: Funding Dept.

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

> ENTER
> DATE

If you cancel by mail or telegram, you must send a notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time. Please note that if more than one consumer has the right to cancel this transaction, any such consumer acting alone may exercise his or her right to cancel and such cancellation shall be effective as to all consumers.

### I WISH TO CANCEL

_____            _____
Date                                 Consumer's Signature

ON THE DATE OF THE TRANSACTION LISTED ABOVE I/WE, THE UNDERSIGNED, EACH RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME/US OF MY/OUR RIGHT TO CANCEL THIS TRANSACTION.

_____   _____        _____   _____
JAMES E. MOORE                Date                                        Date

_____   _____        _____   _____
                              Date                                        Date

_____   _____        _____   _____
                              Date                                        Date

**EXHIBIT "A"**

# Exhibit 5
Promissory (Exploding ARM) Note

EXHIBIT "A"

### ADJUSTABLE RATE NOTE
(LIBOR 6-Month Index-Rate Caps)

Loan No.: COS008341

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| September 23, 2004 | IRVINE | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

1258 DUFFY WY, BRENTWOOD, CA 94513
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 302,600.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is BNC MORTGAGE, INC., A DELAWARE CORPORATION . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.225    %.  The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.  I will make my monthly payments on the first day of each month beginning on    November 1, 2004    .

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    October 1, 2034    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   6501 IRVINE CENTER DRIVE, IRVINE, CA 92618

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 2,268.02 . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the first day of   October, 2006    , and on that day every    6th    month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6-month U.S. dollar-denominated deposits in the London market based on quotations of major banks, as published in the "Money Rates" section of The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  Six And 925/1000             percentage points ( 6.925      %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125 %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.225        % or less than    8.225        % . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  one           percentage points (    1.000       %) from the rate of interest I have been paying for the preceding    6   months. My interest rate will never be greater than 15.225      % or less than    8.225      %.

**EXHIBIT "A"**

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

If within  twenty-four          (  24   ) months after the date of execution of the Security Instrument (as defined below) I make a full Prepayment or partial Prepayment(s), I will at the same time pay to the Note Holder a prepayment charge equal to six (6) months' advance interest on the amount of the Prepayment that, when added to all other amounts prepaid during the 12-month period immediately preceding the date of the Prepayment, exceeds twenty percent (20%) of the original Principal amount of this Note. However, for purchase loans only (this does not include refinance loans), I have a 90 day window period from the date of the "Notice of Interest Rate Change" to make a prepayment on my loan without a prepayment penalty charge. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial prepayment without imposition of a prepayment charge.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6 %                    of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

ADJUSTABLE RATE NOTE-LIBOR 6-MONTH INDEX - Single Family

**EXHIBIT "A"**

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)          _____(Seal)
JAMES E. MOORE                    -Borrower                              -Borrower

_____(Seal)          _____(Seal)
                                  -Borrower                              -Borrower

_____(Seal)          _____(Seal)
                                  -Borrower                              -Borrower

**EXHIBIT "A"**

378872

Loan No · COS008341

ADJUSTABLE RATE RIDER
(LIBOR 6-Month Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this         23rd  day of September, 2004 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's
Adjustable Rate Note (the "Note") to
BNC MORTGAGE, INC., A DELAWARE CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at

1258 DUFFY WY, BRENTWOOD, CA  94513
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE
AND THE MONTHLY PAYMENT.  THE NOTE LIMITS THE AMOUNT THE BORROWER'S
INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE
BORROWER MUST PAY.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows·

INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of         8.225         %  The Note provides for changes in
the interest rate and the monthly payments, as follows

"4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)  Change Dates
The interest rate I will pay may change on the first day of October, 2006 , and on that day every   6th    month
thereafter   Each date on which my interest rate could change is called a "Change Date "

(B)  The Index
Beginning with the first Change Date, my interest rate will be based on an Index  The "Index" is  the average of
interbank offered rates for 6-month U S dollar-denominated deposits in the London market based on quotations of
major banks, as published in the "Money Rates" section of The Wall Street Journal   The most recent Index figure
available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable
information   The Note Holder will give me notice of this choice

---

ADJUSTABLE RATE RIDER-LIBOR  6 MONTH INDEX-Single Family-                     Rev  10/95
Page 1 of 2

Borrower Initials

H ADXR1

**EXHIBIT "A"**

378872

(C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And 925/1000                                                                                              percentage point(s) (      6.925      %) to the Current Index  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%)  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The  Note  Holder  will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that  I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments  The  result of this calculation will be the new amount of my monthly payment

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.225          % or less than      8.225          %  Thereafter,  my interest rate will never be increased or decreased on any single Change Date by more than   ONE AND 00/100 percentage  point(s)  1 00            %) from the rate of interest I have been paying for the preceding         6          months. My interest rate will never be greater than      15.225          % or less than          8.225          %

(E)  Effective Date of Changes

My  new interest rate will become effective on each Change Date   I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

(F) Notice of Changes

The  Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change  The notice will include information required by law to be given me and  also the title and telephone number of a person who will answer any question I may have regarding the notice  "

BY SIGNING BELOW,  Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Adjustable Rate Rider

| _James E. Moore_ (Seal) | (Seal) |
|---|---|
| JAMES E. MOORE    -Borrower | -Borrower |

| (Seal) | (Seal) |
|---|---|
| -Borrower | -Borrower |

| (Seal) | (Seal) |
|---|---|
| -Borrower | -Borrower |

ADJUSTABLE RATE RIDER-LIBOR  6 MONTH INDEX-Single Family-                    Rev  10/95
Page 2 of 2

Borrower Initials  _____  ___  ___  ___  ___

END OF DOCUMENT

**EXHIBIT "A"**

# Exhibit 6
Deed of Trust

**EXHIBIT "A"**

# Exhibit 6
Deed of Trust

**EXHIBIT "A"**

RECORDING REQUESTED BY
NEW CENTURY TITLE COMPANY.

Recording Requested By·

Return To·

BNC MORTGAGE, INC.
P.O. BOX 19656
IRVINE, CA 92623-9656

Prepared By.

47042306

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2004-0378872-00
Acct 10- New Century Title
Friday, OCT 01, 2004 08:00:00
MIC    $1.00 MOD   $18.00 REC   $22 00
TCF   $17.00 DAF    $1.80 REF    $0.20
Ttl Pd   $60.00        Nbr-0002361468
                              cgr/R2/1-18

────[Space Above This Line For Recording Data]────

# DEED OF TRUST

MIN 100122200001177267

Loan No . COS008341

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated September 23, 2004 together with all Riders to this document.
(B) "Borrower" is JAMES E. MOORE, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY.

Borrower's address is 1258 DUFFY WY
BRENTWOOD, CA 94513                . Borrower is the trustor under this Security Instrument.
(C) "Lender" is BNC MORTGAGE, INC., A DELAWARE CORPORATION

Lender is a corporation
organized and existing under the laws of Delaware

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01

-6A(CA) (0207)
Page 1 of 15                Initials
    VMP MORTGAGE FORMS - (800)521-7291

**EXHIBIT "A"**

378872

Lender's address is P.O. BOX 19656, IRVINE, CA 92623-9656

(D) "Trustee" is T.D. SERVICE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated September 23, 2004
The Note states that Borrower owes Lender three hundred two thousand six hundred and 00/100                                                                          Dollars
(U S $302,600.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 1, 2034            .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable].

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

| | | |
|---|---|---|
| ⊛ -6A(CA) (0207) | Page 2 of 15 | Initials __ | Form 3005  1/01 |

**EXHIBIT "A"**

378872

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S C Section 2601 et seq ) and its implementing regulation, Regulation X (24 C F R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender. (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                    of        CONTRA COSTA, CALIFORNIA          :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HERETO AS EXHIBIT A.

Parcel ID Number  017-201-019                              which currently has the address of
1258 DUFFY WY                                                          [Street]
BRENTWOOD                                    [City], California  94513          [Zip Code]
("Property Address")·

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right· to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

-6A(CA) (0207)                      Page 3 of 15              Initials          Form 3005  1/01

**EXHIBIT "A"**

378872

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS Borrower and Lender covenant and agree as follows.

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority. (a) interest due under the Note; (b) principal due under the Note, (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time Any such waiver may only be

*For purchase loans only (this does not include refinance loans), borrower shall have a 90 day window period from the date of the "Notice of Interest Rate Change" to make a prepayment on Note without a prepayment penalty charge

🔲 -6A(CA) (0207)                    Page 4 of 15                  Initials ___                  Form 3005  1/01

**EXHIBIT "A"**

378872

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9 If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

**EXHIBIT "A"**

378872

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender Lender may make proof of loss if not made promptly by Borrower Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

**EXHIBIT "A"**

378872

the excess, if any, paid to Borrower  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim  The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to  (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable

EXHIBIT "A"

378872

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(CA) (0207)                    Page 8 of 15                    Initials ___                    Form 3005   1/01

**EXHIBIT "A"**

378872

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

**EXHIBIT "A"**

378872

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note)  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender  Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure  There may be only one designated notice address under this Security Instrument at any one time  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**EXHIBIT "A"**

378872

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument· (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of. (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument  Those conditions are that Borrower  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6A(CA) (0207)                    Page 11 of 15                    Initials                    Form 3005  1/01

**EXHIBIT "A"**

378872

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6A(CA) (0207)                    Page 12 of 15          Initials          Form 3005  1/01

**EXHIBIT "A"**

378872

NON-UNIFORM COVENANTS  Borrower and Lender further covenant and agree as follows.

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**EXHIBIT "A"**

378872

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses.

_____          _____ (Seal)
                                            JAMES E. MOORE                    -Borrower

_____          _____ (Seal)
                                                                              -Borrower

_____ (Seal)           _____ (Seal)
                          -Borrower                                   -Borrower

_____ (Seal)           _____ (Seal)
                          -Borrower                                   -Borrower

_____ (Seal)           _____ (Seal)
                          -Borrower                                   -Borrower

**EXHIBIT "A"**

378872

State of California
County of *Contra Costa*                        } ss.

On *September 26, 2004* before me, DENISE ANN GONSALVES

                                                      personally appeared

JAMES E. MOORE

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

*Denise Ann Gonsalves* _____ (Seal)

DENISE ANN GONSALVES
Commission # 1319867
Notary Public - California
Alameda County
My Comm. Expires Sep 3, 2005

VMP-6A(CA) (0207)              Page 15 of 15       Initials          Form 3005  1/01

**EXHIBIT "A"**

378872

Exhibit A

All that certain real property situated in the City of Brentwood, County of Contra Costa, State of California, described as follows:

Lot 19, as shown on the Amended Map of Subdivision 4249, filed December 4, 1972, Map Book 152, Page 47, Contra Costa County Records.

EXCEPTING THEREFROM:

A. Rights reserved in the Deed from Zelma Dainty Beaman and Willma Dainty Seabury, recorded June 5, 1972, in Book 6667 of Official Records, Page 617, as follows:

"Fifty percent (50%) of all rights to extract gas, oil, hydrocarbons and minerals from the premises herein described which lie five hundred feet (500') beneath the surface of the earth."

By Quitclaim Deed recorded August 11, 1972, in Book 6723 of Official Records, Page 115, Zelma Dainty Beaman and Willma Dainty Seabury released and quitclaimed "All rights above a point 500 feet below the surface of the land."

B. Rights reserved in the Deed from Beverly Peterson, recorded October 31, 1988, in Book 14686 of Official Records, Page 838, as follows:

The remaining 50% of "All oil, gas, casinghead gas, asphaltum and other hydrocarbons and all chemical gas, now or hereafter found, situated or located in all or any part of or portion of the land herein described lying more than five hundred feet (500') below the surface thereof, together with the right to slant drill for and remove all or any of said oil, gas, casinghead gas, asphaltum and other hydrocarbons and chemical gas lying below a depth of more than five hundred feet below the surface thereof; but without any right whatsoever to enter upon the surface of said land or upon any part of said lands within five hundred feet (500') vertical distance below the surface thereof.

Commonly known as:        1258 Duffy Way
APN:                      017-201-019

**EXHIBIT "A"**

378872

Loan No · COS008341

ADJUSTABLE RATE RIDER
(LIBOR 6-Month Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this          23rd day of September, 2004 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's
Adjustable Rate Note (the "Note") to
BNC MORTGAGE, INC., A DELAWARE CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at

1258 DUFFY WY, BRENTWOOD, CA 94513
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE
AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S
INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE
BORROWER MUST PAY.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows·

INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of          8.225          %  The Note provides for changes in
the interest rate and the monthly payments, as follows

"4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of October, 2006 , and on that day every   6th    month
thereafter   Each date on which my interest rate could change is called a "Change Date "

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index  The "Index" is  the average of
interbank offered rates for 6-month U S  dollar-denominated deposits in the London market based on quotations of
major banks, as published in the "Money Rates" section of The Wall Street Journal  The most recent Index figure
available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable
information  The Note Holder will give me notice of this choice

---

ADJUSTABLE RATE RIDER-LIBOR  6 MONTH INDEX-Single Family-                Rev  10/95
Page 1  of 2

Borrower Initials ___ ___ ___ ___ ___ ___

EXHIBIT "A"

378872

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And 925/1000                                                                                                   percentage point(s) (     6.925     %) to the Current Index  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%)  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments  The result of this calculation will be the new amount of my monthly payment

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.225          % or less than      8.225          % Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  ONE AND 00/100 percentage point(s)  1 00          %) from the rate of interest I have been paying for the preceding          6          months. My interest rate will never be greater than          15.225          % or less than          8.225          %

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date   I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change  The notice will include information required by law to be given me and  also the title and telephone number of a person who will answer any question I may have regarding the notice  "

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Adjustable Rate Rider

| | | | |
|---|---|---|---|
| _JAMES E. MOORE_ | (Seal) -Borrower | | (Seal) -Borrower |
| | (Seal) -Borrower | | (Seal) -Borrower |
| | (Seal) -Borrower | | (Seal) -Borrower |

ADJUSTABLE RATE RIDER-LIBOR  6 MONTH INDEX-Single Family-          Rev 10/95
Page 2 of 2

Borrower Initials ___  ___  ___  ___  ___

**END OF DOCUMENT**

**EXHIBIT "A"**

SUPERIOR COURT - MARTINEZ
COUNTY OF CONTRA COSTA
MARTINEZ, CA, 94553

MOORE VS CHASE BANK ET AL.

NOTICE OF CASE MANAGEMENT CONFERENCE                CIVMSC08-00040

1.  NOTICE: THE CASE MANAGEMENT CONFERENCE HAS BEEN SCHEDULED FOR:

DATE:  05/22/08        DEPT:  16        TIME:  8:30

THIS FORM, A COPY OF THE NOTICE TO PLAINTIFFS, THE ADR INFORMATION
SHEET, A BLANK CASE MANAGEMENT CONFERENCE QUESTIONNAIRE, AND A BLANK
STIPULATION FORM ARE TO BE SERVED ON OPPOSING PARTIES.  ALL PARTIES
SERVED WITH SUMMONS AND COMPLAINT/CROSS-COMPLAINT OR THEIR ATTORNEY
OF RECORD MUST APPEAR.

2.  You may stipulate to an earlier Case Management Conference.  If
all parties agree to an early Case Management Conference, please
contact the Court Clerk's Office at (925)957-5794 for Unlimited Civil
cases and (925)957-5791 for Limited Civil cases for assignment of an
earlier date.

3.  You must be familiar with the case and be fully prepared to par-
ticipate effectively in the Case Management Conference and to discuss
the suitability of this case for the EASE Program, private mediation,
binding or non-binding arbitration, and/or use of a Special Master.

4.  At any Case Management Conference the court may make pretrial
orders including the following:

    a.  an order establishing a discovery schedule
    b.  an order referring the case to arbitration
    c.  an order transferring the case to limited jurisdiction
    d.  an order dismissing fictitious defendants
    e.  an order scheduling exchange of expert witness information
    f.  an order setting subsequent conference and the trial date
    g.  an order consolidating cases
    h.  an order severing trial of cross-complaints or bifurcating
        issues
    i.  an order determining when demurrers and motions will be filed

                        SANCTIONS
If you do not file the Case Management Conference Questionnaire or
attend the Case Management Conference or participate effectively in
the Conference, the court may impose sanctions (including dismissal of
the case and payment of money).

        Clerk of the Superior Court of Contra Costa County
I declare under penalty of perjury that I am not a party to this
action, and that I delivered or mailed a copy of this notice to the
person representing the plaintiff/cross-complainant.

Dated:  01/04/08              _____ O. Woon_____
                                      D. WAGNER, Deputy Clerk

**EXHIBIT "A"**

✎ JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a)  PLAINTIFFS

JIM E. MOORE

**DEFENDANTS**

CHASE BANK; BNC MORTGAGE, INC; et al.

(b) County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Thomas Spielbauer                    (408) 451-8499
THE SPIELBAUER LAW FIRM
1250 Oakmead Parkway, Suite 210

Attorneys (If Known)

Eric D. Houser                      (949) 679-1111
HOUSER & ALLISON, APC
9970 Research Drive
Irvine, CA 92618

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only)                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | | ☐ 892 Economic Stabilization Act |
| | | | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 791 Empl. Ret. Inc. | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | Security Act | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | | ☐ 871 IRS—Third Party | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities — | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | to Justice |
| | ☐ 446 Amer. w/Disabilities — | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus — | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. §§ 1601 et seq., 28 U.S.C. § 1441(a)
Brief description of cause:
Improper loan disclosures and wrongful foreclosure.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND          ☐ SAN JOSE

DATE
January 17, 2008

SIGNATURE OF ATTORNEY OF RECORD