Thomas Spielbauer, Esq.
SBN 78281
THE SPIELBAUER LAW FIRM
1250 Oakmead Parkway, Suite 210
Sunnyvale, CA 94085
(408)451-8499
Fax: (610)423-1395
thomas@spielbauer.com

Attorneys for Jim E. Moore, Plaintiff

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIM E. MOORE,<br><br>                              Plaintiff.<br><br><br>v.s.<br><br><br><br>J. P. CHASE MORGAN BANK; BNC MORTGAGE, INC.;  NDEx West LLC; STIRLING FUNDING CORPORATION; and KEVIN CAYLOR,<br><br>                              Defendants. | No. 3:08-cv-00350-SC<br><br><br>Contra Costa County Superior Court No: MSC08-00040<br><br>MOTION FOR PRELIMINARY INJUNCTION<br><br>Date: Friday, April 4, 2008<br>Time: 10:00 a.m.<br>The Honorable Samuel Conti<br>Courtroom 1, 17th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |

   Plaintiff Jim Moore moves this Court for a preliminary injunction prohibiting defendants Chase Bank, BNC Mortgage Corporation, NDEx West LLC, their agents, servants, and employees, from conducting any kind of foreclosure sale or alienation or transfer or attempted transfer of title and ownership of the property located at 1258 Duffy Drive, Brentwood, CA 94513 during the pendency of this action.  This trustee's sale is currently scheduled for Monday, April 7, 2008 at 1:30 p.m. at the courthouse steps located at 725 Court Street, Martinez, CA.

   Plaintiff JIM MOORE makes this application is on the grounds that plaintiff is entitled to the relief demanded,  and on the ground that great and irreparable

1  injury will result to plaintiff before the matter can be conclusively decided without
2  the imposition of a preliminary injunction.  Additionally, a declaratory judgment
3  which is in the plaintiff's favor will be rendered ineffectual by a foreclosure sale
4  of plaintiff's home.   Pecuniary compensation will not afford adequate relief,
5  particularly in light of the fact that it would be extremely difficult to ascertain the
6  amount of compensation which could afford adequate relief.  The property located
7  at 1258 Duffy Drive, Brentwood, CA 94513 is a three bedroom and two bath
8  home in which plaintiff and his family lives.  The plaintiff and his wife and three
9  children reside in this home and have resided there since 2002.   Restraint of the
10 sale is necessary if a declaratory judgment is to have any effect and accomplish its
11 purpose of avoiding a multiplicity of litigation.

12     This application is based on the verified complaint on file in this case, on the
13 attached memorandum of points and authorities, and on the declarations of Jim
14 Moore and Patrick Pulatie attached hereto.

15 Dated: February 28, 2008

17                    Thomas Spielbauer

19                    Thomas Spielbauer

-2-

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . .  1

INJUNCTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

A PRELIMINARY INJUNCTION SHOULD BE ISSUED WHERE
    PLAINTIFF'S RIGHT TO RELIEF IS APPARENT FROM THE
    COMPLAINT AND THE RELIEF CONSISTS IN RESTRAINING THE
    COMMISSION OR CONTINUANCE OF THE ACT COMPLAINED OF,
    TO AVOID IRREPARABLE INJURY DURING LITIGATION, AND
    WHERE THE LEGAL REMEDY IS INADEQUATE. . . . . . . . . . . . . . . .  9

PRELIMINARY INJUNCTION BOND . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

# TABLE OF AUTHORITIES

Cases:

*14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal. App. 4th 1396 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Aldrich v Transcontinental Land & Water Co.* (1955) 131 Cal.App.2d 788 . . . . 11

*Anderson v. Heart Federal Savings* (1989) 208 Cal.App.3d 202 . . . . . . . . . . . 1-4

*Archibald Estate v. Matteson* (App. 1907) 5 Cal.App. 441 . . . . . . . . . . . . . . . . . 5

*Baby Tam & Co. v. City of Las Vegas* (9th Circuit 1999) 154 F.3d 1097 . . . . . . . 10

*Bank of America Nat. Trust & Savings Ass'n v. Reidy* (1940) 15 Cal. 2d 243 . . . 4

*Barahona-Gomez v. Reno* (9th Cir. 1999) 167 F3d 1228 . . . . . . . . . . . . . . . . . 12

*BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC* (11th Cir. 2005) 425 F3d 964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bisno v. Sax* (2d Dist. 1959) 175 Cal. App. 2d 714 . . . . . . . . . . . . . . . . . . . . 2, 3

*Bowman v. Bowman* (App. 4 Dist. 1932) 125 Cal.App. 602 . . . . . . . . . . . . . . . . 5

*Brown v. Busch* (3d Dist. 1957) 152 Cal. App. 2d 200, 203-204. . . . . . . . . . . . . 4

*Conover v. Hall* (1974) 11 Cal. 3d 842 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Dickson, Carlson and Campillo v. Pole* (2000) 83 Cal. App. 4th 436 . . . . . . . . . 8

*Dingley v. Buckner* (1909) 11 Cal.App. 181 . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Doctor's Assocs., Inc. v. Stuart* (2nd Cir. 1996) 85 F3d 975 . . . . . . . . . . . . . . . 12

*Dodge, Warren & Peters Insurance Services, Inc. v. Riley* (2003) 105 Cal. App. 4th 1414 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Eby v. Reb Realty, Inc.* (9th Cir.1974) 495 F.2d 646 . . . . . . . . . . . . . . . . . . . . . . 5

*Elliott v. Kiesewetter* (3rd Cir. 1996) 98 F3d 47 . . . . . . . . . . . . . . . . . . . . . . . 13

*Fundicao Tupy S.A. v. United States* (Fed. Cir. 1988) 841 F2d 1101 . . . . . . . . . 9

*GoTo.com, Inc. v. Walt Disney Co.* (9th Cir. 2002) 202 F3d 1199 . . . . . . . . . . . 15

*Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496 . . . . . . . . . . . . . . . 1

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.* (4th Cir. 1999) 174 F3d 411 . . . . 12

*Hunt v. Superior Court* (1999) 21 Cal. 4th 984 . . . . . . . . . . . . . . . . . . . . . . . . 13

*I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal. 3d 281 . . . . . . . . . . . . . . 1

*In re Worcester* (9th Cir. 1987) 811 F.2d 1224 . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Jorgensen v. Cassiday* (9th Cir. 2003) 320 F3d 906 . . . . . . . . . . . . . . . . . . . . . 12

*Kaepa, Inc. v. Achilles Corp.* (5th Cir. 1996) 76 F3d 624 . . . . . . . . . . . . . . . . . 12

*King v. Meese* (1987) 43 Cal. 3d 1217 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lo Nguyen v. Calhoun* (6th District 2003) 105 Cal.App.4th 428 . . . . . . . . . . . . . 1

*Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65 . . . . . . . . . . . . . . . . 5

*Miller v. Cote* (4th Dist. 1982) 127 Cal. App. 3d 888 . . . . . . . . . . . . . . . . . . . . 2

*Miss World Limited v. Mrs. America Pageants, Inc.* (9th Cir. 1988) 856 F.2d 1445 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Moeller v. Lien* (1994) 25 Cal.App.4th 822 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Mourning v. Family Publications Serv. Inc.*, 411 U.S. 356 . . . . . . . . . . . . . . . . . 5

*Orantes-Hernandez v. Smith* (CD CA 1982) 541 F.Supp. 351 . . . . . . . . . . . . . 12

*ProFamily Advocates v. Gomez* (1996) 46 Cal. App. 4th 1674 . . . . . . . . . . . . . . 13

*Rodeo Collection, Ltd. v. W. Seventh* (9th Circuit 1987) 812 F.2d 1215 . . . . . . . 10

*Rynsburger v. Dairymen's Fertilizer Coop., Inc.* (1968) 266 Cal.App.2d 269 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Saterstrom v. Glick Bros. Sash, Door & Mill Co.* (3d Dist. 1931) 118 Cal. App. 379 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Scherr v. Volpe* (7th Cir. 1972) 466 F2d 1027 . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Semar v. Platte Valley Federal Savings & Loan Association* (9th Cir.1986)791 F.2d 699 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Smith v. Williams* (1961) 55 Cal. 2d 617 . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

*Stirton v. Pastor* (4th Dist. 1960) 177 Cal. App. 2d 232 . . . . . . . . . . . . . . . . . . 4

*Sundance Land Corporation v. Cmty. First Federal Savings and Loan Association* (9th Circuit 1988) 840 F.2d 653 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sweatt v. The Foreclosure Co., Inc.* (1985  6th District) 166 Cal.App.3d 273 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*System Inv. Corporation v. Union Bank* (1971) 21 Cal.App.3d 137 . . . . . . . . 1-3

*Teachers Ins. & Annuity Assn. v. Furlotti* (1999) 70 Cal. App. 4th 1487 . . . . . . 13

*Tomczak v. Ortega* 240 Cal.App.2d 902 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Union Oil Co. v Domengeaux* (1939) 30 Cal App2d 266 . . . . . . . . . . . . . . . . . . 11

*Wells Fargo & Company v. Robinson* (1859) 13 Cal. 133 . . . . . . . . . . . . . . . . . 8

*Whitman v. Transtate Title Co.*(4th Dist. 1985) 165 Cal. App. 3d 312 . . . . . . . . 4

*Wind v. Herbert* (1960) 186 Cal.App.2d 276 . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Federal Rules:
Federal Rule of Civil Procedure 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

Statutes:
 California Civil Code §3517 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

California Civil Code §3387 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

California Civil Code, §2924f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

California Code of Civil Procedure §526 . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Fretz v. Burke* (1967) 247 Cal.App.2d 741 . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Treatises:
Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and Mortgages,
Chapter 10 §10.182 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and Mortgages,
Chapter 10 §10.198 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and Mortgages,
Chapter 10 §10.179 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**MEMORANDUM OF POINTS AND AUTHORITIES**

Under California Civil Code §2924 et seq., a lender must properly serve and record a notice of default setting forth the borrower's breach in order to effect a foreclosure. After 90 days, three months, have elapsed, the lender must thereafter properly serve and record the Notice of Trustee Sale at least 20 days prior to the actual sale. Assuming proper compliance with the law, the property is then auctioned to the highest bidder at the foreclosure sale.

California foreclosure law, which is nonjudicial in its entirety, was intended to reflect a fair balance of the respective interests of the trustors, the trustees and the beneficiaries. While beneficiaries want an inexpensive and speedy remedy for defaults, trustors need protection against the loss of their property rights. This is particularly true since the entire foreclosure process occurs without judicial oversight.[1] The harshness of non-judicial foreclosure has been recognized. "The exercise of the power of sale is a harsh method of foreclosing the rights of the grantor."[2]

The statutory requirements are intended to protect the trustor from a wrongful or unfair loss of the property[3], and a valid foreclosure by the private

---

[1] Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and Mortgages, Chapter 10 §10.179; *I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal. 3d 281.

[2] *Anderson v. Heart Federal Savings* (1989) 208 Cal.App.3d 202, 215, citing to *System Inv. Corporation v. Union Bank* (1971) 21 Cal.App.3d 137, 153.

[3] *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830; accord, *Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 503; *Lo Nguyen v. Calhoun* (6th District 2003) 105 Cal.App.4th 428, 440.

1  power of sale requires ***strict compliance*** with the requirements of the statute.[4]  It

2  has been a cornerstone of foreclosure law that the statutory requirements,

3  intending to protect the trustor from a wrongful or unfair loss of the property,

4  must be complied with strictly.[5]  Close does not count.

5   As a result, any trustee's sale based on a statutorily deficient Notice of

6  Default is invalid.[6]  Additionally, any trustee's sale based on a statutorily

7  deficient Notice of Trustee Sale is invalid.[7]

8   The California Sixth District Court of Appeal observed,  "Pursuing that

9  policy [of judicial interpretation], the courts have fashioned rules to protect the

10  debtor, one of them being that the notice of default will be strictly construed and

11  must correctly set forth the amounts required to cure the default."[8]  The same

12  reasoning applies to a notice of trustee sale.

13

14   [4] Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and

15  Mortgages, Chapter 10 §10.179; *Anderson v. Heart Federal Sav. & Loan Assn*.,
208 Cal. App. 3d 202, 211  (3d Dist. 1989), reh'g denied and opinion modified,

16  (Mar. 28, 1989); *Miller v. Cote* (4th Dist. 1982) 127 Cal. App. 3d 888, 894; *System*

17  *Inv. Corp. v. Union Bank* (2d Dist. 1971) 21 Cal. App. 3d 137, 152-153; *Bisno v.*

18  *Sax* (2d Dist. 1959) 175 Cal. App. 2d 714, 720.

19   [5] Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and

20  Mortgages, Chapter 10 §10.182.

21   [6] Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and

22  Mortgages, Chapter 10 §10.182; *Anderson v. Heart Federal Sav. & Loan Assn.* (3d
Dist. 1989) 208 Cal. App. 3d 202, 211, reh'g denied and opinion modified, (Mar.

23  28, 1989);  *Miller v. Cote* (4th Dist. 1982) 127 Cal. App. 3d 888, 894; *System Inv.*

24  *Corp. v. Union Bank* (2d Dist. 1971) 21 Cal. App. 3d 137, 152-153; *Saterstrom v.*
*Glick Bros. Sash, Door & Mill Co.*(3d Dist. 1931) 118 Cal. App. 379.

25   [7]*Anderson v. Heart Federal Sav. & Loan Assn*. (3d Dist. 1989) 208 Cal.

26  App. 3d 202, 211, ,reh'g denied and opinion modified, (Mar. 28, 1989).

27   [8] *Sweatt v.  The Foreclosure Co., Inc.* (1985 - 6th District) 166 Cal.App.3d

28  273 at 278, citing to *Miller v. Cote* (1982) 127 Cal.App.3d 888, 894 and  *System*
*Inv. Corp. v. Union Bank* (1971) 21 Cal.App.3d 137, 152-153.

In the case of *Anderson v. Heart Federal Savings*[9], Heart Federal Savings initiated foreclosure proceedings against Anderson due to the fact that Anderson fell behind in his payments. Heart noticed Anderson of the amount due, to include principal and interest. Heart Federal later raised its demand to $40,000. Anderson attempted to tender $25,000 which Heart Federal refused.

The appellate court set aside the resulting foreclosure sale in *Anderson v. Heart Federal Savings*. The court was deeply disturbed by the gross improprieties of the beneficiary, particularly in light of the comprehensive legislative scheme dealing with non-judicial foreclosure sales in California. The Appellate Court made the following, and very pointed, observations.

> "The statutory requirements must be strictly complied with, and a trustee's sale based on statutorily deficient notice of default is invalid. [Citations.] The beneficiary is bound by its notice of default and cannot insist upon any grounds of default other than those stated in that notice. [Citation.]"[10]

> "The provisions of section 2924 of the Civil Code ... must be strictly followed. [Citation.] The person relying upon the notice of default is bound by its provisions, and cannot insist upon any grounds of default other than those stated in that notice. [Citations.]"[11]

> "The obligation of the beneficiary to provide the trustor with an accurate accounting of the amounts due to cure a default is governed by statute."[12]

---

[9] *Anderson v. Heart Federal Savings* (1989) 208 Cal.App.3d 202.

[10] *Anderson v. Heart Federal Savings* (1989) 208 Cal.App.3d 202, 211.

[11] *Anderson v. Heart Federal Savings* (1989) 208 Cal.App.3d 202, 211, citing to *Bisno v. Sax* (1959) 175 Cal.App.2d 714, 720 and to *Tomczak v. Ortega* 240 Cal.App.2d 902, 904 and to *System Inv. Corporation v. Union Bank* (1971) 21 Cal.App.3d 137, 152-153.

[12] *Anderson v. Heart Federal Savings* (1989) 208 Cal.App.3d 202, 215.

1

2

3

> "Compliance with this provision [California Civil Code §2924c(b)(1)] necessarily requires that the beneficiary provide accurate information in response to an inquiry by the trustor."[13]

4

5

6

> A trustor is entitled to an accurate determination of the amounts actually and legally owed. This information is in possession of the beneficiary. The trustor, borrower, is under no obligation to second-guess the amount.[14]

7

8   Courts will set aside a foreclosure sale when there has been fraud, when the

9   sale has been improperly, unfairly, or unlawfully conducted, or when there has

10  been such a mistake that it would be inequitable to let it stand.[15]

11  The Notice of Trustee Sale must contain "A description of the security

12  instrument and an identification of the parties to the instrument." [16]  The notice of

13  trustee sale must also include, among other information, an accurate statement of

14  the total amount of the unpaid balance of the obligation secured by the real

15  property to be sold as well as a statement of the costs, and  expenses, and

16  advances incurred at the time of the initial publication of the notice of sale.[17]

17  Inherent in this requirement is the fact that the notice must contain an *accurate*

18  statement of the total amount due.

19

20   [13]  *Anderson v.  Heart Federal Savings* (1989) 208 Cal.App.3d 202, 216.

21   [14]  *Anderson v.  Heart Federal Savings* (1989) 208 Cal.App.3d 202, 217.

22

23   [15] *Bank of America Nat. Trust & Savings Ass'n v. Reidy* (1940) 15 Cal. 2d 243, 248; *Whitman v. Transtate Title Co.*(4th Dist. 1985) 165 Cal. App. 3d 312, 322-323; *In re Worcester* (9th Cir. 1987) 811 F.2d 1224, 1228.

24   See also *Smith v. Williams* (1961) 55 Cal. 2d 617, 621; *Stirton v. Pastor* (4th

25  Dist. 1960) 177 Cal. App. 2d 232, 234; *Brown v. Busch* (3d Dist. 1957) 152 Cal. App. 2d 200, 203-204.

26

27   [16] California Civil Code, §2924f, subd. (b)(1)

28   [17] California Civil Code §2924f(b)(1); Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and Mortgages, Chapter 10 §10.198.

-4-

1
2
3
4
5
6

The principles of equity apply to foreclosure sales.  One of the principles of equity, as directly stated in the Maxims of Jurisprudence, is California Civil Code §3517.  Section 3517 mandates, "No one can take advantage of his own wrong."  Equity does not allow one to take advantage of his own wrong nor will it assist in perpetration of fraud on another or the public.[18]   A party cannot take advantage of his own fault or wrong.[19]

7
8
9
10
11
12
13
14
15

While the Federal Truth in Lending Act (TILA) is not specifically pled as a cause of action, the legislative purpose of that act is worth considering, particularly since defendant BNC Mortgage Corporation provided TILA disclosures to plaintiff Jim Moore.  TILA was enacted by Congress to "avoid the uninformed use of credit."[20] In order to effectuate this purpose, the TILA has been liberally construed in the Ninth Circuit.[21]  Even technical or minor violations of the TILA impose liability on the creditor.[22] " 'To insure that the consumer is protected ... [the TILA and accompanying regulations must] be absolutely complied with and strictly enforced.' "[23]

16
17
18

The verified complaint and the attached declaration of Jim Moore proves that the defendants in this case are overcharging Mr. Moore.  These documents

19
20
21

[18] *Bowman v. Bowman* (App. 4 Dist. 1932) 125 Cal.App. 602, rehearing denied 125 Cal.App. 602.

22

[19] *Archibald Estate v. Matteson* (App. 1907) 5 Cal.App. 441.

23
24

[20]  *Mourning v. Family Publications Serv. Inc.*, 411 U.S. 356, 377, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973) (quoting 15 U.S.C. Sec. 1601).

25

[21] *Eby v. Reb Realty, Inc*. (9th Cir.1974) 495 F.2d 646, 650.

26
27

[22] *Semar v. Platte Valley Federal Savings & Loan Association* (9th Cir.1986)791 F.2d 699, 704.

28

[23] Id. (quoting *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir.1983)).

prove that the mortgage agreement which was executed in September 2004 is unconscionable, oppressive, and should be declared void against public policy. Additionally, these documents establish that Mr. Moore was misled, which was the intent of BNC Mortgage's incomprehensible, filled legalese and filled with mumbo-jumbo promissory note and trust deed of September 23, 2004. It was a note which had a basement APR of 7.706% and a ceiling of 15.225%.

With these legal concepts in mind, it is clear that the beneficiary and the trustee have failed to properly comply with the requirements of California Civil Code §2924 et seq.. They should not be allowed to benefit from the harsh and severe consequences that non-judicial foreclosure law permits.

As set forth in the verified complaint and attached declaration, there are serious deficiencies and egregious malfeasance in the loan and the security which is the basis of the foreclosure sale. BNC, STERLING, and Kevin Caylor engaged in fraud and the classic bait and switch in the execution of this loan. They offered an attractive interest rate and terms only to switch them at the last minute. They provided to Mr. Moore a favorable Truth in Lending Disclosure statement to lure and lull Mr. Moore and then switched the terms at the time of signing. Mr. Moore had stated that he wanted a 30 year fixed rate note with no more than a 7.5% interest rate. These defendants then offered him only a slightly adjustable loan, which indeed appeared favorable to Mr. Moore. Instead, they foisted upon Mr. Moore an oppressive exploding adjustable rate mortgage, one which guaranteed that Mr. Moore would lose his home to a foreclosure sale after two years. The interest rate capped at 15.225%. That is predatory. The loan was so offensive that it triggered the provisions of HOEPA, which is a part of the Federal Truth in Lending Act.

Then, in true fraudulent fashion. BNC, Sterling, and Kevin Caylor, and their agents, dumped the difficult to understand papers upon Mr. Moore. The notary signing agent threw papers at Mr. Moore on September 23, 2004, rushing him

through the signing process so that he had signed numerous documents in ten point type or less, all within the period of fifteen minutes.  The notary was so rushed that she failed to provide a proper rescission document in the manner she was required by Truth in Lending.

The remaining defendants eagerly benefitted from these bad acts.  J. P. Morgan Chase Bank either was involved in this process from the beginning (by the wholesale funding this loan) or shortly thereafter acquired an interest in this loan.  The proper RESPA disclosures were never provided to Mr. Moore.  These disclosures would have advised Mr. Moore of Chase's exact role in this activity.  As mentioned in the complaint and declaration, NDEx was subsequently brought on board to do the dirty work of seizing and selling Jim Moore's home.

The reality is that this is a poster child model of the subprime meltdown or crisis.  The crisis occurred as a direct result of the acts of greed as manifested by each of the participants in this matter.  The only slight difference is that this loan apparently was not sold to Wall Street investors, which was the intended market of these subprime securities. BNC and Chase licked their chops over the dream of credit card rate interest on a $300,000+ home loan.  They never bothered, however, to qualify Mr. Moore at the 15.225% compounding interest rate to see if he could afford this oppressive interest rate.  They qualified Mr. Moore only at the lowest interest rate of the loan.  They never bothered to disclose to Mr. Moore the slavery which this interest rate was intended to produce.  They never reflected on the fact that these kinds of loans were not only harmful to Mr. Moore and to the economy as well,  but were unrealistic as well. This loan is a poster child of unbridled greed given birth by misrepresentation and deceit.

California Civil Code §3517 deserves repeating.  That section states, "No one can take advantage of his own wrong."  Yet this is exactly what the defendants are attempting to do.

On top of this egregious behavior is the fact that the notice of trustee sale is

defective.  It should be noted that the trustee, NDEx, operates out of Texas.  Plaintiff's counsel has noted that Texas trustees like to operate by their own rules, which rules may note comport to California foreclosure law requirements.

The Notice of Sale must contain the name, street address, and either a toll-free telephone number or telephone number in California of the trustee.[24]  The only telephone number posted on the notice of trustee sale (Exhibit 1 of the complaint) is the telephone number to the sales information line of Priority Posting.  This is an automated telephone number that a prospective bidder can call to ascertain the current status of a piece of property.  One only receives recorded information and cannot speak to a live person.

It would be a huge stretch of the imagination to believe that when the California legislature enacted California Civil Code §2924f(b)(1) requiring telephone numbers on the Notice of Trustee Sale, it had in mind sales information which would enure to the convenience of bidders at trustee sales.  The telephone number requirement, as demonstrated in a toll-free number mandate, was to foster debtor-creditor communication.  It was mandated to facilitate either reinstatement or redemption of the default.  It was mandated in order to serve the public policy of preventing the loss of a home through a foreclosure sale, without any court oversight, when such a sale could be avoided.

Unfortunately for CHASE and NDEx, in addition to their own malfeasance, they take this loan subject to the wrongdoing of BNC, STERLING, Kevin Caylor and other parties to this loan transaction who may not yet be identified.

There is the legal maxim requires that he who seeks equity must do equity.[25]  The right to conduct a non-judicial foreclosure, to seize a man's home, is rooted in

---

[24] California Civil Code §2924f(b)(1).

[25] *Wells Fargo & Company v. Robinson* (1859) 13 Cal. 133, 134; *Dickson, Carlson and Campillo v. Pole* (2000) 83 Cal. App. 4th 436, 445.

equity.  Yet BNC, CHASE, and NDEx will come before this court with filthy

hands, all the while casting mud and speaking dispersions against Jim Moore in

order to obtain the permission of this court to take Jim Moore's home.

These failures and violation of law mandate a declaration that the

foreclosure process does not meet the requirements of California non-judicial

foreclosure law.  This foreclosure is therefore invalid.  These law violations

further justify without question the granting of an exparte order restraining the

foreclosure sale scheduled for Monday, April 7, 2008  at 1:30 p.m..  At the bare

bones minimum, these errors justify a judicial declaration that the beneficiary and

the trustee need to go back to the beginning and comply with the procedural

requirements of California Civil Code §2924 et seq..  These errors further justify a

judicial declaration that this BNC Mortgage Corporation loan of September 23,

2004 is void, is subject to rescission, and is not secured by the trust deed which

was likewise executed on September 23, 2004 for the reasons set forth in the

verified complaint.

<u>INJUNCTIONS</u>

I.

A PRELIMINARY INJUNCTION SHOULD BE ISSUED WHERE
PLAINTIFF'S RIGHT TO RELIEF IS APPARENT FROM THE COMPLAINT
AND THE RELIEF CONSISTS IN RESTRAINING THE COMMISSION OR
CONTINUANCE OF THE ACT COMPLAINED OF, TO AVOID
IRREPARABLE INJURY DURING LITIGATION, AND WHERE THE LEGAL
REMEDY IS INADEQUATE.

Federal Rule 65 discusses the issuance of a preliminary injunction on

Federal Court.  A preliminary injunction is intended to last throughout the

duration of and until the final resolution of the case.[26]

To obtain a preliminary injunction in Federal Court, a moving party must

_____

[26] *Fundicao Tupy S.A. v. United States* (Fed. Cir. 1988) 841 F2d 1101, 1103
(emphasis in original; internal quotes omitted).

1   establish either: (1) a combination of probable success on the merits and the

2   possibility of irreparable harm, or (2) that serious questions regarding the merits

3   exist and the balance of hardships tips sharply in the moving party's favor.[27]

4        This standard, however, is actually on a sliding scale. "These are not two

5   distinct tests, but rather the opposite ends of a single 'continuum in which the

6   required showing of harm varies inversely with the required showing of

7   meritoriousness.'" [Citations.][28]

8        These standards are remarkably similar to California State law.   An

9   injunction may be granted in California when it appears by the complaint that the

10  plaintiff is entitled to the relief demanded and such relief, or any part thereof,

11  consists in restraining the commission or continuance of the act complained of,

12  either for a limited period or perpetually.[29]

13       An injunction may be granted in California when it appears by the

14  complaint or affidavits that the commission or continuance of some act during the

15  litigation would produce great or irreparable injury to a party in the action.[30]   The

16  term "irreparable injury" means that species of damages, whether great or small,

17  that ought not to be submitted to on the one hand or inflicted on the other.[31]   This

18  definition warrants the use of the injunctive power of the court against a wrong

19

20       [27] See *Baby Tam & Co. v. City of Las Vegas* (9th Circuit 1999) 154 F.3d

21  1097, 1100; *Rodeo Collection, Ltd. v. W. Seventh* (9th Circuit 1987) 812 F.2d 1215,

22  1217.

23       [28] *Miss World Limited v. Mrs. America Pageants, Inc.*  (9th Cir. 1988) 856

24  F.2d 1445, 1448.

25       [29] CCP § 526 first subd (1); *Dingley v. Buckner* (1909) 11 Cal.App. 181,

26  183-184.

27       [30] CCP § 526 first subd (2); *Smith v. Smith* (1942) 49 Cal.App.2d 716,
    718-719, 122 P.2d 346

28       [31] *Wind v. Herbert* (1960) 186 Cal.App.2d 276, 285, 8 Cal.Rptr. 817

which a trial judge deems insufferable because it constitutes an overbearing assumption by one person of superiority and domination over the rights and property of others.[32]

An injunction may be granted in California when pecuniary compensation would not afford adequate relief[33] or where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief.[34]

An injunction should also be granted in California where the restraint is necessary to prevent a multiplicity of judicial proceedings. [35]

Both federal law and California State law recognize the uniqueness, and the irreparable harm which will occur in the non-judicial foreclosure sale of a person's home. Both jurisdictions require a finding of irreparable injury to plaintiff, particularly in contrast to the marginal harm, if any, that would be suffered by the defendants.[36]   California Civil Code §3387 conclusively presumes that a person's home is so unique that monetary damages cannot adequately compensate for its loss. Given the vast financial resources of J.P. Morgan Chase Bank, any harm it stands to face by a delay in selling plaintiff's home is minor in comparison to the harm to be suffered by Jim Moore.

Plaintiff Jim Moore points out that the California State Superior Court,

---

[32] *Fretz v. Burke* (1967) 247 Cal.App.2d 741, 746, 55 Cal.Rptr. 879

[33] CCP § 526 first subd (4)

[34]CCP § 526 first subd (5); *Union Oil Co. v Domengeaux* (1939) 30 Cal App2d 266, 270-271, 86 P2d 127)

[35] CCP § 526 first subd (6); *Rynsburger v. Dairymen's Fertilizer Coop., Inc.* (1968) 266 Cal.App.2d 269, 279, 72 Cal.Rptr. 102; *Aldrich v Transcontinental Land & Water Co.* (1955) 131 Cal.App.2d 788, 796-797, 281 P.2d 362

[36] See *Sundance Land Corporation v. Cmty. First Federal Savings and Loan Association* (9th Circuit 1988) 840 F.2d 653, 661-662 (foreclosure on real property constitutes irreparable harm).

1  faced with nearly the same standards while considering the TRO request as this

2  Court will face in considering the preliminary injunction request, imposed the

3  TRO, making an initial exparte determination as to the merits of Jim Moore's

4  complaint.

5                                    II.

6                      PRELIMINARY INJUNCTION BOND

7          Federal Rule of Civil Procedure 65(c) states that the plaintiff should post a

8  bond "in such sum as the court deems proper for the payment of such costs and

9  damages as may be incurred or suffered by any party who is found to have been

10 wrongfully enjoined" in the event that this Court grants a preliminary injunction.

11         The reality is that the amount of the bond, and the bond itself, is totally

12 discretionary with the court.  The Court has authority to waive this bond if it so

13 wishes.[37]

14         Where the action was brought by poor plaintiffs and those without the

15 realistic means of posting a bond, preliminary injunctive relief has been granted

16 without any security whatsoever.[38]  A bond has been dispensed with entirely (or

17 only a nominal bond required) where the court determined there was no realistic

18 likelihood of harm to defendant from enjoining its conduct.[39] When the balance of

19

20 _____

21     [37] *Kaepa, Inc. v. Achilles Corp.* (5th Cir. 1996) 76 F3d 624, 628;  *BellSouth*

22 *Telecommunications, Inc. v. MCI-Metro Access Transmission Services, LLC* (11th
   Cir. 2005) 425 F3d 964, 971.

23

24     [38] *Orantes-Hernandez v. Smith* (CD CA 1982) 541 F.Supp. 351, 385, fn. 42;

25 see *Barahona-Gomez v. Reno* (9th Cir. 1999) 167 F3d 1228, 1237—alien plaintiffs
   required to post only a nominal bond because the "vast majority of (them) were

26 very poor" (parentheses added).

27     [39] *Jorgensen v. Cassiday* (9th Cir. 2003) 320 F3d 906, 919;  *Doctor's*

28 *Assocs., Inc. v. Stuart* (2nd Cir. 1996) 85 F3d 975, 985; *Hoechst Diafoil Co. v. Nan
   Ya Plastics Corp.* (4th Cir. 1999) 174 F3d 411, 421, fn. 3.

the potential hardships each party will suffer as a result of a preliminary injunction "weighs overwhelmingly in favor of the party seeking the injunction," a district court may waive the bond requirement.[40]  Additionally, a strong likelihood of success on the merits has also been relied on to dispense with a security.[41]

In California, a trial court must evaluate two factors in determining whether it should issue a preliminary injunction.  One factor is the likelihood that Jim Moore will prevail on the merits at trial.[42]  The second factor is the balance of any interim harm to Jim Moore if the injunction is denied compared with the harm to Carrington LLC if the injunction is issued.[43]  These standards are remarkably similar to the Federal standards.

The more likely that Jim Moore will ultimately prevail, however, the less severe the harm that must be shown, especially when the injunction maintains, rather than alters, the status quo.[44]  Thus, if Mr. Moore can make a sufficiently strong showing of likelihood of success on the merits, the trial court has discretion to issue the injunction notwithstanding that his inability to show that the balance of harms tips in their favor.[45]

---

[40]  *Elliott v. Kiesewetter* (3rd Cir. 1996) 98 F3d 47, 60.

[41]  *Scherr v. Volpe* (7th Cir. 1972) 466 F2d 1027, 1035.

[42]  See *Teachers Ins. & Annuity Assn. v. Furlotti* (1999) 70 Cal. App. 4th 1487, 1493, and *Dodge, Warren & Peters Insurance Services, Inc. v. Riley* (2003) 105 Cal. App. 4th 1414, 1418.

[43]  See *14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal. App. 4th 1396, 1402; *Pro-Family Advocates v. Gomez* (1996) 46 Cal. App. 4th 1674, 1681; *Hunt v. Superior Court* (1999) 21 Cal. 4th 984, 999.

[44]  *King v. Meese* (1987) 43 Cal. 3d 1217, 1227;  *14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal. App. 4th 1396, 1407.

[45]  *14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal. App. 4th 1396, 1407.

1
2
3

As in Federal Court, California courts retain common law authority to waive the requirement of an undertaking in cases involving litigants with limited means.[46]

4
5
6
7

Given the equities involved in this case, Jim Moore  requests that this Court impose no bond pursuant to its authority as set forth above. The verified complaint and the declarations establish good cause as to why no bond should be imposed.

8
9
10
11

Jim Moore lives on a modest income.  He supports his family on that income.  Given the need for Jim Moore to engage professional assistance to exercise his legal rights in this matter, his financial resources is now being stretched dramatically.

12
13
14
15

The fraudulent and illegal activities of the defendants are the direct cause the foreclosure which they commenced on his property.  It is this very kind of predatory lending, particularly against modest income families that has become a plague.

16
17
18
19
20
21
22
23

Certainly the defendants, and particularly CHASE, should have no objection to the granting of both preliminary injunction if a condition of the restraining order and subsequent injunction is that *Jim Moore commence making his monthly mortgage payment of according to the amount as disclosed on the September 15, 2004 Truth in Lending Disclosure.  This monthly mortgage amount of $1,950.47 should be reduced by the significant financial expense this litigation has generated and will continue to generate.*   Such an order will simply preserve the status quo.

24
25
26
27

Plaintiff Jim Moore points out that the California State Superior Court, faced with nearly the same standards while considering the TRO request as this Court will face in considering the preliminary injunction request, imposed the

28

[46] *Conover v. Hall* (1974) 11 Cal. 3d 842, 847, 850-852.

1    TRO **without any requirement of a bond**.

2          Alternatively, Jim Moore requests that this Court impose a bond of $100.  A

3    court may order a nominal bond where higher amount demanded by defendant

4    would effectively preclude injunctive relief.[47]

5          For the reasons set forth in these papers, plaintiff prays that this court grant

6    the requested temporary restraining order, preliminary injunction, and set the

7    matter for hearing for a full permanent injunction.

8                                    Respectfully submitted

9

10

11                                    Thomas Spielbauer, Esq.
                                      Attorney for Plaintiff
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____

[47] *GoTo.com, Inc. v. Walt Disney Co.* (9th Cir. 2002) 202 F3d 1199, 1211.

1  Thomas Spielbauer, Esq.
   SBN 78281
2  THE SPIELBAUER LAW FIRM
   1250 Oakmead Parkway, Suite 210
3  Sunnyvale, CA 94085
   (408)451-8499
4  Fax: (610)423-1395
   thomas@spielbauer.com
5
   Attorneys for Jim E. Moore, Plaintiff
6

7        **UNITED STATES DISTRICT COURT**
         **NORTHERN DISTRICT OF CALIFORNIA**
8

9  JIM E. MOORE,                         No. 3:08-cv-00350-SC

10                          Plaintiff.

11                                        Contra Costa County Superior Court
                                          No: MSC08-00040
12 v.s.                                   DECLARATION OF JIM MOORE

13                                        Date: Friday, April 4, 2008
                                          Time: 10:00 a.m.
14 J. P. CHASE MORGAN BANK; BNC           The Honorable Samuel Conti
   MORTGAGE, INC.;  NDEx West LLC;        Courtroom 1, 17th Floor
15 STIRLING FUNDING                       450 Golden Gate Avenue
   CORPORATION; and KEVIN                 San Francisco, CA 94102
16 CAYLOR,

17                          Defendants.

18

19      I, Jim Moore, do hereby declare.

20      I am the plaintiff in this matter.

21      During September 2004, Kevin Caylor of Sterling Funding Corporation

22 telephoned me concerning a refinance of my home located at 1258 Duffy Way,

23 Brentwood, CA.   This telephone call was a cold call and not one made in

24 response to any prior request for information.  Mr. Caylor indicated he was a

25 representative of Stirling Funding.   At the time Kevin Caylor made the telephone

26 call, he advised me that Stirling Funding could refinance my home under very

27 favorable terms.  He explained that he could obtain a loan with lower interest rates

28 and lower monthly mortgage payments.  Based on these presentations, I  agreed to

                                   -1-

1    a refinance.

2         I informed Mr. Caylor during September 2004 that I  required  a 30 year

3    fixed rate loan between 6.5% and 7.5%, including impounds.  Mr. Caylor advised

4    that he could and would arrange for this financing under those terms.

5         Kevin Caylor thereafter provided to me initial disclosure loan documents

6    from Stirling and BNC.  The Truth In Lending disclosure quoted an APR of

7    7.706%.  This was to be the interest rate for the first two years with a mortgage

8    payment during those two years of $1,948.23.   Mr. Caylor further told me that the

9    interest rate would adjust to a payment of a little less than ten dollars more per

10   month thereafter, to an amount of  $1,957.44  and for the remaining twenty-eight

11   years of the loan.  The last payment was to be for $1,950.47.

12        These representations were confirmed by the Truth in Lending Disclosure

13   of September 15, 2004  provided me.  This Truth in Lending Disclosure clearly

14   reflected that the monthly mortgage payments for the first two years was to be

15   $1,948.23.  In the third year, the rate was to adjust for the remaining 28 years to

16   monthly mortgage payments of $1,957.44.  The last payment was to be for

17   $1,950.47.  This Truth in Lending statement is attached as Exhibit 2 to the

18   complaint.

19        Within two weeks,  Mr. Caylor advised me by telephone that I had been

20   approved for this loan and the documents had been drawn.  Mr. Caylor advised

21   that a notary would visit me thereafter and I would then sign the loan documents.

22   No terms were discussed during this telephone conversation.   The loan was to be

23   a 30 year note for the approximate amount of $300,000+.

24        A week later, on September 23, 2004, a notary and signing agent came to

25   my home in order to have me sign the loan documents which had been prepared

26   by Stirling and BNC.

27        On or about September 23, 2007, a notary public arrived at Mr. Moore's

28   home for the purpose of his signing the loan documents.  This notary acted as the

1  agent for Mr. Caylor, STIRLING and BNC.   The signing took place in my home

2  located at 1258 Duffy Way, Brentwood, CA.  Throughout this signing, the notary

3  was in a hurry and rushed me through the signing process.  She began handing

4  papers for me to sign without giving me the opportunity to review the papers and

5  the terms of the loan.  The documents were voluminous.  As a result, I relied upon

6  the earlier representations which had been made to me concerning the rates,

7  monthly mortgage payments, adjustable interest rate, fees and commissions.   I

8  relied on the previously supplied Exhibit 2.  The notary made no explanations to

9  me.  She was gone within fifteen minutes, and all documents had been signed.

10  The loan note was for $302,600 and was a thirty year note.  This note is attached

11  to the complaint as Exhibit 5.

12      A Truth in Lending statement was provided at the time of signing on

13  September 23, 2004.  I was not given time to review the statement and did not

14  think to, relying on the previous promises and representations.  To my later

15  surprise and shock, that statement revealed a very different story concerning the

16  loan.   This truth in lending disclosure advised that there would be 24 initial

17  monthly mortgage payments of $2,268.02.  Thereafter, there would be 335

18  payments of $2,428.98 with one last payment of $2,420.87.  This disclosure,

19  however, did not take into account the six month increase in interest permitted by

20  the promissory note.  As a result, even this second Truth in Lending disclosure

21  was inaccurate.  This September 23, 2004 Truth in Lending disclosure is attached

22  as Exhibit 3 to the complaint.

23      There were other terms substantially different from that promised.  The

24  ceiling of interest according to this promissory note of September 23, 2004  was

25  15.225%.  This ceiling was concealed from me up to and during the time of

26  signing of the promissory note.

27

28

| Monthly Mortgage Payments | | |
|---|---|---|
| **Promised** | **Second TILA Disclosed** | **Actual** |
| 24 payments of $1,948.23 | 24 payments of $2,268.02 | Ceiling of 15.225%. Adjustable 6.925% above index every 6 months after first 2 years. |
| 335 payments of $1,954.44 | 335 payments of $2,428.98 | |
| 1 payment of $1,950.47 | 1 payment of $2,420.87 | |

A Good Faith Estimate was provided at the time of signing. Again, I was not permitted time to examine it. This good faith estimate, however, did not reflect the real interest rate. It quoted a broker fee of $2,800 plus processing fee of $695 and an Administration Fee of $595. All of this was false. The broker fee, excluding the yield spread premium, was $5,995 instead of $2,800.

One of the documents which the notary provided to me was the NOTICE OF RIGHT TO CANCEL. A true and correct copy of that document is attached as Exhibit 4 to the complaint. This notice, Exhibit 4, is a true and accurate copy of the one provided to me. It did not conspicuously state the date of the transaction nor the date by which the three day rescission period terminated.

Kevin Caylor and STIRLING originally represented to me that the broker fee was going to be $2,800. In reality, it turned out to be $11,824, including the yield spread premium, and $5,995 not including the yield spread premium.

| Broker Commission | |
|---|---|
| **Promised** | **Actual** |
| $2,800 | $11,824 |

The broker included a rebate/yield spread premium of $4,539. This Yield Spread Premium was never disclosed to me prior to my signing the loan documents and trust deed.

The loan was to have been a 30 year fixed loan with an interest rate of 6.5% to 7.5%, and an APR of 7.706% as initially promised. The loan provided on

September 23, 2004, however, was a two year fixed rate loan which would then adjust 2% after two years and then 1% every six months.  The ceiling of the loan was 15.225%.  The initial APR of the September 23, 2004 loan was 9.186%.

| Interest Rate | | |
|---|---|---|
| **Promised** | **Actual** | |
| 6.5% to 7.5% | 8.225% for two years. Adjustable 6.925% above index every 6 months after first 2 years. | Ceiling interest rate of 15.225%. |
| APR of 7.706% | APR of 9.186%, and climbing | |

The language which Defendants Kevin Caylor, STIRLING and BNC used in the promissory note was filled legalese and incomprehensible to me.  I did not comprehend, nor was it explained, the nature of the agreement and the extraordinary costs that it contained.  Additionally, no one provided to me a copy of this document prior to requiring me to sign these and the other documents.  Additionally, they did not provide to me time to review these documents but in fact rushed me through the signing.  As a result, I relied upon the Truth in Lending Disclosure which is Exhibit 2 to the complaint and the representations which Mr. Caylor, STERLING and BNC had made to me previously.

I thereafter commenced making mortgage payments under the new loan.  I was able to make payments during the first two years of the loan, when the rate was fixed.  However, after two years, I had significant difficulty making the increasing mortgage payments, particularly after the interest rate on the loan began to explode.  As a result, I was not able to tender the full monthly mortgage payments during the year 2007.

I am informed and believe that during August 2007, BNC and NDEx and Chase recorded a notice of default on the property of  1258 Duffy Drive,

1    Brentwood, CA 94513.

2        During November 2007, BNC and NDEx and Chase recorded a notice of

3    trustee sale on the property of 1258 Duffy Drive, Brentwood, CA 94513.  This

4    notice of trustee sale is attached to the complaint as Exhibit 1.  This notice of

5    trustee sale set the sale date for December 6, 2007 at 1:30 p.m..  The sale date,

6    however, was postponed to January 7, 2008 at 1:30 p.m..

7        During December 2007, I attempted to refinance into an affordable loan.  I

8    am informed and believe that I qualify for FHA Secured, a loan program with a

9    reasonable and fixed interest rate.  I, however, has been unable to re-finance due to

10   the high fees and charges which BNC, Chase and NDEx are demanding from me.

11   These bloated charges and fees caused the balance on this loan to exceed the

12   maximum borrower debt ratio permitted by FHA Secured.

13       On or about December 31, 2007, I sent through my attorney to the named

14   defendants a reinstatement request (beneficiary statement), and a payoff demand

15   request pursuant to California Civil Code §2943; a request for verification of the

16   amounts demanded and of the alleged debt pursuant to the Fair Debt Collection

17   Practices Act 15 U.S.C. 1692g; a qualified written request pursuant to the Real

18   Estate Settlement and Procedures Act (RESPA), 12 U.S.C. 2605(e); and a request

19   for an accounting.  These requests were sent via United States Express mail and

20   were delivered to the defendants and/or their agents on January 2, 2008 and

21   January 3, 2008.

22       On or about December 31, 2007, I sent through my attorney to the named

23   defendants a notice of rescission pursuant to the Federal Truth in Lending Act, 15

24   U.S.C.§1635f.  This rescission was sent via United States Express mail and was

25   delivered to the defendants and/or their agents on January 2, 2008 and January 3,

26   2008.

27   //

28   //

1        I declare under penalty of perjury that the foregoing is true and correct to

2    the best of my knowledge, information and belief.

3        Executed in Contra Costa County, California this February 28, 2008.

4

5                                      Jim Moore

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Thomas Spielbauer, Esq.
   SBN 78281
2  THE SPIELBAUER LAW FIRM
   1250 Oakmead Parkway, Suite 210
3  Sunnyvale, CA 94085
   (408)451-8499
4  Fax: (610)423-1395
   thomas@spielbauer.com
5
6  Attorneys for Jim E. Moore, Plaintiff

7              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
8

9  JIM E. MOORE,                        No. 3:08-cv-00350-SC

10                         Plaintiff.

11                                       Contra Costa County Superior Court
                                         No: MSC08-00040
12 v.s.                                  DECLARATION OF PATRICK
                                         PULATIE
13

14                                       Date: Friday, April 4, 2008
   J. P. CHASE MORGAN BANK; BNC         Time: 10:00 a.m.
15 MORTGAGE, INC.; NDEx West LLC;       The Honorable Samuel Conti
   STIRLING FUNDING                     Courtroom 1, 17th Floor
16 CORPORATION; and KEVIN              450 Golden Gate Avenue
   CAYLOR,                              San Francisco, CA 94102
17
                         Defendants.
18

19         I, Patrick Pulatie, do hereby declare.

20         I am a loan officer with Mortgage Center of America. I have been a loan

21 officer since 1996. I have originated loans of all types, to include A Paper,

22 Subprime, and FHA loans. In addition, I have been a loan officer trainer, teaching

23 new personnel how to do loans, analyze financial situations, and performing as an

24 advisor  on what loans a person might qualify for and what would be best for their

25 circumstances.

26         During December 2007, Jim Moore asked me for assistance  in helping him

27 to refinance and to save his home from foreclosure. It had been scheduled for

28 auction earlier that month.

1    I have reviewed Mr. Moore's financial situation very carefully. Upon

2    complete inspection,  Mr Moore qualifies for the FHA Secure program.  FHA

3    Secure is a special program announced by the Federal Housing Administration

4    (FHA) in September 2007 intended to help alleviate the subprime crisis.  Jim

5    Moore meets all the established guidelines for an FHA Secure loan, as well as

6    under HUD Letter 94-20 guidelines.

7    Mr. Moore is a man of very modest means.  He works full time supporting

8    his family, a wife and three children, in the best manner available to him.  His

9    wife Virginia does not work, instead taking care of the children, two of which are

10   in school and the third which is 9 months old.  While he is able to make ends

11   meet, it is often a difficult task and he has no additional income remaining for

12   savings or extraordinary activties.

13   His modest income has further been stretched by the litigation which he has

14   had to incur in order to prevent his home from being auctioned at a foreclosure

15   sale.

16   A review of Mr. Moore's finances reveals that he does not have the means

17   to post a bond in this matter, and he does not at this time enjoy the equity in his

18   home to be able to borrow for a bond.  Bonding agencies require a cash collateral

19   for smaller bonds (such as $5,000 to $10,000) and require significant equity on

20   real property for the larger bonds.

21   //

22   //

23

24

25

26

27

28

1       I declare under penalty of perjury that the foregoing is true and correct to

2   the best of my knowledge and information.  Signed this February 28, 2008 in

3   Contra Costa County, California.

4

5

6

7   Patrick Pulatie

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Thomas Spielbauer, Esq.
    SBN 78281
2   THE SPIELBAUER LAW FIRM
    1250 Oakmead Parkway, Suite 210
3   Sunnyvale, CA 94085
    (408)451-8499
4   Fax: (610)423-1395
    thomas@spielbauer.com
5
    Attorneys for Jim E. Moore, Plaintiff
6

FILED

2008 JAN -9 P 3 43

COURT

Deputy Clerk

7                    **IN THE SUPERIOR COURT**
                   **OF THE STATE OF CALIFORNIA**
8                     **CONTRA COSTA COUNTY**

9   JIM E. MOORE,                          No:   C 08-00040

10                     Plaintiff.

11  v.s.                                   ORDER TO SHOW CAUSE AND
                                           TEMPORARY RESTRAINING
12                                         ORDER

13                                         Code Civ.Proc. § 527(a)

14  CHASE BANK; BNC MORTGAGE,
    INC.; NDEx West LLC; STIRLING
15  FUNDING CORPORATION; KEVIN
    CAYLOR; and DOES 1-20,

16                     Defendants.

17

18      On reading the verified complaint of plaintiff, declaration of counsel, and

19  the papers on file in the above-entitled action, it appears to the satisfaction of the

20  court that this is a proper case for granting a temporary restraining order and an

21  order to show cause for a preliminary injunction, and that, unless the temporary

22  restraining order prayed for be granted, great or irreparable injury will result to

23  plaintiff before the matter can be heard on notice.

24      IT IS HEREBY ORDERED that the above-named defendants, and each of

25  them, appear in Department __16__ of this Court, located the Wakefield Taylor

26  Courthouse, 725 Court Street, Martinez CA 94553, on _1/26/08_, at

27  _8:30am_, or as soon thereafter as the matter may be heard, then and there

28  to show cause, if any they have, why they and their agents, servants, employees,

                                    -1-

and representatives should not be enjoined and restrained during the pendency of this action from engaging in, committing, or performing, directly or indirectly, any and all of the following acts: Undertaking or permitting actions of any kind which shall cause the auction or foreclosure sale of the residence located at 1258 Duffy Drive, Brentwood, CA 94513 under authority of a trust deed recorded with the Contra Costa County Recorder; From undertaking or permitting actions of any kind which shall cause the sale of or the passing of title to the property of 1258 Duffy Drive, Brentwood, CA 94513 during the pendency of this action; From the reporting of any kind of derogatory information concerning the sale and the plaintiff during the pendency of this action.

Defendants CHASE BANK, BNC MORTGAGE CORPORATION and NDEx West LLC, and their agents, servants, and employees are hereby restrained and enjoined, pending a hearing for a preliminary injunction, from undertaking or permitting any actions of any kind which shall cause the sale or foreclosure sale or passing or slander of title of the residence located at 1258 Duffy Drive, Brentwood, CA 94513. Defendants CHASE BANK, BNC MORTGAGE CORPORATION and NDEx West LLC are further enjoined from undertaking any action to effect an assignment of rents or hinder plaintiff's ability to manage his property or enjoy the fruits of his property.

This temporary restraining order shall remain in full force and effect until a preliminary injunction hearing is held in this matter by this court or the Federal District Court or the United States Bankruptcy Court should this matter be removed.

Defendants are further enjoined from undertaking any action which will hinder or interfere or slander plaintiff's ability to manage his property or enjoy the fruits of their property.

The defendants shall file their response to this order to show cause by no later than __1/17/08_____. Plaintiffs shall file their reply to defendants'

-2-

response by no later than ___1/22/08___. ~~Both parties shall serve courtesy copies to Department —/~~. Both parties may serve each other by confirmed email or confirmed fax.

As a part of any response, defendants shall submit a detailed an itemized accounting with supporting documentation of the amounts they are demanding as reinstatement of the trust deed note on the property of 3903 Whitney Avenue, Sacramento, CA 95821. Such documentation will supply all documentation relevant to justify the fees and amounts they are demanding.

In order to insure that the preliminary injunction hearing is held and sufficient information is presented whereby this court can make an informed decision as to whether it should issue a preliminary injunction in light of the plaintiff's allegations in his verified complaint, defendants Defendants CHASE BANK, BNC MORTGAGE CORPORATION and NDEx West LLC shall furnish as a part of their response the following documentation to counsel for plaintiff: any Loan Submission forms for plaintiff's September 2004 Loan, Transmittal Form (#1008), Document Order Form, Initial Loan Application ( # 1003), Final Loan Application (#1003), Property Appraisal, Loan Benefit Analysis, Underwriter's Worksheet, BNC's and Chase's Mortgage Loan Credit Guidelines, Underwriting Guidelines, All documents regarding the sale or attempted sale of the loan to Investors and any subsequent repurchase, all documents pertaining to the securitization or attempted securitization of this loan, Yield Spread Premiums earned in this matter, by the brokers or through the sale to investors of this Moore loan, and Commissions and or Premiums paid to BNC Mortgage Corporation and Chase Bank Employees or any of their successors from this loan event.

//

//

-3-

1    IT IS FURTHER ORDERED that copies of the complaint, declaration, and
2    this order to show cause and temporary restraining order be served on defendants
3    not later than ~~JAN 7, 2008 Such service may be effected upon defendants by~~
4    ~~United States Express Mail.~~
5    IT IS FURTHER ORDERED that copies of the complaint, declaration, and
6    this order to show cause and temporary restraining order be served on defendants
7    not later than JAN 7, 2008
8    Dated: January 4, 2008

_____

Judge of the Superior Court
Judith S. Craddick

-4-

*Moore v. J. P. Chase Morgan Bank et Al.*
Northern District of California Case Number 3:08-cv-00350-SC

### CERTIFICATE OF SERVICE

I, Thomas Spielbauer, declare:

I am a resident of Santa Clara County, California.  I am now, and at all times herein mentioned was, over the age of eighteen years.  I am not a party to this action.  My business address is 1250 Oakmead Parkway, Suite 210, Sunnyvale, CA 94085.

On February 28, 2008, I filed electronically a NOTICE OF MOTION and MOTION FOR PRELIMINARY INJUNCTION with supporting documents and exhibits via the Northern District of California Court's website.

Counsel for BNC Mortgage, Inc., aka BNC Mortgage, LLC is a registered user of the ECF for the Northern District of California Federal Court.  His name is Eric D. Houser, Esq..  His email address of appears on the docket of this matter.

Counsel for J.P. Chase Morgan Bank aka J.P. Morgan Chase Bank is a registered user of the Northern District of California Federal Court.  His name is John M. Sorich, Esq..  His email address of appears on the docket of this matter.

Counsel for NDEx West is a registered user of the Northern District of California Federal Court.  His name is Edward Treder, Esq..  His email address of appears on the docket of this matter.  It should be noted that NDEx West filed a declaration pursuant to California Civil Code §2924l in the Contra Costa Superior Court at the time of or just prior to removal, on January 18, 2008.

Pursuant to Northern District General Order 45, the service of the EXPARTE MOTION TO REMAND, AND MOTION TO REMAND, REQUEST FOR ATTORNEY FEES, AND IN THE ALTERNATIVE, REQUEST FOR A TEMPORARY RESTRAINING ORDER AND SETTING OF A PRELIMINARY INJUNCTION OSC and supporting documents was effected at the time of filing, and notification by email to counsel for BNC by the ECF website.

1    I declare under penalty of perjury that the foregoing is true and correct to the

2  best of my knowledge.  Executed in San Jose, California this February 28, 2008.

3

4

5

6                                    Thomas Spielbauer

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Thomas Spielbauer, Esq.
     SBN 78281
2    THE SPIELBAUER LAW FIRM
     1250 Oakmead Parkway, Suite 210
3    Sunnyvale, CA 94085
     (408)451-8499
4    Fax: (610)423-1395
     thomas@spielbauer.com
5
     Attorneys for Jim E. Moore, Plaintiff
6

7             **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**

8

9    JIM E. MOORE,                  No. 3:08-cv-00350-SC

10                Plaintiff.
                           Contra Costa County Superior Court
11    v.s.                            No: MSC08-00040

12                            [PROPOSED] PRELIMINARY
   J. P. CHASE MORGAN BANK; BNC    INJUNCTION ORDER
13    MORTGAGE, INC.;  NDEx West LLC;
     STIRLING FUNDING
14    CORPORATION; and KEVIN
     CAYLOR,
15
16                Defendants.

17

        The noticed motion of plaintiff for a preliminary injunction came on regularly
18
for hearing by the court this Friday, April 4, 2008.   Plaintiff appeared by counsel
19
Thomas Spielbauer, Esq.;  defendant J. P. Morgan Chase Bank appeared through
20
its counsel, John Sorick, Esq.; Defendant BNC appeared by its counsel, the
21
Edward Houser, Esq.; Defendant NDEx West did not appear, having previously
22
filed a declaration pursuant to California Civil Code §2924l in the Contra Costa
23
Superior Court.
24
       On proof made to the court's satisfaction, and good cause appearing:
25
        IT IS ORDERED that during the pendency of this action, the above-named
26
defendants, J. P. Morgan Chase Bank, BNC, and NDEx West, LLC, and each of
27
them, and their officers, agents, employees, representatives, and all persons acting
28

1  in concert or participating with them, are enjoined and restrained from engaging in,

2  committing, or performing, directly or indirectly, by any means whatsoever, any of

3  the following acts: Undertaking or permitting actions of any kind which shall cause

4  the auction or foreclosure sale of the residence located at  1258 Duffy Drive,

5  Brentwood, CA 94513 under authority of a trust deed recorded with the Contra

6  Costa County Recorder;  From undertaking or permitting actions of any kind which

7  shall cause the sale of or the passing of title to the property of  1258 Duffy Drive,

8  Brentwood, CA 94513 during the pendency of this action; From the reporting of

9  any kind of derogatory information concerning the scheduled sale and concerning

10  the plaintiff during the pendency of this action; From undertaking or permitting

11  actions of any kind which shall cause the slander of title to the property of 1258

12  Duffy Drive, Brentwood, CA 94513 or to plaintiff, Jim E. Moore.

13       Defendants J. P. Morgan Chase Bank, BNC, and NDEx West, LLC are

14  further enjoined from undertaking any action to effect an assignment of rents or

15  hinder plaintiff's ability to manage his property or enjoy the fruits of his property.

16       Defendants are further enjoined from undertaking any action, including any

17  recordations with the Contra Costa County Recorder,  which will  hinder or

18  interfere or slander plaintiff's title to or ability to manage his property or enjoy the

19  fruits of his property

20       IT IS FURTHER ORDERED that defendants shall not interfere with

21  plaintiff's operation of his property and the conduct of his business during the

22  pendency of this preliminary injunction.  Defendants in this matter shall not

23  approach nor permit any of their agents, employees, servants, or representatives

24  from approaching any of the residents  1258 Duffy Drive, Brentwood, CA 94513

25  for any reason until the litigation in this matter is concluded.

26       The court reserves jurisdiction to modify this injunction as the ends of justice

27  may require.

28                              **END OF ORDER**

1
Thomas Spielbauer, Esq.
SBN 78281
2
THE SPIELBAUER LAW FIRM
1250 Oakmead Parkway, Suite 210
3
Sunnyvale, CA 94085
(408)451-8499
4
Fax: (610)423-1395
thomas@spielbauer.com
5

6
Attorneys for Jim E. Moore, Plaintiff

7
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

8

9
JIM E. MOORE,                           No. 3:08-cv-00350-SC

10
                              Plaintiff.

11
                                        Contra Costa County Superior Court
                                        No: MSC08-00040

12
v.s.
                                        NOTICE OF MOTION FOR
13
                                        PRELIMINARY INJUNCTION

14
                                        Date: Friday, April 4, 2008
J. P. CHASE MORGAN BANK; BNC            Time: 10:00 a.m.
15
MORTGAGE, INC.;  NDEx West LLC;         The Honorable Samuel Conti
STIRLING FUNDING                        Courtroom 1, 17th Floor
16
CORPORATION; and KEVIN                  450 Golden Gate Avenue
CAYLOR,                                 San Francisco, CA 94102
17
                              Defendants.

18

19
TO:  Defendant BNC MORTGAGE, INC. and its attorney, Eric Houser, Esq.;

20
TO: J. P. CHASE MORGAN BANK and its attorney, John Sorich, Esq.;

21
TO: NDEx West, LLC and its attorney, Edward Treder, Esq..

22
        PLEASE TAKE NOTICE THAT at 10:00 a.m. on Friday, April 4, 2008, or

23
soon thereafter as counsel may be heard, in the courtroom of the Honorable

24
Samuel Conti, Federal District Court Judge, located in Courtroom 1, on the 17th

25
Floor of the Federal Courthouse at 450 Golden Gate Avenue, San Francisco, CA

26
94102, Plaintiff Jim Moore will move for an order for a preliminary injunction

27
pursuant to Federal Rule of Civil Procedure 65 restraining and enjoining you, your

28
officers agents, servants, employees and attorneys, and all those in active concert

-1-

or participation with you or them from conducting any kind of foreclosure sale or alienation or transfer or attempted transfer of title and ownership of the property located at 1258 Duffy Drive, Brentwood, CA 94513 during the pendency of this action.  A trustee's sale is currently scheduled for Monday, April 7, 2008 at 1:30 p.m. at the courthouse steps located at 725 Court Street, Martinez, CA.

This motion will be made on the ground that immediate and irreparable injury will result to Plaintiff unless the activities described above are enjoined pending trial of this action, and will be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the declarations of Jim E. Moore and Patrick Pulatie, attached hereto.

Dated: February 28, 2008

Thomas Spielbauer
Attorney for Plaintiff and Movant