1  ERIC D. HOUSER (SBN 130079)
   JEFFREY S. ALLISON (SBN 173620)
2  STARLET J. JAPP (SBN 243097)
   HOUSER & ALLISON
3  A Professional Corporation
   9970 Research Drive
4  Irvine, California 92618
   Telephone:  (949) 679-1111
5  Facsimile:  (949) 679-1112

6
   Attorneys for Defendants,
7  BNC MORTGAGE, LLC, erroneously sued
   herein as BNC MORTGAGE, INC.

8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11  JIM E. MOORE,                        ) Case No.: C 08-0350 SC
                                         )
12                                       )
                                         ) **DEFENDANT BNC'S NOTICE OF**
13              Plaintiffs,              ) **MOTION AND MOTION TO**
                                         ) **DISMISS PLAINTIFF'S**
14  v.                                   ) **COMPLAINT; MEMORANDUM**
                                         ) **OF POINTS AND AUTHORITIES**
15                                       )
    CHASE BANK; BNC MORTGAGE,            )
16  INC.; NDEx West LLC; STIRLING        ) DATE: May 9, 2008
    FUNDING CORPORATION; KEVIN           ) TIME: 10:00 a.m.
17  CAYLOR; and DOES 1-20,               ) The Honorable Samuel Conti
                                         ) Courtroom 1, 17th Floor
18              Defendants.              ) 450 Golden Gate Avenue
                                         ) San Francisco. CA 94102
19

20      **TO THE COURT, TO PLAINTIFF AND THE PARTIES AND THEIR**

21  **COUNSEL OF RECORD:**

22      **PLEASE TAKE NOTICE** that on May 9, 2008 at 10:00 a.m. or as soon

23  thereafter as may be heard, in Courtroom 1, 17th Floor of the above-entitled Court

24  located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant BNC

25  MORTGAGE, LLC, erroneously sued herein as BNC MORTGAGE, INC.

26  (referred to as "BNC"), will and hereby does move this Court to dismiss, with

27  prejudice, Plaintiff's Complaint ("Complaint") on file herein.

28

---

**BNC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1    This Motion is made and based upon Rules 12(b)(6) of the Federal Rules of

2    Civil Procedure, and is based on the ground that Plaintiff has failed to state a claim

3    upon which relief may be granted and the Complaint is barred as a matter of law

4    against BNC.  This Motion is based upon this Notice, the attached Memorandum

5    of Points and Authorities, and upon all papers and documents on file herein, the

6    Court's files concerning this action, together with those facts and documents of

7    which the parties request judicial notice and/or matters which judicial notice is

8    proper, as well as any oral argument that may be presented at the time of the

9    hearing.

10

11   DATED:  March 10, 2008                    HOUSER & ALLISON
                                              A Professional Corporation
12

13

14                                            /s/ Jeffrey S. Allison_____
                                              Eric D. Houser
15                                            Jeffrey S. Allison
                                              Starlet J. Japp
16                                            Attorneys for Defendant,
                                              BNC MORTGAGE, LLC,
17                                            erroneously sued herein as BNC
                                              MORTGAGE, INC.
18

19

20

21

22

23

24

25

26

27

28

---

**BNC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

   A.    Summary of Argument.....................................................................................1

   B.    Summary of Allegations .................................................................................3

II.   PLAINTIFF CANNOT MAINTAIN A CLAIM FOR DECLARATORY JUDGMENT AGAINST BNC....................................................................................................5

   A.    The Claim For Declaratory Judgment Fails Because BNC Has No Interest In The Property.........................................................................................................5

   B.    Plaintiff's Claim For Declaratory Judgment Is Duplicative And Improper ........................5

   C.    The Claim For Declaratory Judgment Relies On Federal Lending Laws That Are Barred As A Matter Of Law ......................................................................................6

     1.    Plaintiff's Claim That BNC Failed To Comply With TILA Fails Because it is Time Barred ..............................................................................................6

     2.    The FDCPA Does Not Apply Because BNC Is Not A Debt Collector And Is Excluded From The FDCPA By The Creditor Exemption ...........................................7

III.  PLAINTIFF'S UNFAIR BUSINESS PRACTICES CLAIM AGAINST BNC FAILS AS A MATTER OF LAW ...........................................................................................8

   A.    Plaintiff's Unfair Business Practices Claim Against BNC Is Based On Federal Laws And Therefore Fails ...............................................................................................9

     1.    Plaintiff's Reliance On California Business and Professions Code §§ 17200 et seq. Is Flawed Because § 17200 Is Preempted By Federal Lending Laws ...............................9

     2.    Plaintiff's §17200 Claim Also Fails Because It Is Vague.................................13

IV.   PLAINTIFF'S FRAUD CLAIM FAILS AS A MATTER OF LAW ...........................14

   A.    Plaintiff's Fraud Claim is Time Barred ...........................................................14

   B.    Plaintiff's Fraud Claim Fails Because It Lacks Specificity.................................15

   C.    Plaintiff's HOEPA Claim Fails As To BNC Because The Loan Did Not Qualify As A High Cost Loan ................................................................................................16

V.    PLAINTIFF'S UNCONSCIONABILITY CLAIM FAILS.................................17

VI.   PLAINTIFF'S CLAIM FOR CONTRACTUAL BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING FAILS...................................................18

VII.  PLAINTIFF'S LAST CLAIM FOR ACCOUNTING ALSO FAILS ...............................19

VII.  CONCLUSION.............................................................................................20

# TABLE OF AUTHORITIES

**Cases**

Aubert v. American Gen. Fin., 137 F.3d 976 (7th Cir.1998) ..................................... 8

Aubert v. American Gen. Fin., 137 F.3d 976 (7th Cir.1998); Maguire v. Citicorp Retail Services, 147 F.3d 232 (2d Cir.1998) ........................................................... 8

California Code of Civil Procedure § 338 ............................................................. 2

California Ins. Guarantee Ass'n v. Superior Court, 231 Cal. App.3d 1617, 1623, (1991) ............................................................................................................... 5

Carma Developers (California), Inc. v. Marathon Development California, Inc., 826 P.2d 720, 2 Cal. 4th 342, 373 (1992) ................................................... 19

General of America Inc. Co. 258 Cal. App.2d at 470 .............................................. 5

General of America Inc. Co. v. Lilly, 258 Cal. App.2d 465, 470 (1968) ................. 1

Girard v. Miller, 214 Cal. App.2d 266, 277 (1963) ............................................... 6

Glendale Federal Sav. & Loan Ass'n v. Fox, 459 F.Supp. 903, 909 (C.D.Cal. 1978) ............................................................................................................... 11

Hubbard 91 F.3d at 79 (1996) ............................................................................. 7

Hubbard v. Fidelity Federal Bank, 91 F.3d 75, 79; 96 Cal. Daily Op. Serv. 5478 (1996) ............................................................................................................... 7

Khoury v. Maly's of California, Inc., 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993) ............................................................................................................. 13

King v. Cal. 784 F.2d 910, 913 (9th Cir. 1986) ..................................................... 7

Koehrer v. Superior Court,181 Cal.App.3d 1155, 1169, 226 Cal.Rptr. 820, 828 (1986) ......................................................................................................... 2, 18

Lopez v. World Savings and Loan Assn., 105 Cal.App.4th 729, 738 (2003) ........ 11

Maguire v. Citicorp Retail Services, 147 F.3d 232 (2d Cir.1998) .......................... 8

Mangini v. Aerojet-General Corp., 230 Cal.App.3d 1125, 1155-56 (1991) .......... 13

Meyers v. Beverly Hills Federal Savings and Loan Ass'n, 499 F.2d 1145, 1147 (9th Cir. 1974) ................................................................................................ 12

Meyers, 499 F.2d at 1147 ................................................................................... 12

Mundy v. Household Fin. Corp., 885 F.2d 542, 544 (9th Cir.1989) ................. 2, 18

Mutual Bank, FA v. Sup. Ct., 95 Cal.App.4th 606, 115 Cal.Rptr.2d 765 (2002) .. 10

Pacific Trust Co. v. Fidelity Federal Sav. & Loan Ass'n, 184 Cal.App.3d 817, 823-24, 229 Cal.Rptr. 269, 273-74 (1986) .............................................................. 12

People of State of Cal. v. Coast Federal Savings and Loan Ass'n, S.D.Cal., 1951, 98 F.Supp. 311, 316. ...................................................................................... 12

Shadoan v. World Savings and Loan Association, 219 Cal. App. 3d 97, 102 (1990) ........................................................................................................................ 17

Showalter v. Chase Manhattan/Providian, (ND Cal, Aug. 19, 2005, No. C 05-00548 WHA) 2005 WL 2000943 ..................................................................... 8

Stansfield v. Starkey, 220 Cal.App.3d 59, 73 264 Cal.Rptr. 337, 345 (1990) ....... 15

---

Tarmann v. State Farm Mutual Automobile Insurance Company, 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861, 862-63 (1991)........................................................... 15

Thomas v. Law Firm of Simpson & Cyback, 392 F.3d 914, 916-917 (7th Cir.2004) .................................................................................................................................... 7

v. Household Fin. Corp., 885 F.2d 542, 544 (9th Cir.1989.............................. 2, 18

v. Ocwen Federal Bank, 523 U.S. 410, 417-19, 118 S.Ct. 1408 (1998) ................. 7

Walker v. Countrywide Home Loans, Inc., 98 Cal.App.4th 1158, 1169-1170, 121 Cal.Rptr.2d 79 (2002) ........................................................................................... 13

Williams v. WMX Technologies, Inc., 112 F.3d 175, 178 (5th Cir. 1997) ........... 15

**Statutes**

12 U.S.C. § 2605(e) ..................................................................................................19

12 U.S.C. §§1461 .......................................................................................................9

12 U.S.C. §§1461 et seq...........................................................................................2, 9

15 U.S.C. § 1692a(4) ..................................................................................................7

15 U.S.C. § 1692a(6) ...............................................................................................6, 7

15 U.S.C. §§ 1601-1666j ............................................................................................6

15 U.S.C. §§ 1635(f), 1640(e) ....................................................................................7

15 U.S.C. §1602 et seq.............................................................................................16

15 U.S.C. §1602(aa)..............................................................................................16, 17

**Other Authorities**

California Business and Professions Code § 17200 et seq. ..............................1, 8, 9

Business & Professions Code § 17200 .....................................................................10

California Code of Civil Procedure § 335 and 338(d)................................................14

California Code of Civil Procedure § 338 ..................................................................2

**Rules**

12 C.F.R. § 560.2 ......................................................................................................10

12 C.F.R. §226.32(a)(1).............................................................................................16

12 C.F.R. Section 545.6-12(b) ..................................................................................12

I:\CIVIL\AURORA LOAN SERVICES\Moore (42262)\Pld\BNC's Motion to Dismiss\BNC M2D.doc

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

### A.    Summary of Argument

Plaintiff is a borrower who defaulted on a loan that for which BNC provided the origination funds.  After defaulting on the loan, Plaintiff seeks to avoid his obligations by claiming misconduct by the defendants.

Plaintiff has couched his claims with state law headings but in reality the complaint falls under federal lending statutes.  Plaintiff conceded in his unsuccessful attempt to remand this matter to state court that his federal claims were barred by applicable statutes of limitations. (*See* Plaintiff's Ex Parte Motion to Remand, P.5, Lines 10-14.  *"A fact which BNC does not mention in its notice of removal, but which is germane to this issue of federal question, is the fact that TILA's, RESPA's, and the Fair Debt Collection Practices Act statutes of limitation, up to three years, have expired."*) Plaintiff's ill-fitted state law claims are afflicted by the same timing defect in addition to other fatal shortcomings.  Consequently, all of Plaintiff's claims against defendant BNC fail as a matter of law.

Plaintiff's Complaint stumbles in the course of its first step. The claim for "declaratory relief" is unsuited to the alleged dispute.  A request for declaratory relief is to afford a new form of relief, not to furnish a litigant with another cause of action for the determination of identical issues. *General of America Inc. Co. v. Lilly*, 258 Cal. App.2d 465, 470 (1968).  In the first claim, Plaintiff asks the court to decide issues which are addressed in claims four and five.  (*See* Complaint ¶¶52, 53, 54, 70, 77, 87.)

The second claim argues that *California Business and Professions Code* § 17200 et seq., unfair business practices is the pertinent law.  As Plaintiff admitted, the statute of limitations for the applicable federal laws is three years and the time frame within which Plaintiff should have filed the complaint has expired. Further,

1  BNC is a federally regulated financial institution.[1] Therefore, federal preemption

2  applies and federal lending laws must referee the dispute.

3      Plaintiff's third claim for fraud and fourth claim for unconscionability are

4  based on the same allegations.  Plaintiff alleges that "Defendant sought the [sic]

5  charge plaintiff inflated and unlawful fees." (*See* Cplt. ¶77.) The fraud claim fails

6  because of the three year statute of limitations and because it is not plead with

7  particularity. *California Code of Civil Procedure* § 338. The alleged fraudulent

8  activity happened in September 2004 which was more than three years before this

9  Complaint was filed on January 5, 2008.

10      Plaintiff's fourth claim for "unconscionability" is nearly incomprehensible.

11  The claim that, "The September 2004 BNC promissory note was

12  incomprehensible, filled [sic] legalese and filled with mumbo-jumbo" does not

13  give rise to any legal claim. Viewed in the most favorable light, the claim seems to

14  suggest that the terms of the loan are what make the contract unconscionable.

15  Again, Plaintiff's attempt to use a state law to regulate the finance charges and

16  alleged misconduct at loan origination fails.  Such claims are completely

17  preempted by *The Homeowners' Loan Act* 12 U.S.C. §§1461 et seq. Nonetheless,

18  even if state law did apply this loan is not unconscionable because the terms are

19  not unreasonably favorable to BNC.

20      The fifth claim for contractual breach of the covenant of good faith and fair

21  dealing is based on defendants' conduct as "outlined in the second, third and

22  fourth causes of action." (*See* Cplt. ¶89.)   The covenant of good faith and fair

23  dealing imposes an obligation on the parties to discharge their contractual

24  obligations fairly and in good faith. *Mundy v. Household Fin. Corp.*, 885 F.2d 542,

25  544 (9th Cir.1989) (citing *Koehrer v. Superior Court*,181 Cal.App.3d 1155, 1169,

26  226 Cal.Rptr. 820, 828 (1986)).   BNC's duty under the contract was to fund the

27

28

---

[1] BNC Mortgage, LLC was an operating subsidiary of Lehman Brothers Bank, FSB.

1  loan.  Plaintiff admits receiving the loan proceeds and making payments for two

2  years. (*See* Cplt. ¶37.)

3          Plaintiff's [seventh] claim for accounting fails because BNC is not the

4  current owner, nor servicer of the loan.  In reality this entire Complaint is based

5  upon a case of borrower's remorse which arose more than two years into the

6  transaction after Plaintiff had defaulted on his obligations.  BNC's motion to

7  dismiss should be granted in its entirety because Plaintiff's claims against BNC

8  fail as a matter of law.

9          **B.    Summary of Allegations**

10         Plaintiff obtained a $302,600 loan for which BNC provided the origination

11 funding. (*See* Cplt. ¶31.) Plaintiff alleges that he was contacted by Kevin Caylor

12 ("Caylor") of Stirling Funding Corporation ("Stirling") in September 2004,

13 regarding refinancing his home.  Caylor allegedly represented that Stirling could

14 refinance Plaintiff's home with a lower interest rate and a lower monthly payment.

15 (*See* Cplt. ¶16.)

16         While obtaining the refinancing, Plaintiff was provided initial disclosures

17 which reflected the terms that Caylor had allegedly represented to Plaintiff in their

18 discussions. (*See* Cplt. ¶¶18, 19.)  Thereafter, Caylor informed Plaintiff that the

19 loan had been approved. (*See* Cplt. ¶20.)  On September 23, 2004, Plaintiff signed

20 the **final** loan documents in the presence of a notary.  Plaintiff alleges that he was

21 given insufficient time to review the documents but that he signed them

22 nonetheless. (*See* Cplt. ¶26.)  The **final** Truth in Lending Disclosure accurately

23 reflects the loan which Plaintiff received.  Plaintiff signed and acknowledged each

24 disclosure statement and accepted the loan.  He accepted the adjustable rate

25 feature, the fees and costs and more than $19,000.  Interestingly though the

26 Plaintiff is only claiming that the fees, costs and rate were excessive. (See Cplt.

27 ¶26, ¶22 - Exhibit "3.")   A deed of trust encumbering Plaintiff's property located

28

---

I:\CIVIL\AURORA LOAN SERVICES\Moore (42262)\Pld\BNC's Motion to Dismiss\BNC M2D.doc

at 1258 Duffy Way, Brentwood, California (the "Property") and securing the loan was recorded on or about October 1, 2004. (*See* Cplt. Exhibit "6.")

Plaintiff made $2,268.02 monthly mortgage payments for two years. (*See* Cplt. ¶¶22, 37.) Ultimately, during 2007, Plaintiff failed to make the full monthly mortgage payments based upon the supposedly unexpected rising interest rate. (*See* Cplt. ¶37.) In August, 2007, the loan servicer, J.P. Morgan Chase Bank, N.A. ("J.P. Morgan"), instituted foreclosure proceedings because of the default. (*See* Cplt. ¶38.)

On December 31, 2007, the eve of the foreclosure sale, Plaintiff purported to tender his notice of intent to rescind the loan under TILA to BNC. Five days later, Plaintiff filed this lawsuit against BNC, and others. Plaintiff alleges in the Complaint that the payments and the interest rate were higher than what Caylor said and the initial disclosure documents reflected they would be. (*See* Cplt. ¶¶18, 19, 22.)

Plaintiff also claims that the loan he received violated the Homeowners Equity Protection Act (HOEPA). (*See* Cplt. ¶¶ 34, 35.) Plaintiff further alleges that the loan contained inaccurate and excessive finance charges. (*See* Cplt. ¶¶ 26, 33). Plaintiff alleges that the three day Notice of Right to Cancel required by TILA was defective. According to Plaintiff the notice that he received did not state the date of the transaction or the date by which the three day rescission period terminated. (*See* Cplt. ¶ 28). Plaintiff concludes that pursuant to Regulation Z, Section 226.32(e)(3) "the Defendants are thereby culpable for the acts of each other. Any successors in interest are subject to this HOEPA and Regulation Z provision." (*See* Cplt. ¶36.) Defendant BNC was subsequently served with Plaintiff's Complaint and retained counsel.

# ARGUMENT

## II.    PLAINTIFF CANNOT MAINTAIN A CLAIM FOR DECLARATORY JUDGMENT AGAINST BNC

### A.    The Claim For Declaratory Judgment Fails Because BNC Has No Interest In The Property

BNC provided the Plaintiff's loan origination funds.  BNC also serviced the loan from origination until the service transferred on October 18, 2004.  The Notice was issued on November 9, 2007.  (See Cplt. Exhibit 1.)  As identified on the face of the Notice, NDEx West LLC is the duly appointed Trustee.  BNC is nowhere mentioned in the Notice.  BNC has not held an interest in the Plaintiff's mortgage since October 18, 2004.  The current beneficiary of the loan is LaSalle Bank National Association, trustee for structured asset investment loan trust (SAIL) 2004-BNC2.  BNC cannot be held liable for a document for which it has no interest or responsibility.  This claim against BNC fails.

### B.    Plaintiff's Claim For Declaratory Judgment Is Duplicative And Improper

Generally, an action in declaratory relief will not lie to determine an issue which can be determined in the underlying tort action.  *California Ins. Guarantee Ass'n v. Superior Court*, 231 Cal. App.3d 1617, 1623, (1991).  Plaintiff's claim does not raise a single issue that is not addressed within at least one of the other five claims.

> "The object of declaratory relief is to afford a new form of relief where needed and not to furnish the litigant with a second cause of action for the determination of identical issues." *General of America Inc. Co.* 258 Cal. App.2d at 470.  "Under section 1061 of the Code of Civil Procedure the court may refuse to exercise the power to grant declaratory relief where such relief is not necessary or proper at the time under all of the circumstances.  The availability of another form of relief that is adequate

---

1    will usually justify refusal to grant declaratory relief..." *Girard v. Miller*,

2    214 Cal. App.2d 266, 277 (1963).

3    The Plaintiff's claim for declaratory judgment requests two things.  First,

4    that the Plaintiff's loan be found void and subject to rescission. (See Cplt. ¶54.)

5    This request is unnecessary because Plaintiff asked for the same determination in

6    the fraud claim and the unconscionability claim.  (See Cplt. ¶¶69, 72, 77, 78.)

7    Second, that the Notice of Trustee Sale ("Notice") be negated. (See Cplt. ¶55.)

8    The second request is also duplicative as it is covered in the unfair business

9    practices claim. (See Cplt. ¶¶63, 64.)

10    **C.    The Claim For Declaratory Judgment Relies On Federal Lending**

11    **Laws That Are Barred As A Matter Of Law**

12    Plaintiff's declaratory judgment claim is grounded upon alleged violations

13    of The Federal Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1666j, and 15

14    U.S.C. § 1692a(6), the Federal Fair Debt Collection Practices Act ("FDCPA").

15    However, neither of these acts can help the Plaintiff.  The TILA claim is barred as

16    a matter of law because the complaint was filed after the three year statute of

17    limitations had passed.  Plaintiff entered into the loan on September 23, 2004, and

18    did not file the Complaint until January 5, 2008.   The FDCPA claim fails because

19    the FDCPA only applies to debt collectors and BNC does not qualify as a debt

20    collector under the FDCPA's definition.

21    **1.    Plaintiff's Claim That BNC Failed To Comply With TILA**

22    **Fails Because it is Time Barred**

23    Plaintiff alleges that, "[BNC] failed to comply with the disclosure

24    provisions of the Federal Truth in Lending Act.  They failed to comply with the

25    disclosure provisions of the Homeowner Equity Protection Act, a part of the Truth

26    in Lending Act."

27    TILA addresses disclosures required to be given by a lender to a borrower at

28    the time the mortgage is obtained.   TILA actions for rescission or damages

---

**BNC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

I:\CIVIL\AURORA LOAN SERVICES\Moore (42262)\Pld\BNC's Motion to Dismiss\BNC M2D.doc

1  commence at the time of the disclosure violation, i.e. when the loan was

2  consummated.  15 U.S.C. §§ 1635(f), 1640(e); *Hubbard v. Fidelity Federal Bank*,

3  91 F.3d 75, 79; 96 Cal. Daily Op. Serv. 5478 (1996); *King v. Cal.* 784 F.2d 910,

4  913 (9th Cir. 1986); *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 417-19, 118

5  S.Ct. 1408 (1998) (TILA limitation periods are absolute such that TILA rights

6  expire at the end of the term, there is no tolling).

7       A TILA action for damages must be brought within a maximum of one year

8  and a TILA action for rescission must be brought within a maximum of three years

9  from the loan transaction. 15 U.S.C. §§ 1635(f), 1640(e); and see, Hubbard 91

10 F.3d at 79 (1996).

11      Plaintiff's allegations focus on the loan origination which occurred during

12 September 2004.  However, the Complaint was not filed until over three years

13 later in January 2008.  Consequently, any action for damages or for rescission is

14 time barred because Plaintiff's statute of limitations expired no later than

15 September 2007, which was several months before the Complaint was filed.

16           **2.    The FDCPA Does Not Apply Because BNC Is Not A Debt**

17                **Collector And Is Excluded From The FDCPA By The**

18                **Creditor Exemption**

19      Plaintiff erroneously alleges that BNC is a debt collector and thus subject to

20 the FDCPA.  A debt collector, as defined by 15 U.S.C. § 1692a(6), means any

21 person who "regularly collects or attempts to collect, directly or indirectly, debts

22 owed or due or asserted to be owed or due to another." Pursuant to 15 U.S.C. §

23 1692a(4), a creditor is "any person who offers or extends credit creating a debt or

24 to whom a debt is owed..." **The creditor exemption under 15 U.S.C. § 1692a(6)**

25 **states that creditors collecting their own consumer debts and the creditors**

26 **officers or employees collecting debts on the creditor's behalf are not debt**

27 **collectors.** (Emphasis added).  Therefore, the FDCPA regulates debt collectors

28 rather than creditors. *Thomas v. Law Firm of Simpson & Cyback*, 392 F.3d 914,

---

BNC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

I:\CIVIL\AURORA LOAN SERVICES\Moore (42262)\Pl\BNC's Motion to Dismiss\BNC M2D.doc

916-917 (7th Cir.2004). Generally, the creditor exemption should be resolvable on a motion to dismiss. *Showalter v. Chase Manhattan/Providian,* (ND Cal, Aug. 19, 2005, No. C 05-00548 WHA) 2005 WL 2000943.

Here, BNC is alleged to be a debt collector. (*See* Cplt. ¶7.) However, no specific facts are included in the allegation. Instead, the Complaint admits that BNC funded the loan. (*See* Cplt. ¶4.) BNC is thus excluded from the FDCPA by definition because the creditor exemption provides that a creditor who attempts to collect in its own name cannot be held liable under the FDCPA. *Aubert v. American Gen. Fin.,* 137 F.3d 976 (7th Cir.1998); *Maguire v. Citicorp Retail Services,* 147 F.3d 232 (2d Cir.1998). Therefore, Plaintiff fails to state a claim against BNC under the FDCPA.

## III.  PLAINTIFF'S UNFAIR BUSINESS PRACTICES CLAIM AGAINST BNC FAILS AS A MATTER OF LAW

The Complaint argues that *California Business and Professions Code* § 17200 et seq. are the statutes which govern the Defendants' alleged unlawful, unfair or fraudulent business act or practice. Yet the Complaint cites federal lending laws as Plaintiff's basis for recovery.

The Complaint contains fatal miscalculations. First, the Plaintiff cannot rely on state law to win its case because the state law in this area is all preempted by federal lending laws. Second, the plaintiff cannot rely on federal lending laws because the applicable statutes of limitations are all three years. The Plaintiff previously admitted that the three year statute of limitations for the federal laws had expired. (*See* Plaintiff's Ex Parte Motion to Remand, P.5, Lines 10-12.) The Plaintiff further stated that, "Jim Moore could not bring causes of action under these statutes even if he wanted to, which he does not." (*See* Plaintiff's Ex Parte Motion to Remand, P. 5, Lines 13-14.) Third, even if Section 17200 et seq. is applicable BNC did not commit any act which was unfair, unlawful or fraudulent.

1  **A.    Plaintiff's Unfair Business Practices Claim Against BNC Is Based**
2  **On Federal Laws And Therefore Fails**

3  The basis for Plaintiff's unfair business practices claim is the violation of
4  federal lending laws.  Without these allegations, there is no claim for alleged
5  unfair business practices.

6  BNC was an operating subsidiary of Lehman Brothers Bank, FSB when it
7  provided the origination funding and serviced the loan.  BNC serviced the loan
8  from the origination date, September 24, 2004, through October 18, 2004.  Federal
9  Savings Banks are regulated by the Federal Office of Thrift Supervision ("OTS"),
10 the Federal Regulations promulgated by the OTS, and the Federal Home Owner's
11 Loan Act ("HOLA").

12 Plaintiff's state law claims are based on the alleged excessiveness of finance
13 charges and alleged misconduct at loan origination.  Such claims are completely
14 preempted.  The Homeowners' Loan Act ("HOLA"), 12 U.S.C. §§1461 et seq.,
15 expressly preempts state laws that limit the amount of finance charges that may be
16 assessed by federally regulated institutions such as BNC.  Id. at § 1463(g)(1).
17 HOLA also provides the exclusive remedy for borrowers who believe a federal
18 thrift has assessed excessive finance charges, whereby "the person who paid it
19 may recover, in a civil action," certain monetary and other relief.  Id. at §
20 1463(g)(2).

21    **1.    Plaintiff's Reliance On *California Business and Professions***
22        ***Code* §§ 17200 et seq. Is Flawed Because § 17200 Is**
23        **Preempted By Federal Lending Laws**

24 Cases and authorities hold on demurrer and summary judgment that
25 *Business and Professions Code* § 17200 and other state law claims attempting to
26 regulate or impose liability based upon loan servicing and practices are preempted
27 by the federal scheme applicable to federal savings banks.  Section 560.2 of Title
28 12 of the *Code of Federal Regulations* expressly preempts state laws which might

1  otherwise apply to federal savings bank loans including the loan terms, deferral,
2  interest, balances, payments due, insurance, loan fees, late charges, prepayment
3  penalties, escrow impounds, and credit reporting.

4  In *Washington Mutual Bank, FA v. Sup. Ct.*, 95 Cal.App.4th 606, 115
5  Cal.Rptr.2d 765 (2002), home owners commenced a class action against a federal
6  bank alleging that its practice of charging a day's pre-closing interest violated state
7  laws and constituted unfair business practices under *Business & Professions Code*
8  § 17200. Consistent with the clear weight of authority, the Court of Appeal held
9  that as a matter of law Plaintiffs' state law and 17200 claims were preempted by
10  HOLA and the Regulations promulgated thereunder, e.g. 12 *C.F.R.* § 560.2,
11  applicable to federal savings and loan associations and federal savings banks. *Id.* at
12  615, 619, 775. Thus the court upheld the bank's demurrers on this ground. *Id.* at
13  626, 780.

14  The reason for Federal preemption is that Congress has expressly enacted
15  HOLA together with the Regulations by the OTS which **expressly occupy the**
16  **entire field of loans by federal savings banks** for purposes of uniformity among
17  the states. The court in Washington Mutual began its explanation by setting forth
18  Section 560.2 in pertinent part as follows:

19  In 1996, OTS, pursuant to the broad rule-making
20  authority granted by the HOLA, promulgated 12 Code of
      Federal Regulations section 560.2 which provides as
21  follows:

22  "(a) Occupation offield. ... To enhance safety and
23  soundness and to enable federal savings associations to
      conduct their operations in accordance with best
24  practices (by efficiently delivering low-cost credit to the
25  public free from undue regulatory duplication and
      burden), OTS hereby occupies the entire field of lending
26  regulation for federal savings associations. OTS intends
27  to give federal savings associations maximum flexibility
      to exercise their lending powers in accordance with a
28

uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities...For purposes of this section, `state law' includes any state statute, regulation, ruling, order or judicial decision.

(b)    Illustrative examples. ...the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose regulations regarding: (2)...mortgage insurance...; (4) The teens of credit, including amortization of loans and the deferral and capitalization of interest..., balance, payments due, ...including the circumstances under which a loan may be called due and payable...; (5) Loan-related fees,...late charges, prepayment penalties, servicing fees...; (6) Escrow accounts, impound accounts...; (8) ...credit reports; (9) Disclosure...billing statements...;    (10)    Processing,    origination, servicing...mortgages..."

Id. at 615-16, 771-72. The court in *Washington Mutual* went on to explain:

In creating a system of federal savings and loan associations, "Congress could have elected to subject the operation of federal associations to state law."...Instead, Congress gave the OTS "plenary authority over the creation and operation of federal associations."...As the HOLA makes clear, federal savings and loan associations are not to be operated and regulated by what a particular state conceives to the "best practices."...Rather, the [OTS] was delegated by Congress the authority to select from the prevailing practices in all states what it deemed the best practices and to prescribe a nationwide system of operation, supervision, and regulation which would apply to all federal associations."

Id. at 617-18, 773 (citing to *Glendale Federal Sav. & Loan Ass'n v. Fox*, 459 F.Supp. 903, 909 (C.D.Cal. 1978)).    The court also found that, just because a

---

**BNC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

11

federal regulation did not address the precise issue raised by the plaintiffs, it does not mean that the state law is not preempted since the federal act and regulations expressly occupy the entire field. Id. at 620, 725.; and see, *Lopez v. World Savings and Loan Assn.*, 105 Cal.App.4th 729, 738 (2003).

Other cases are in accord. In the analogous *Glendale* case, supra, the U.S. District Court held that state regulation of the validity of "due-on-sale" clauses contained in loan instruments of federal banks was preempted by federal law, and that summary judgment on this ground was proper. *Glendale Federal Say. & Loan Ass'n*, 459 F.Supp. at 912. The Glendale court cited to a number of other decisions:

> As the Court of Appeals for the Ninth Circuit has stated, "(P)ursuant to its valid statutory authority, the Federal Home Loan Bank Board has promulgated comprehensive regulations covering all aspects of every federal savings and loan association `from its cradle to its corporate grave.' *People of State of Cal. v. Coast Federal Savings and Loan Ass'n*, S.D.Cal., 1951, 98 F.Supp. 311, 316." *Meyers v. Beverly Hills Federal Savings and Loan Ass'n*, 499 F.2d 1145, 1147 (9th Cir. 1974).

Glendale, at 910. The court further noted:

> The Ninth Circuit has taken the position that Congress, in the HOLA, delegated to the Bank Board the authority to regulate the operations of federal savings and loan associations to the exclusion of state regulation. In Meyers, the court addressed the issue whether a Bank Board regulation specifically covering the area of prepayments of real estate loans, 12 C.F.R. Section 545.6-12(b), exempted federal associations from California law dealing with prepayment penalties. The court held that "federal law preempts the field..., so that any California law in this area is inapplicable to federal savings and loan associations operating within California." *Meyers*, 499 F.2d at 1147.

1   *Glendale*, at 911. Courts have also considered situations in which the parties

2   expressly agreed to certain terms in the context of federal preemption. *Pacific*

3   *Trust Co. v. Fidelity Federal Sav. & Loan Ass'n,* 184 Cal.App.3d 817, 823-24, 229

4   Cal.Rptr. 269, 273-74 (1986)(the court found that federal regulation of prepayment

5   penalties preempted any conflicting state limitation and, in any event, parties to the

6   promissory note expressly and unquestionably intended the bank to be able to

7   charge the prepayment penalty upon default and acceleration.)

8       In this case, Plaintiff's unfair business practices claim attempts to regulate

9   BNC's origination and past servicing of the loan. Plaintiff's claim is preempted by

10  the HOLA and the broad scope of the Federal Regulations that occupy the entire

11  field of BNC's participation. Plaintiff's unfair business practices claim fails as a

12  matter of law for the previously stated reasons. BNC's Motion must be granted

13  with prejudice.

14          **2.    Plaintiff's §17200 Claim Also Fails Because It Is Vague**

15      "A plaintiff must state with reasonable particularity the facts supporting the

16  statutory elements of the violation [under 17200]." *Khoury v. Maly's of*

17  *California, Inc.,* 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993). In order for

18  the act to be deemed "unlawful," it must be shown that it is a "business practice

19  and that at the same time is forbidden by law." *Id.*; *Walker v. Countrywide Home*

20  *Loans, Inc.*, 98 Cal.App.4th 1158, 1169-1170, 121 Cal.Rptr.2d 79 (2002). Unfair

21  business practices under Section 17200 applies to ongoing conduct, relief is not

22  available to remedy past conduct. *Mangini v. Aerojet-General Corp.*, 230

23  Cal.App.3d 1125, 1155-56 (1991).

24      Here, Plaintiff makes numerous allegations about statements Stirling and

25  Caylor allegedly made to Plaintiff which induced Plaintiff to accept the

26  purportedly unfavorable loan terms. However, Caylor and/or Stirling's acts are

27  not attributable to BNC.    Each allegation in the Complaint regarding the

28

---

**BNC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

13

origination of this loan involves Caylor not BNC.   BNC did not commit any act which was unfair, unlawful or fraudulent.

Nonetheless, the conduct complained of happened around the time that the loan was originated which is past conduct and not ongoing.  These allegations do not meet the requirements set forth in Section 17200 because they refer to past conduct.  Section 17200 does not provide relief for past conduct.  BNC's motion to dismiss Plaintiff's claim for unfair business practices must be granted with prejudice.

## IV.    PLAINTIFF'S FRAUD CLAIM FAILS AS A MATTER OF LAW

The Plaintiff's third claim alleges that BNC acted fraudulently when it failed to comply with the disclosure provisions of the Homeowner's Equity Provision Act ("HOEPA") and by allegedly misrepresenting the terms of the loan. (See Cplt. ¶69.)  Unfortunately for the Plaintiff these claims are also defective.

### A.    Plaintiff's Fraud Claim is Time Barred

Plaintiff alleges that the defendants committed fraud leading up to and at the time the loan was originated in September, 2004.

The statute of limitations for a fraud claim is three years.  *California Code of Civil Procedure* § 335 and 338(d).  Plaintiff s claim is barred by the statute.

> "The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows:  Within three years: An action for relief on the ground of fraud or mistake.  The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Cal. Code Civ. Proc.* § 335 and 338(d).

Plaintiff's fraud claim fails as a matter of law because he filed his Complaint in January, 2008, which was over three years after the fraud allegedly happened.  Plaintiff claims he was promised a certain interest rate and payment and neither one was what he obtained.  He knew the alleged difference in his

1  payment at the time he signed the documents or at the latest when he made his first

2  payment on November 1, 2004. (*See* Cplt. Exhibit 5, ¶3.)

3       Plaintiff also alleges that BNC committed fraud by misstating the numbers

4  in the notice of sale. However, BNC did not prepare the Notice of Sale.

5       **B.    Plaintiff's Fraud Claim Fails Because It Lacks Specificity**

6       Pleading a cause of action for fraud requires specific allegations of the what,

7  how, where, by whom, to whom, and by what means the alleged representations or

8  concealments were made.   *Stansfield v. Starkey*, 220 Cal.App.3d 59, 73 264

9  Cal.Rptr. 337, 345 (1990).  When asserting fraud against a corporation, a plaintiff

10 must also specifically allege the names of the persons, their authority to speak, to

11 whom they spoke, what they said or wrote, and when it was said or written.

12 *Tarmann v. State Farm Mutual Automobile Insurance Company*, 2 Cal.App.4th

13 153, 157, 2 Cal.Rptr.2d 861, 862-63 (1991); *Williams v. WMX Technologies, Inc.*,

14 112 F.3d 175, 178 (5th Cir. 1997) (Rule 9 requires "the plaintiff to allege the who,

15 what, where and when of the alleged fraud.").

16       No such specifics are provided in the Complaint. The Plaintiff's fraud claim

17 is based upon the events which led up to the birth of this loan.  The only party

18 involved during that time was Caylor.  Caylor was an agent of Stirling therefore

19 Stirling is implicated as well.  Additionally, the Complaint identifies Caylor as the

20 person who contacted Plaintiff about a refinancing loan.  Caylor is also identified

21 as an officer or representative of Stirling Funding, not BNC. (*See* Cplt. ¶16.) The

22 Complaint explains that **based upon Caylor's presentation Plaintiff agreed** to

23 refinance through Stirling Funding. (*See* Cplt. ¶16.) Caylor is the party identified

24 as having advised Plaintiff on the loan terms as well. (*See* Cplt. ¶17.) As Plaintiff

25 stated he had decided to accept the loan prior to when BNC entered the picture.

26       BNC's involvement is not raised until Plaintiff received the initial loan

27 disclosure documents.  Then the Complaint states that Caylor, Stirling and BNC

28 advised Plaintiff on the loan's interest rate.  However, not a single person other

---

**BNC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

I:\CIVIL\AURORA LOAN SERVICES\Moore (42262)\Fil\BNC's Motion to Dismiss\BNC M2D.doc

1 | than Caylor is mentioned in this entire colloquy.  It appears Plaintiff has included
2 | BNC in the fraud claim simply because BNC provided the initial loan disclosure
3 | documents.  However, that act alone is not fraudulent behavior.  BNC's business
4 | was to provide loan funding and services loans.  A vital step of that process is to
5 | provide disclosure documents.  Further, the information on the second set of
6 | documents did accurately reflect the terms which Plaintiff received.

Plaintiff does correctly state that BNC provided the origination funding for the loan, however, simply providing funding is not fraudulent.  Additionally, the Complaint invents a relationship between BNC and Caylor that does not exist. The only imaginable purpose for doing so is because it would allow the Plaintiff to include BNC in this claim when otherwise it would not be permitted.  Yet, Plaintiff does not describe how he came to believe that Caylor represented BNC and in fact specifically stated, "Stirling was the loan broker in this matter.  Kevin Caylor was the loan broker agent in this matter." (*See* Cplt. ¶5.)  Plaintiff cannot allege a relationship existed for the sole purpose of including a greater number of defendants under a particular claim.  For all of the above reasons the fraud claim is deficient and BNC's Motion should be granted.

## C.    Plaintiff's HOEPA Claim Fails As To BNC Because The Loan Did Not Qualify As A High Cost Loan

Plaintiff alleges that, "[t]he September 23, 2004 loan was also governed by The Homeowner's Equity Protection Act, HOEPA, 15 U.S.C. §1602 et seq... Defendants never provided to the plaintiff the notice that this loan transaction was covered by HOEPA." (*See* Cplt. ¶¶34, 35.)  The Complaint goes on to describe the parameters within which a loan will fall under HOEPA regulations.

However, the Complaint inaccurately describes those parameters. Plaintiff's loan was not covered by HOEPA.   HOEPA concerns high cost loans. (15 U.S.C. §1602(aa); 12 C.F.R. §226.32(a)(1).)  This loan did not qualify under HOEPA as reflected in Exhibit "3" of the Complaint.   In the Truth-In-Lending

1  Disclosure Statement, the annual percentage rate ("APR") of the loan was 9.186.
2  Nearly five percentage points below the 13% required to qualify as a HOEPA
3  loan.

4      Under HOEPA, the APR rate at the time the loan is originated is the rate
5  used, not the ceiling or cap adjustable interest rate which in this case is 15.225%.
6  (15 U.S.C. §1602(aa).) The Complaint mistakenly uses the cap interest rate as the
7  basis for its conclusion.

8  ## V.    PLAINTIFF'S UNCONSCIONABILITY CLAIM FAILS

9      Plaintiff's claim for unconscionability is based on two allegations. First, that
10  "Defendant sought the [sic] charge plaintiff inflated and unlawful fees." (*See* Cplt.
11  ¶77.) Second, that the "The September 2004 BNC promissory note was
12  incomprehensible, filled [sic] legalese and filled with mumbo-jumbo." Plaintiff
13  attempts to support his contentions by stating that the defendants misrepresented
14  the loan terms, charged inflated and unlawful fees, and attempted to seize
15  Plaintiff's home through a non-judicial foreclosure sale. All of which the
16  Complaint equates to proof that the loan contract was unconscionable. (See Cplt.
17  ¶ 77.) However, these are not the factors which determine unconscionability.

18      "Unconscionability has generally been recognized to include an absence of
19  meaningful choice on the part of one of the parties together with contract terms
20  which are unreasonably favorable to the other party." *Shadoan v. World Savings*
21  *and Loan Association,* 219 Cal. App. 3d 97, 102 (1990). The Complaint makes it
22  clear that the Plaintiff was not forced into this loan. Caylor allegedly contacted the
23  Plaintiff and made a sales pitch. The Plaintiff could have told Caylor he was not
24  interested. Additionally, Plaintiff admitted that at least two weeks went by before
25  Caylor told him his loan had been approved. Plaintiff had ample time to shop
26  around for a better deal. The simple fact is that Plaintiff accepted the terms, made
27  payments for two years, then defaulted and filed this suit.

28

1    Likewise, Plaintiff alleges that the defendants' threatening to foreclose if he

2  did not pay their fees was unconscionable. (See Cplt. ¶77.)  However, Plaintiff

3  admits that he did not make payments during 2007.  (See Cplt. ¶37.)  The

4  defendants were merely protecting their interest and taking action which was

5  expressly authorized by the terms which are standard to real estate loans in

6  California.  The fact is that Plaintiff could have obtained a mortgage loan from any

7  one of several mortgage lenders.   Plaintiff had ample meaningful choice.

8  However, none of this has anything to do with BNC.   BNC did not contact

9  Plaintiff, Caylor did.   BNC was contacted by Caylor in an attempt to secure

10  financing for Caylor's borrower, the Plaintiff.  Furthermore, BNC was no longer

11  involved in the servicing of Plaintiff's loan when the foreclosure proceedings

12  began.

13    Plaintiff does not allege that he qualified for better terms than what he

14  received.  Plaintiff also concedes that he had an opportunity to read the loan

15  documents, but alleges that he felt pressured to hurry so he did not read them.

16  Plaintiff cannot escape his own financial shortcomings under the subject mortgage

17  loan because he was not forced to accept the loan.  Plaintiff could have refused to

18  sign the loan documents or simply could have requested additional time to review

19  them.  Plaintiff cannot use a claim for unconscionability simply because he now

20  cannot afford the loan three years later.

21    Notably, Plaintiff also confirms that the terms disclosed in the second set of

22  documents, which he signed, did accurately reflect the loan he received.  (See

23  Cplt. ¶22.)  Accordingly, BNC's Motion must be granted.

24  ## VI.    PLAINTIFF'S CLAIM FOR CONTRACTUAL BREACH OF THE

25  ## COVENANT OF GOOD FAITH AND FAIR DEALING FAILS

26    Plaintiff's claim for contractual breach of the covenant of good faith and fair

27  dealing fails because Plaintiff fails to plead how BNC interfered with his right to

28  receive the benefits of the loan.

1    "The implied covenant imposes certain obligations on contracting parties as
2    a matter of law-specifically, that they will discharge their contractual obligations
3    fairly and in good faith." Mundy v. Household Fin. Corp., 885 F.2d 542, 544 (9th
4    Cir.1989) (citing Koehrer v. Superior Court,181 Cal.App.3d 1155, 1169, 226
5    Cal.Rptr. 820, 828 (1986)). "A plaintiff asserting a claim for breach of the implied
6    covenant of good faith and fair dealing must allege the following elements: (1) the
7    existence of a contract; (2) the plaintiff did all, or substantially all of the
8    significant things the contract required; (3) the conditions required for the
9    defendant's performance had occurred; (4) the defendant unfairly interfered with
10   the plaintiff's right to receive the benefits of the contract; and (5) the plaintiff was
11   harmed by the defendant's conduct." Carma Developers (California), Inc. v.
12   Marathon Development California, Inc., 826 P.2d 720, 2 Cal. 4th 342, 373 (1992).

13   Here, Plaintiff has failed to plead that BNC unfairly interfered with his right
14   to receive the benefits of the contract. Instead, Plaintiff jumbles together various
15   legal theories to erroneously conclude that BNC breached this covenant. Quite to
16   the contrary, Plaintiff concedes that he obtained that loan from BNC. The analysis
17   for BNC ends at that point because it no longer owns nor services the subject loan.
18   Any claim related to the purported wrongful foreclosure or accounting issues
19   should only be directed at the current beneficiary and/or loan servicer.

20   Plaintiff cannot allege that BNC somehow breached this covenant because
21   Plaintiff does not refute receipt of the loan proceeds, including the more than
22   $19,000 in cash back that Plaintiff received as part of the refinance transaction.
23   BNC fulfilled its contractual duty when it funded the loan. There is no breach of
24   this covenant.

25   ## VII.   PLAINTIFF'S LAST CLAIM FOR ACCOUNTING ALSO FAILS

26   Plaintiff's claim for an accounting as to BNC fails because BNC is not the
27   current owner, nor servicer of the loan. If properly requested, the current servicer
28   and/or beneficiary is under a separate legal duty to provide the information to

1    Plaintiff within 60 business days from receipt of the request pursuant to 12 U.S.C.

2    § 2605(e).  This claim should be dismissed as to BNC.

3    **VII.   CONCLUSION**

4          Based upon the foregoing, it is respectfully requested that BNC's Motion to

5    Dismiss Plaintiff's entire Complaint be granted without leave to amend.

6

7    DATED:  March 10, 2008                         HOUSER & ALLISON
                                                    A Professional Corporation
8

9                                                   /s/ Jeffrey S. Allison
10                                                  Eric D. Houser
                                                    Jeffrey S. Allison
11                                                  Starlet J. Japp
12                                                  Attorneys for Defendant,
                                                    BNC MORTGAGE, LLC,
13                                                  erroneously sued herein as BNC
                                                    MORTGAGE, INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **PROOF OF SERVICE**

2

STATE OF CALIFORNIA     )

3
                               ) ss.

COUNTY OF ORANGE       )

4

5
     I am employed in the County of Orange, State of California. I am over the age of eighteen and not a party to the within action. My business address is 9970 Research Drive, Irvine, California 92618.

6

7
     On March 10, 2008, I served the following document described as:

8

9
On the following interested parties in this action:

| | |
|---|---|
| Thomas Spielbauer, Esq.<br>THE SPIELBAUER LAW FIRM<br>Spielbauer Law Firm<br>1250 Oakmead Parkway, Suite 210<br>Sunnyvale, CA 94085<br>thomas@spielbauer.com<br>Ph: (408) 451-8499<br>Fax: (610) 423-1395<br>*Attorneys for Plaintiff* | Thomas Spielbauer, Esq.<br>THE SPIELBAUER LAW FIRM<br>Spielbauer Law Firm<br>50 Airport Pkwy<br>San Jose, CA 95110<br>thomas@spielbauer.com<br>Ph: (408) 451-8499<br>Fax: (610) 423-1395<br>*Attorneys for Plaintiff* |
| John Sorich, Esq.<br>Adorno Yoss Alvarado & Smith<br>1 MacArthur Pl Ste. 200<br>Santa Ana, CA 92707<br>(714) 852-6800<br>(714) 852-6899 - FAX<br>*Attorneys for Chase Bank* | Edward A. Treder<br>Law Offices of<br>ROBERT E. WEISS INCORPORATED<br>920 S. Village Oaks Drive<br>Covina, CA 91724<br>(626) 967-4302 Ext. 139<br>(626) 339-7103 - FAX<br>(909) 322-9944 - Mobile<br>etreder@rewlaw.com<br>*Attorneys for NDEx West, LLC* |

**[XX]** **VIA OVERNIGHT MAIL/COURIER -- CCP §§ 1013(c), 2015.5** (AS INDICATED IN ATTACHED SERVICE LIST) : By placing a true copy thereof enclosed in a sealed envelope, addressed as above, and placing each for collection by overnight mail service or overnight courier service.  I am readily familiar with my firm's business practice of collection and processing of correspondence for mailing with the processing of correspondence for overnight mail or overnight courier service, and any correspondence placed for collection for overnight delivery would in the ordinary course of business, be delivered to an authorized courier or delivery authorized by the overnight mail carrier to receive documents, with delivery fees paid or provided for, that same day for delivery on the following business day.

---

**BNC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1

1

[ ]    **VIA FIRST CLASS MAIL—CCP §§ 1013(a); 2015.5**: By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above, and placing each for collection and mailing on the date following ordinary business practices. I am readily familiar with my firm's business practice and collection and processing of mail with the United States Postal Service and correspondence placed for collection and mailing would be deposited with the United States Postal Service at Irvine, California, with postage thereon fully prepaid that same day in the ordinary course of business.

2

3

4

5

[ ]    **VIA FACSIMILE -- CCP §§ 1011, 2015.5**: By arranging for facsimile transmission from facsimile number (949) 679-1112 to the above listed facsimile number(s) prior to 5:00 p.m. I am readily familiar with my firm's practice of collection and processing of correspondence via facsimile transmission(s) and any such correspondence would be transmitted in the ordinary course of business. The facsimile transmission(s) was reported as complete and without error.

6

7

8

9

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct. Executed on March 10, 2008 at Irvine, California

10

11

12

Courtney Hershey

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**BNC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

2