1  ERIC D. HOUSER (SBN 130079)
   JEFFREY S. ALLISON (SBN 173620)
2  HOUSER & ALLISON
   A Professional Corporation
3  9970 Research Drive
   Irvine, California 92618
4  Telephone:  (949) 679-1111
   Facsimile:   (949) 679-1112
5
6  Attorneys for Defendants,
   BNC MORTGAGE, LLC, erroneously sued
7  herein as BNC MORTGAGE, INC.
8
9              UNITED STATES DISTRICT COURT
10             NORTHERN DISTRICT OF CALIFORNIA

11 JIM E. MOORE,                        ) Case No.: C 08-0350 SC
12                                      )
                  Plaintiffs,           )
13                                      ) DECLARATION OF LINDA
   v.                                   ) DENICOLA IN SUPPORT OF
14                                      ) DEFENDANT BNC'S OPPOSITION
                                        ) TO PLAINTIFF'S MOTION FOR
15 CHASE BANK; BNC MORTGAGE,            ) PRELIMINARY INJUNCTION
   INC.; NDEx West LLC; STIRLING        )
16 FUNDING CORPORATION; KEVIN           ) DATE: April 4, 2008
   CAYLOR; and DOES 1-20,               ) TIME: 10:00 a.m.
17                                      ) The Honorable Samuel Conti
                  Defendants.           ) Courtroom 1, 17th Floor
18                                      ) 450 Golden Gate Avenue
                                        ) San Francisco, CA 94102
19                                      )
20 ─────────────────────────────────────

21         **DECLARATION OF LINDA DENICOLA**

22     I, Linda DeNicola, declare as follows:

23     1.    I am a Senior Vice President of Quality Control with BNC Mortgage,

24 LLC. I have held this position for _1.4_ years. In my capacity as Senior Vice

25 President of Quality Control, I have custody and control of the business records of

26 BNC as they relate to the subject loan. The records of BNC are made and kept in

27 the ordinary course of business by persons who have a business duty to make such

28 records on behalf of BNC. The records are made at or near the time of the

---
DECLARATION FOR BNC'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
i

C:\Documents and Settings\ldenico\Local Settings\Temporary Internet Files\BNC_OppPI_Declaration.doc

1  occurrence of the events that are recorded. I have personally reviewed the records of BNC as they relate to the subject loan and have personal knowledge of the matters below. If called upon as a witness, I could and would testify competently as to the information contained in those records and below.

2. As a Senior Vice President of Quality Control for BNC, I have acquired an understanding and knowledge of the corporate structure of BNC. BNC is an operating subsidiary of Lehman Brothers Bank, FSB.[1] As Senior Vice President of Quality Control I have examined large numbers of loan origination files. I understand BNC's underwriting process including the factors that are measured when a loan application is submitted for consideration.

3. I have examined Plaintiff's loan origination file. A true and correct copy of the Truth in Lending Disclosure Statement dated September 15, 2004 is attached as **Exhibit "A."** A true and correct copy of the loan approval modification request for is attached as **Exhibit "B."** A true and correct copy of the payoff demand statement submitted by Wells Fargo Home Mortgage is attached as **Exhibit "C."** A true and correct copy of the payoff demand statement submitted by Irwin Home Equity is attached as **Exhibit "D."**

4. Attached as **Exhibits "F"** through **"M"** are true and correct copies of some of the documents which Plaintiff signed acknowledging the terms of the loan. These documents include the final Disclosure Statement, Promissory Note, Deed of Trust, Adjustable Rate Rider, Good Faith Estimate, Mortgage Broker Fee Disclosure, Loan-Closed End, and final Conditional Loan Approval. All of the documents attached bear Plaintiff James E. Moore's signature. The documents attached as **Exhibits "I"** through **"M"** reflect the interest rate, 2 year fixed rate term and adjustable rate feature of the loan. All of these terms were acknowledged in writing by Mr. Moore.

---

[1] BNC Mortgage, LLC was an operating subsidiary of Lehman Brothers Bank, FSB.

5. The September 15, 2004, "preliminary" statement reflects that Mr. Moore originally applied for a "2 year fixed" $271,807.46 loan. During the loan application process the amount Mr. Moore needed was modified to $302,600.00. The modification request was approved on September 23, 2004 by BNC.

6. The Preliminary Disclosure Statement was submitted before the loan application was reviewed by BNC's loan underwriting and approved. The payment amount in any disclosure statement is estimated whenever there is an adjustable rate component to the loan because of future interest rate increases or reductions.

7. The terms of the loan were based on Mr. Moore's low credit score and the total funds sought by Mr. Moore. Mr. Moore originally indicated that he wanted a loan for $271,807.46. The final loan amount was $302,600.00 which was substantially higher than the original amount sought as reflected in the preliminary Truth in Lending Disclosure Statement.

8. Mr. Moore needed the loan amount to be modified from $271,807.46 to $302,600.00 to cover the payoff of a preexisting first mortgage with Wells Fargo Home Mortgage in the amount of $224,651.50 and a preexisting second mortgage with Irwin Home Equity in the amount of $49,202.35. In addition, Mr. Moore received cash proceeds from the loan in excess of $19,000.00.

9. There is no contradiction or misrepresentation between the preliminary Truth in Lending Disclosure Statement dated September 23, 2004, and the "final" Truth in Lending Disclosure Statement dated September 23, 2004. The final statement reflects the actual loan program which Mr. Moore qualified for and received after the loan application and underwriting process.

10. The loan amount, the loan to value of the property, and Mr. Moore's financial information, including his credit score are all factors in considering loan approval. Mr. Moore's credit score was only 515 based upon his poor credit history. A true and correct copy of Plaintiff's credit report reflecting serious

delinquencies and foreclosure is attached as **Exhibit "E."** Mr. Moore's assertion that he somehow believed he would receive a 30 year fixed rate note at somewhere between 6.5 and 7.5% simply cannot be believed.

11. The "final" disclosure statement dated September 23, 2004, sets forth the initial monthly payment amount of $2,268.02 and the amount financed excluding loan fees and settlement charges. The statement further sets forth the fact that it is a two year fixed rate loan. Mr. Moore acknowledged his receipt of the final disclosure statement by signing the document.

12. The promissory note and the deed of trust Mr. Moore signed are the standard forms used in California. Mr. Moore initialed each page of the promissory note and deed of trust.

13. The promissory note at page one expressly states the following in bold: the payment is $2,268.02, that the interest rate Mr. Moore pays may change on the first day of October 2006, that the initial interest rate was 8.225%, and that the maximum interest rate may never be greater than 15.225%.

14. Mr. Moore also signed the Adjustable Rate Rider which sets forth the initial interest rate and the terms the rate would change.

15. Mr. Moore signed the Good Faith Estimate. The Good Faith Estimate set forth each fee including the broker fee of $5,995.00 and the mortgage broker fee paid by a lender in the amount of $4,539.00.

16. Mr. Moore signed the Statement of Loan-Closed End which sets forth the broker fee amount in the sum of $11,824.00.

17. Mr. Moore signed the final conditional loan approval. The final conditional loan approval sets forth the fee of $5,995.00 representing points paid on the loan and the yield spread premium in the amount of $4,539.00.

18. Attached as **Exhibit "N"** is a true and correct copy of the Notice of Right to Cancel signed by Mr. Moore. The Notice of Right to Cancel not only contains Mr. Moore's signature, it also contains the date of the transaction and

the date to cancel the transaction. The document which Mr. Moore signed states he acknowledged receiving 2 completed copies of the Notice of Right to Cancel.

19. Mr. Moore's claim that the loan is governed by the Homeowner's Equity Protection Act is incorrect. HOEPA concerns high cost loans. Mr. Moore's loan did not qualify under HOEPA as a covered loan. In Section 32 loan worksheet, the annual percentage rate ("APR") of the loan was 9.186. Nearly five percentage points below the 13% required to qualify as a HOEPA loan. Under HOEPA, the APR at the time the loan is originated is the rate used not the ceiling or cap adjustable rate which in this case is 15.225%. Mr. Moore mistakenly uses the cap interest rate to conclude that the loan is governed by HOEPA.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 13th day of March, 2008 at Lake Forest, California.

*Linda DeNicola*
Linda DeNicola

---

**DECLARATION FOR BNC'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

v