1  Thomas Spielbauer, Esq.
   SBN 78281
2  THE SPIELBAUER LAW FIRM
   1250 Oakmead Parkway, Suite 210
3  Sunnyvale, CA 94085
   (408)451-8499
4  Fax: (610)423-1395
   thomas@spielbauer.com
5
   Attorneys for Jim E. Moore, Plaintiff
6

7            **UNITED STATES DISTRICT COURT**
          **NORTHERN DISTRICT OF CALIFORNIA**
8

9   JIM E. MOORE,                          No. 3:08-cv-00350-SC

10                          Plaintiff.
                                           Contra Costa County Superior Court
11                                         No: MSC08-00040

12  v.s.
                                           **REPLY TO CHASE'S**
13                                         **OPPOSITION TO**
                                           **PRELIMINARY INJUNCTION**
14                                         **MOTION**

15  J. P. CHASE MORGAN BANK; BNC
    MORTGAGE, INC.;  NDEx West LLC;        Date: Friday, April 4, 2008
16  STIRLING FUNDING                       Time: 10:00 a.m.
    CORPORATION; and KEVIN                 The Honorable Samuel Conti
17  CAYLOR,                                Courtroom 1, 17th Floor
                                           450 Golden Gate Avenue
18                          Defendants.    San Francisco, CA 94102

19

20       Plaintiff Jim Moore submits this reply to the Opposition for a Preliminary

21  Injunction filed by defendant J.P. Chase Morgan Bank (CHASE).

22                          **CHASE'S ARGUMENTS**

23       CHASE'S opposition is similar to that argued by BNC.  CHASE's

24  opposition argues that there are no violations of California non-judicial

25  foreclosure law since the foreclosure notice posted the amounts that Chase

26  believes it was justified to.  Chase argues that any wrongdoing pertaining to the

27  loan transaction of September 2004 does not pass down to it (even if the loan is

28  declared void) and thus such determination cannot be the basis of prohibiting the

                                 -1-

1  foreclosure sale.  CHASE ignores the mandates of strict compliance under

2  California non-judicial foreclosure law.  CHASE also attempts to step into the

3  shoes of the trustee in this matter, NDEx West, even though it admits that it is a

4  servicer (and agent of LaSalle) and not the trustee.  Chase also ignores the

5  assignee liability under HOEPA.

6  **THE EVIDENCE MAKES SUCCESS LIKELY**

7  CHASE effectively concedes the merit of Jim Moore's complaint.  Chase

8  ignores the sworn statement of Mr. Moore as to the events which took place on

9  September 15, 2004 and again in his home on September 23, 2004.  CHASE does

10  not even address this evidence in its opposition.

11  The only evidence which establishes what occurred during September 2004,

12  and particularly on September 23, 2004, is the testimony of Jim Moore.  CHASE

13  has offered no evidence, or even commentary,  to the contrary.

14  The two critical witnesses to the September 23, 2004 signing event were

15  Jim Moore and BNC's signing agent, and notary, Denise Gonzalez.  It is Ms.

16  Gonzalez who would have been in a position to rebut some or all of Mr. Moore's

17  claims.  Noticeably, there is not a word to be heard from Ms. Gonzalez nor an

18  explanation for her silence.  Of course, then she would have to explain the blank

19  notice of the right to rescind she furnished to Jim Moore on behalf of BNC, which

20  is attached as exhibit 4 to the complaint.

21  The facts,  as presented by Jim Moore, is the only evidence surrounding the

22  September 2004 loan execution before this court.  This alone establishes, for the

23  purposes of this request for a preliminary injunction, that there is a strong

24  likelihood that he will succeed on the merits of his case.[1]

25  **STRICT COMPLIANCE**

26  CHASE ignores the concept of strict compliance mandated in California

27

28

[1] *Doren v. Salem* (1976) 422 U.S. 922, 931.

1    non-judicial foreclosure law.  A valid foreclosure by the private power of sale

2    requires *strict compliance* with the requirements of the statute.[2]

3        CHASE argues that the prior circumstances of the loan transaction, even

4    one which could cause the loan to be rescinded or declared void, has no effect on

5    its ability to foreclose.  As long as CHASE stated the amounts it believes it or

6    LaSalle is due, the requirements of California non-judicial foreclosure law have

7    been fulfilled, even if those amounts are subsequently found to be grossly

8    inaccurate.  That position does violence to the requirement that the notice of

9    trustee sale must include, among other information, an accurate statement of the

10   total amount of the unpaid balance of the obligation as well as a statement of the

11   costs, and  expenses, and advances incurred at the time of the initial publication of

12   the notice of sale.[3]  Inherent in this requirement is the fact that the notice must

13   contain an **accurate** statement of the total amount due.

14       CHASE argues that *Heart v. Anderson*[4] does not apply to this case since

15   Heart dealt with a notice of default, rather than trustee sale.  The *Heart* notice did

16   not warn Heart that there were delinquent taxes to be paid it argues, which is not

17   the case here.  This argument ignores the holding of *Heart v.  Anderson*[5] , that

18   holding being a re-iteration of the requirement of strict compliance and accuracy

19   as to the amounts being demanded.  The only way that CHASE's statement of the

20

21       [2] Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and
Mortgages, Chapter 10 §10.179; *Anderson v. Heart Federal Sav. & Loan Assn.*,
22   208 Cal. App. 3d 202, 211  (3d Dist. 1989), reh'g denied and opinion modified,
(Mar. 28, 1989); *Miller v. Cote* (4th Dist. 1982) 127 Cal. App. 3d 888, 894; *System
23   Inv. Corp. v. Union Bank* (2d Dist. 1971) 21 Cal. App. 3d 137, 152-153; *Bisno v.*
24   *Sax* (2d Dist. 1959) 175 Cal. App. 2d 714, 720.

25       [3] California Civil Code §2924f(b)(1); Miller & Starr, California Real Estate
26   (3d ed.), Deeds of Trust and Mortgages, Chapter 10 §10.198.

27       [4]  *Anderson v.  Heart Federal Savings* (1989) 208 Cal.App.3d 202.
28
         [5]  *Anderson v.  Heart Federal Savings* (1989) 208 Cal.App.3d 202.

1  unpaid balance and statement of the costs, and  expenses, and advances[6] can be

2  justified is by completely disregarding the sworn statement of Jim Moore and

3  accepting as verified fact the allegations of CHASE in its opposition.

4      CHASE cites to *Doherty v. Knapp*[7] in its argument that Strict Complaince

5  does not mean strict compliance.  Doherty involved an action <u>to set aside a</u>

6  <u>foreclosure sale</u>.  No foreclosure sale has occurred in this case.

7      In *Doherty*, the trustee recorded a notice of sale six days permaturely.  The

8  sale date, however, was nine days more than the minimum 20 days required under

9  California Civil Code §2924f(b).  The homeowners did nothing to prevent the

10  foreclosure sale even though they had actual notice of it.  After the foreclosure

11  sale, they sought to set aside the sale (as a part of an unlawful detainer defense)

12  due to the premature recording of the notice of trustee sale.  Given the

13  circumstances of the case, the Court found that the additional nine days

14  compensated for the premature six days.

15      After a foreclosure sale has occurred, California courts have been less

16  sympathetic to the trustor.  In *Doherty*, the property owner did not assert his rights

17  in a timely fashion, i.e., before the foreclosure sale. Jim Moore has acted

18  promptly.

19      Post foreclosure is indeed very late in the game.  Setting aside a foreclosure

20  sale is much more problematic than enjoining a sale.  Once a foreclosure sale has

21  occurred, the trustee (NDEx West) issues a trustee's deed upon sale, which is

22  effective as of 8:00 a.m. on the date of the sale, and which is recorded with the

23  County Recorder.  The purchaser at the trustee sale is granted special protection

24

25

26

27      [6] California Civil Code §2924f(b)(1); Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and Mortgages, Chapter 10 §10.198.

28      [7] *Doherty v. Knapp* (2004) 123 Cal.App.4th 76.

1    under law as a bona fide purchaser for value.[8]   The trustee sale is presumed to

2    have been conducted properly, and such presumption is <u>conclusive</u> as to a bona

3    fide purchaser for value.[9]  Thus the reluctance of the appellate courts to set aside a

4    sale for what could be argued to be minor and technical violations of California

5    non-judicial foreclosure law.  Indeed, had the property been truly important to the

6    trustor, he would have acted promptly rather than waiting for the property to go to

7    sale.  The *Doherty* Court was disturbed that the homeowners sat on their hands

8    and did nothing to protect their rights prior to the foreclosure sale, knowing of the

9    sale, and  acting for the first time weeks after the foreclosure sale had occurred.

10        CHASE also cites the case of *Lupertino v. Cabahal*[10] in its argument that

11    strict compliance does not mean strict compliance.  This citation is odd in light of

12    the fact that in *Lupertino*, the defendants did strictly comply with the non-judicial

13    foreclosure notice requirements.  In *Lupertino*, the trustors (homeowners) had

14    moved from Sunnyvale, California to Winters, California but failed to record with

15    the County Recorder of Yolo County a request for notice change of address as

16    provided in section 2924b of the Civil Code.  The foreclosed upon property was

17    located in Yolo County.  The *Lupertino* Court opined that the homeowners would

18    not be heard to  complain for lack of notice in a subsequent foreclosure sale when

19    the notices had been mailed to their prior Sunnyvale address.

20        CHASE also cites to *Lancaster Security Investment Corporation v.*

21    *Kessler*[11] in its argument that strict compliance does not mean strict compliance.

22

23

24        [8] *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830-832.

25        [9] Miller & Starr, Cal. Real Estate (3d ed.2000) § 10:211, p. 679.

26        [10] *Lupertino v. Cabahal* (1973) 35 Cal.App.3d 742.

27        [11]  *Lancaster Security Investment Corporation v. Kessler* (1958) 159

28 Cal.App.2d 649.

1   As in *Lupertino*, this citation is odd in light of the fact that in *Lancaster*, the

2   defendants did strictly comply with the non-judicial foreclosure notice

3   requirements.  In *Lancaster*, the trustors assigned, apparently informally, the

4   property to Lancaster Security.  Lancaster Security did not file a Request for

5   Notice under the provisions of California Civil Code §2924b.  The property

6   subsequently went to foreclosure sale.  As in *Lupertino*, the Court ruled that

7   Lancaster Security was not entitled to notice since it had not filed a Request for

8   Notice.

9        The results of *Lancaster* as well as *Lupertino* would clearly have been

10  different had the owners recorded the proper documentation with the County

11  Recorder.

12                                   **HOEPA**

13       HOEPA is a part of the Truth in Lending Act.  As argued in the Reply to

14  BNC's opposition, BNC's own documents establish that this is a HOEPA loan.

15  The basis of the HOEPA calculation is the ceiling rate of 15.225%.  *Short v. Wells*

16  *Fargo Bank et al.*[12] makes the basis of the HOEPA calculation the amount that Jim

17  Moore became legally obligated to pay at the time that he signed loan papers on

18  September 23, 2004.

19       The significance of this being a HOEPA loan is the fact that all subsequent

20  assignees take this loan subject to the claims and defenses that Jim Moore can

21  raise against all parties to this loan, from the originator to the current holder and

22  servicer of this loan.[13]

23                     **MANDATORY TELEPHONE NUMBER**

24       Chase argues that the mandate of California Civil Code §2924f(b)(1)

25  doesn't really mean what it says.  California Civil Code §2924f(b)(1) requires that

26

27       [12] *Short v. Wells Fargo Bank et al.* (2005) 401 F.Supp.2d 549.

28       [13] 15 U.S.C. §1641(d)(1).

1   the notice of trustee sale contain either a toll-free telephone number or a telephone

2   number in California of the Trustee.  The Notice of trustee sale merely contains a

3   sales telephone number of (714)573-1695 to Priority Posting which is an

4   automated sales information line.  Chase also questions Jim Moore's ability to

5   argue legislative intent, indicating that it was really okay with the California

6   Legislature to place a non-responsive automated telephone answering system

7   providing information to investors.  That is what it had in mind during the early

8   part of the twentieth century when this requirement was imposed upon trustees,

9   according to Chase.   Never mind the fact that during this time there were no

10  automated systems, let alone telephone answering machines, and no prospect of

11  such, when this became a legal requirement to trustee sale notices in non-judicial

12  foreclosure proceedings.

**BOND**

14      Chase requests, in its opposition, that Jim Moore be required to post a bond

15  in the amount of $50,000.  Chase will be harmed if such a bond is not posted, it

16  argues.  The reality of this bond request is to insure, by nook or crook, that no

17  injunction be issued.  Chase knows full well that Jim Moore cannot post such a

18  bond.  This was established in Mr. Moore's moving papers.

19      It is ludicrous to argue that Chase will be harmed, assuming that it even

20  could be.  Chase is one of the major financial institutions in the United States with

21  resources in the billions if not trillions of dollars.  A $50,000 bond is meaningless

22  to Chase, given its enormous and overpowering financial resources.

23      The truth is that Chase cannot be harmed.  Chase quickly points out that it is

24  a servicer.   It does not own this note.  It has no ownership interest.  LaSalle does.

25  Chase is in danger of losing nothing in this matter beyond its desired and unlawful

26  excesses in profit.

27      However, even if harm can somehow be argued, this harm is exactly what

28  Chase deserves for having involved itself in this and its other similar predatory

1  activities.  It knew what it was doing.  These greed-oriented actions have now

2  placed the entire United States economy at peril.  Chase, of course, neglects to

3  mention this.

4  **PRAYER**

5      For the reasons set forth in his moving papers, and in this reply, Jim Moore

6  requests that this Court issue a preliminary injunction and requiring no bond or in

7  an amount of $100.

8  Dated: March 21, 2008

9                  Respectfully Submitted
                THE SPIELBAUER LAW FIRM

10

11

12

13                  by Thomas Spielbauer, Esq.
                Attorney for Plaintiff, Jim Moore

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Thomas Spielbauer, Esq.
SBN 78281
THE SPIELBAUER LAW FIRM
1250 Oakmead Parkway, Suite 210
Sunnyvale, CA 94085
(408)451-8499
Fax: (610)423-1395
thomas@spielbauer.com

Attorneys for Jim E. Moore, Plaintiff

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JIM E. MOORE,<br><br>                              Plaintiff.<br><br>v.s.<br><br><br>J. P. CHASE MORGAN BANK; BNC MORGAGE, INC.;  NDEx West LLC; STIRLING FUNDING CORPORATION; and KEVIN CAYLOR,<br><br>                              Defendants. | No. 3:08-cv-00350-SC<br><br>Contra Costa County Superior Court No: MSC08-00040<br><br>REQUEST TO STRIKE DECLARATION OF S. CHRISTOPHER YOO<br><br>Date: Friday, April 4, 2008<br>Time: 10:00 a.m.<br>The Honorable Samuel Conti<br>Courtroom 1, 17th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |

   Plaintiff Jim Moore objects to S. Christopher Yoo's declaration in support

of J.P. Chase Morgan Bank's (CHASE'S)  Opposition and asks that this court

strike it in its entirety.

   Mr. Yoo's declaration is hearsay from beginning to end.  He attests that a

Broker's Price Opinion has been secured and attaches some kind of document to

his declaration, presumably from Zillow.com.  The "Zestimate" is not Mr.  Yoo's

opinion established after laying a proper foundation to r ender an opinion.  It is

instead a hearsay document from some unknown source.

   Even if Mr.  Yoo's declaration can get around the hearsay objection, there

is no foundation laid nor established for this Broker Price Opinion.  The lack of

1  identity of the authoring party has already been mentioned.  Even beyond this is

2  the lack of foundation for a Broker Price Opinion.

3      Voodoo is more reliable than a  Broker Price Opinion.  Brokers are not

4  qualified (assuming that a Broker did render the "Zestimate") to give reliable

5  evidence concerning the value of a piece  of property.  Their unfounded opinions

6  are based on "market comparables."  A broker listing a property for sale will

7  invariably come up with market comparables justifying a higher price whereas a

8  broker representing a potential buyer will come up with market comparables

9  justifying a much lower price.  Brokers do not have the expertise nor foundation

10  to render reliable forensic opinions concerning the value of property.  That is the

11  function of a real estate appraiser, someone who has undergone proper training to

12  make such evaluations, and is licensed by the California Department of Real

13  Estate to do so.

14      Indeed, it is most unfortunate that CHASE not only asks this court to accept

15  a Broker Price Opinion, but does so in a thoroughly hearsay fashion.

16      For the reasons set forth, Jim Moore requests that this court strike S.

17  Christopher Yoo's declaration as well as any references to his declaration and the

18  substance thereof in CHASE's Opposition.

19  Dated: March 20, 2008

20

21              THE SPIELBAUER LAW FIRM

22

23

24              by Thomas Spielbauer, Esq.
              Attorney for Plaintiff, Jim Moore

25

26

27

28

1  *Moore v. J. P. Chase Morgan Bank et Al.*
   Northern District of California Case Number 3:08-cv-00350-SC
2

3                        **CERTIFICATE OF SERVICE**

4        I, Thomas Spielbauer, declare:

5        I am a resident of Santa Clara County, California.  I am now, and at all times

6  herein mentioned was, over the age of eighteen years.  I am not a party to this

7  action.  My business address is 1250 Oakmead Parkway, Suite 210, Sunnyvale,

8  CA 94085.

9        On March 21, 2008, I filed electronically plaintiff's REPLY TO CHASE'S

10  OPPOSITION TO PRELIMINARY INJUNCTION MOTION and REQUEST TO

11  STRIKE DECLARATION OF S. CHRISTOPHER YOO via the Northern District

12  of California Court's website.

13        Counsel for BNC Mortgage, Inc., aka BNC Mortgage, LLC is a registered

14  user of the ECF for the Northern District of California Federal Court.  His name is

15  Eric D. Houser, Esq..  His email address of appears on the docket of this matter.

16        Counsel for J.P. Chase Morgan Bank aka J.P. Morgan Chase Bank is a

17  registered user of the Northern District of California Federal Court.  His name is

18  John M. Sorich, Esq..  His email address of appears on the docket of this matter.

19        Counsel for NDEx West is a registered user of the Northern District of

20  California Federal Court.  His name is Edward Treder, Esq..  His email address of

21  appears on the docket of this matter.  It should be noted that NDEx West filed a

22  declaration pursuant to California Civil Code §2924l in the Contra Costa Superior

23  Court at the time of or just prior to removal, on January 18, 2008.

24        Pursuant to Northern District General Order 45, the service of the

25  OPPOSITION TO MOTION TO DISMISS  was effected at the time of filing, and

26  notification by email to counsel by the ECF website.

27  //

28  //

1    I declare under penalty of perjury that the foregoing is true and correct to

2    the best of my knowledge.  Executed in San Jose, California this March 21, 2008.

3

4

5

6    Thomas Spielbauer

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28