United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIM E. MOORE,<br><br>        Plaintiff,<br><br>   v.<br><br>CHASE BANK; BNC MORTGAGE, INC.;<br>NDEX West LLC; STIRLING FUNDING<br>CORPORATION; KEVIN CAYLOR; and DOES<br>1-20,<br><br>        Defendants. | Case No. 08-0350 SC<br><br>ORDER DENYING<br>PLAINTIFF'S MOTION<br>FOR PRELIMINARY<br>INJUNCTION AND<br>GRANTING DEFENDANT<br>CHASE BANK'S MOTION<br>TO DISMISS |

## I. **INTRODUCTION**

This matter comes before the Court on the Motion for Preliminary Injunction filed by Plaintiff Jim Moore, Docket No. 19, and the Motion to Dismiss, filed by Defendant Chase Bank. Docket No. 12. Defendants BNC Mortgage, Inc. ("BNC"), and Chase Bank filed Oppositions to the Preliminary Injunction Motion, Docket Nos. 26, 28, and Plaintiff submitted Replies. Docket Nos. 32, 33. Plaintiff filed an Opposition to the Motion to Dismiss Chase Bank and Chase Bank submitted a Reply. Docket Nos. 20, 22. The Court held hearings on the Motion for Preliminary Injunction on April 4 and 7, 2008. After reviewing the parties' submissions and considering the parties' arguments at the hearings, the Court DENIES Plaintiff's Motion for Preliminary Injunction and GRANTS

Defendant Chase Bank's Motion to Dismiss with prejudice all claims with respect to Chase Bank.

## II. BACKGROUND

The present action arises out of Plaintiff's September 2004 refinancing of his home loan with Defendants. Plaintiff's original mortgage loan was with Wells Fargo in the amount of approximately $224,000. Denicola Decl. Ex. C.[1] In addition, Plaintiff had a preexisting loan with Irwin Home Equity for $49,202.35. Id. Ex. D. With his September 2004 refinance, Plaintiff also received cash proceeds of approximately $19,000. Id. ¶ 8. The total amount of Plaintiff's new, September 2004 loan, including fees, was $302,600. Id. Ex. L Statement of Loan - Closed End.

The essence of Plaintiff's claim is that he was misled into agreeing to the September 2004 refinance loan. Plaintiff alleges that Defendant Stirling Funding "cold-called" him and told him he was eligible for favorable interest rates if he wished to refinance his home mortgage. Notice of Removal, Docket No. 1, Ex. 1 Compl. ¶ 16. Plaintiff states that Defendants Stirling Funding

---

[1] Plaintiff filed a Request to Strike Declaration of Linda Denicola. Docket No. 32. Denicola is the Senior Vice President of Quality Control with Defendant BNC Mortgage and her declaration was submitted in support of Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction. Docket No. 27. Plaintiff's Request is GRANTED with respect to the following statement in Denicola's Declaration: "Mr. Moore's assertion that he somehow believed he would receive a 30 year fixed rate note at somewhere between 6.5 and 7.5% simply cannot be believed." Id. at 4. What Plaintiff may or may not have believed is not a fact based on personal knowledge about which Ms. Denicola is competent to testify. See Fed. R. Civ. P. 56(e). Plaintiff's Request to Strike Denicola's Declaration is otherwise DENIED.

2

and Kevin Caylor, an officer or representative of Stirling Funding, told him that they would be able to provide a 30-year, fixed-rate loan at between 6.5% and 7.5%. Id. ¶ 17. On September 15, 2004, these Defendants provided Plaintiff with a Truth in Lending Disclosure stating that the rate on Plaintiff's new mortgage would be 7.706% and the payments, over approximately 30 years, would be roughly $1960 per month.[2] Id. Ex. 2. Two weeks later, Plaintiff alleges that he was advised by these Defendants by telephone that he had been approved for this loan. Id. ¶ 20. One week after this phone call, a notary/signing agent came to Plaintiff's house with the loan documents, which Plaintiff signed. Id. ¶ 21. Plaintiff asserts that while he was signing the papers, the notary "was in a hurry and rushed [him] through the signing process." Id. ¶ 26. As a result, Plaintiff alleges that he did not realize that the loan he agreed to actually contained an initial adjustable rate of 9.186% with a ceiling rate of 15.225%.[3] Id. Ex. 5 Adjustable Rate Note.

It is clear from the documents submitted by the parties that Plaintiff signed and initialed all of the relevant paper work, including the new Truth in Lending statement containing the higher

---

[2] It is clear from the Truth in Lending Disclosure, and Plaintiff does not allege otherwise, that the Disclosure does not create any rights or liabilities. The second line from the top of the document states: "THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND." Compl. Ex. 2 (capitalization in original).

[3] There is some evidence, including testimony at the hearings, indicating that the initial rate of the loan was actually 8.225%. For purposes of this Order, whether the initial rate was 8.225% or 9.186% is not important. The Court therefore assumes that the initial rate was 9.186%.

3

1 interest rate and higher monthly payments, Denicola Decl. Ex. F,
2 the promissory note, id. Ex. G, deed of trust, id. Ex. H,
3 adjustable rate rider, id. Ex. I, good faith estimate, id. Ex. J,
4 statement of loan-closed end, id. Ex. L, the final conditional
5 loan approval, id. Ex. M, and the notice of right to cancel. Id.
6 Ex. N.[4]  Although Plaintiff alleges that these documents were
7 filled with "legalese and . . . mumbo-jumbo," Compl. ¶ 32, the
8 numerical terms of the loan are on clear display.  In addition,
9 the promissory note and the deed of trust are both the standard
10 forms used in California.  Denicola Decl. ¶ 12.

11 　　　　Plaintiff was able to make payments on this loan for almost
12 three years.  Since May 2007, however, Plaintiff has not made any
13 payments and has been in default.  Compl. ¶ 37; Defendant Chase
14 Bank's Opp'n at 2.  On November 20, 2007, a Notice of
15 Trustee's Sale was recorded with the Contra Costa Recorders
16 Office.  Def. Chase Bank's Request for Judicial Notice ("RJN"),
17 Docket No. 31, Ex. 3.[5]  On January 4, 2008, Plaintiff filed a
18 Complaint in the Superior Court of the State of California for

---

[4] Attached to Plaintiff's Complaint are copies of the Notice of Trustee Sale, the Truth in Lending Statements from September 15 and September 23, the Notice of the Right to Cancel, the Promissory Note, and the Deed of Trust. See Compl. None of the documents, save the Deed of Trust, is signed by Plaintiff. It is unclear whether this is intended to suggest that Plaintiff in fact did not sign most of the loan agreement documents. If so, not only has Plaintiff failed to make this highly relevant argument in his briefs, but these documents stand in stark contrast to those submitted by Defendants, all of which contain Plaintiff's signature or initials. For these reasons, the Court assumes that the operative documents are those submitted by Defendants.

[5] Defendant Chase Bank's Request for Judicial Notice of the Assignment of Deed of Trust, Substitution of Trustee, and Notice of Trustee's Sale is GRANTED. See Fed. R. Evid. 201.

4

1  Contra Costa County, alleging six causes of action: (1)
2  declaratory judgment for violations of California Civil Code §
3  2924 et. seq, which establishes protections and procedures for
4  valid foreclosure sales; (2) unfair business practices under
5  California Business and Professions Code § 17200; (3) fraud,
6  pursuant to California Civil Code § 1572; (4) unconscionability;
7  (5) breach of contract; and (6) accounting.  In addition,
8  Plaintiff obtained a temporary restraining order from the state
9  superior court prohibiting the foreclosure sale of his home.  Mot.
10 at 2.  Defendants subsequently filed a timely notice for removal.
11     Plaintiff now seeks a Preliminary Injunction staying the
12 foreclosure sale of his home pending the outcome of the
13 litigation.  See Mot. for Prelim. Inj. at 1.

### III. **PRELIMINARY INJUNCTION**

#### A.   **Legal Standard**

In the Ninth Circuit, a plaintiff seeking injunctive relief must show "either: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor."  A&M Records v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001).  These two alternatives "are not separate tests but the outer reaches of a single continuum."  Regents of Univ. of Cal. v Am. Broad. Cos., Inc., 747 F.2d 511, 515 (9th Cir. 1994).  "Essentially, the trial court must balance the equities in the exercise of its discretion."  Int'l Jensen, Inc. v. MetroSound U.S.A., Inc., 4 F.3d 819, 822 (9th Cir. 1993).

5

**B.   Analysis**

Plaintiff has failed to meet his burden of demonstrating either a "combination of probable success on the merits and the possibility of irreparable harm, or that serious questions are raised and the balance of hardships tips in its favor." A&M Records, 239 F.3d at 1013.  Although loss of one's home to a foreclosure sale is almost certainly an irreparable harm and most likely presents the possibility of significant hardship, Plaintiff cannot escape the fact that he signed the mortgage papers at issue in order to refinance his home loan.  His signature and initials appear on all of the necessary documents, including the truth in lending statement, Denicola Decl. Ex. F, the promissory note, id. Ex. G, deed of trust, id. Ex. H, and adjustable rate rider, id. Ex. I.  These documents expressly state the various interest rates Plaintiff would be charged.  See, e.g., id. Ex. G, Promisary Note and Ex. I, Adjustable Rate Rider (stating that Plaintiff's interest rate would be capped at 15.225% and providing a schedule, including the amount, for monthly payments).  All of these documents are either signed or initialed by Plaintiff.

Plaintiff nonetheless argues that a preliminary injunction is necessary because of two alleged statutory defects with the notice of default and the notice of trustee sale.  Pursuant to California Civil Code §§ 2924c(b)(1) and 2924f, a notice of foreclosure sale must contain, inter alia, "a statement of the total amount of the unpaid balance of the obligation secured by the property to be sold" and "either a toll-free telephone number or telephone number in this state of the trustee . . . ."

6

Plaintiff first argues that a preliminary injunction is necessary because the amount due as stated in the notice of trustee's sale was not accurate. Plaintiff's reasoning, however, is not persuasive. Plaintiff's sole argument for why the amount due in the notice of trustee sale was incorrect is that this amount is more than his initial loan. Plaintiff argues that because he had been making payments on the loan for more than two years, it is impossible for him to owe, as of November 20, 2007, $307,967, when his initial loan was only for $302,600. See RJN Ex. 3, Notice of Trustee Sale; Denicola Decl. Ex. L, Statement of Loan--Closed End.

Given the rate of interest on Plaintiff's loan, it is entirely possible that Plaintiff's loan obligation actually increased over the years even though he was making payments. As Plaintiff conceded at the April 4 hearing, for the first two years of the loan he had been making payments of roughly $1,950 per month. Thus, each year, Plaintiff's payments totaled approximately $23,400. Plaintiff's loan, however, was for $302,600 and the interest rate was 9.186%. Denicola Decl. Ex. L. Each year for the first two years the interest alone on Plaintiff's mortgage was $27,796.84 (9.186% of $302,600). As Plaintiff's total payments for each of these first two years was approximately $23,400, and the interest on the loan for each of these first two years was approximately $27,796.84, it is not hard to understand how Plaintiff's loan obligation is now greater than the initial loan. This is especially true given that Plaintiff has failed to make payments on his loan for the last 12 months.

7

The bare fact that the amount due in the notice of trustee sale was greater than the principal of Plaintiff's initial loan does not prove that this amount is incorrect.

This analysis was corroborated by Susan Ramirez, a witness for Chase Bank.  At the April 7 hearing, she testified that Plaintiff has been in default for 12 months.  The interest Plaintiff owes on these 12 months is $34,696.17.[6]  The remaining principal is $296,605.  Plaintiff's total loan obligation is now $331,302.

At the April 7 hearing, Plaintiff presented a witness, Patrick Pulatie, who testified as to what Plaintiff's loan obligation would be today if Plaintiff's loan were a 30-year fixed mortgage with an interest rate of 7.5%.  Even if Plaintiff had this loan, however, he would still owe, according to his own witness, $24,948 in back-payments alone.  Plaintiff's counsel represented that Plaintiff does not have the capacity to pay any of this amount already owed.

Even if there were some discrepancy between the number Plaintiff was told he owed and the actual number he owed, he has not alleged any prejudice.  First and foremost, as Plaintiff's own witness testified, if the Court were to somehow rewrite Plaintiff's loan so that it was a 30-year, fixed mortgage at 7.5%, Plaintiff would still have a total loan obligation of $314,000. Thus, even according to Plaintiff's best case scenario, he still

---

[6] This interest was calculated using the following rates: from May 2007 through October 2007, the rate was 11.225% and from November 2007 through April 2008 the rate was 12.225%.

8

owes more than what even Defendants initially estimated.

Given that, by Plaintiff's own calculations, he owes more than what Defendants initially stated, Plaintiff's failure to allege any prejudice is all the more glaring. Simply put, "[t]here is no evidence that [Plaintiff] was misled in any way by the Default Notice." Knapp v. Doherty, 123 Ca. App. 4th 76, 99 (Ct. App. 2004). "One of the signal purposes of the notice of default is to advise the trustor of the amount required to cure the default." Id. In the present case, any errors on the default notice "did not cause [Plaintiff] to act or fail to act in any way that [will] result[] in [his] loss of [his] property." Id. He has not alleged, for example, that he attempted to pay the amount due and was unable to because he did not know the actual amount he owed. Without even an allegation of prejudice, the Court will not intervene based on what may be, at most, a technicality.

Plaintiff also asserts that the trustee sale did not contain a toll free telephone number or the telephone number of a trustee in California, as required by § 2924f. This argument is also without merit. Plaintiff concedes that there was in fact a telephone number listed. See Compl. ¶ 53. Plaintiff argues, however, that because the number only connected to a recording, it did not satisfy § 2924f. Given that the statute does not specify whether a live person must be at the other end of the line, the Court will not create such a requirement. More importantly, Plaintiff has again failed to allege any prejudice. Plaintiff has not asserted, for example, that he tried to contact the trustee but was unable to because of a defective telephone number. To the

9

contrary, from all appearances, Plaintiff knew who to contact had he been willing or able to pay his loan obligations. This inference is only strengthened by the fact that Plaintiff was able to serve all of the Defendants when Plaintiff initiated the present law suit in state court.

Finally, Plaintiff argues that his mortgage loan is governed by the Homeowner's Equity Protection Act ("HOEPA"), 15 U.S.C. § 1602 et seq. In defining which mortgages are governed by HOEPA, § 1602 states:

> A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling . . . if--
> (A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity . . .; or
> (B) the total points and fees payable by the consumer at or before closing will exceed the greater of--
> (i) 8 percent of the total loan amount; or
> (ii) $400.

15 U.S.C. § 1602(aa)(1).

The parties apparently agree that the only way in which HOEPA could govern Plaintiff's loan is if the operative annual percentage rate is greater than 13%. Denicola Decl. ¶ 19; Pl.'s Reply at 4. Neither party discusses or analyzes the points and fees of the loan, and the Court therefore concludes that only subsection (A) of § 1602(aa) is applicable to the present controversy.

Plaintiff argues that because the maximum rate of his loan

10

was 15.225%, this rate is the controlling rate with respect to HOEPA. See Denicola Decl. Ex. G Promissory Note at 1. Defendants contend that the operative rate is the rate of the loan at the time the mortgage agreement was made, which in this case was 9.186%. See id. Ex. L Statement of Loan - Closed End.

The statutory language of § 1602 supports Defendants' position. Specifically, § 1602 states that it is the rate "at consummation of transaction" that controls. 15 U.S.C. § 1602(aa)(1). With respect to Plaintiff's loan, the rate at the time of consummation of the agreement was 9.186%. That the promissory note and other relevant documents contained a clause stating that the interest rate would never be greater than 15.225% does not change this. The only authority cited by Plaintiff in support of his position that the interest rate cap, rather than the actual rate at the time the agreement was consummated, should control is an opinion out of the Southern District of West Virginia. See Short v. Wells Fargo Bank, 401 F. Supp. 2d 549 (S.D.W. Va. 2005). This case, however, is inapplicable to the present controversy, as it concerned subsection (B) of § 1602(aa) and did not address subsection (A). See id. at 562 (stating "[i]n order to trigger HOEPA in this case, the total points and fees must exceed 8% of" the loan amount); see also id. at 556 (discussing only 15 U.S.C. § 1602(aa)(1)(B)). For these reasons, the Court finds that Plaintiff's loan is not governed by HOEPA.[7]

Plaintiff's allegation that he was rushed into signing the

---

[7] It is not clear, and Plaintiff provides no indication, of what benefit Plaintiff might gain were his loan governed by HOEPA.

11

loan documents and that he was prejudiced because the documents contained "mumbo jumbo and legalese" is simply insufficient to overcome the stark fact that he signed the various agreements, thereby binding himself to their terms. This is especially true given Plaintiff's prior experiences with mortgages. Furthermore, the Court finds that Defendants complied with the relevant foreclosure statutes. For these reasons, Plaintiff's Motion for Preliminary Injunction is DENIED.

## IV.   MOTION TO DISMISS

### A.   Legal Standard

Although Defendant Chase Bank's Motion is styled as a Motion to Dismiss, it is, in reality, a Motion for Summary Adjudication. See Fed. R. Civ. P. 56(d) (stating "[i]f, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as none for summary judgment under Rule 56"). In the present action, both parties rely on numerous documents and declarations outside of the pleadings.

Entry of summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Thus, "Rule 56(c) mandates the entry of summary judgment

12

1 . . . against a party who fails to make a showing sufficient to
2 establish the existence of an element essential to that party's
3 case, and on which that party will bear the burden of proof at
4 trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In
5 addition, entry of summary judgment in a party's favor is
6 appropriate when there are no material issues of fact as to the
7 essential elements of the party's claim.  Anderson, 477 U.S. at
8 247-49.

### B. Analysis

Plaintiff's first cause of action is for declaratory relief pursuant to California Civil Code § 2924f.  For the reasons stated above, this claim fails against Chase Bank.

Plaintiff's second cause of action is for unfair business practices pursuant to California Business and Professions Code § 17200 et seq., and § 17500 et seq.  "California's unfair competition statute prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" In Re Pomona Valley Med. Group, 476 F.3d 665, 674 (9th Cir. 2007) (citing Cal. Bus. & Prof. Code §§ 17200, et seq.).  "This tripartite test is disjunctive and the plaintiff need only allege one of the three theories to properly plead a claim under section 17200."  Med. Instrument Dev. Labs. v. Alcon Labs., CV 05-1138, 2005 WL 1926673, at * 5 (N.D. Cal. Aug. 10, 2005).  It is unclear which prong or prongs of § 17200 Plaintiff alleges against Chase. The Court therefore addresses all three.

Under the fraudulent theory of § 17200, courts have held that it is necessary to "show deception to some members of the public

13

interest," <u>Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.</u>, 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001), or allege that "members of the public are likely to be deceived . . . ." <u>Med. Instrument Labs.</u>, 2005 WL 1926673, at *5 (internal quotation marks omitted). Plaintiff has failed to raise any material issues of fact in support of his claim of fraudulent behavior under § 17200.

Under the unfair theory of § 17200, 'unfair' "means conduct that threatens an incipient violation of an anti-trust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." <u>Cel-Tech Communications Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 187 (Ct. App. 1999). Plaintiff has failed to raise any material issues of fact regarding unfair conduct by Chase under § 17200.

Under the unlawful theory, a plaintiff must allege "practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court made." <u>Saunders v. Sup. Ct.</u>, 27 Cal. App. 4th 832, (Ct. App. 1994). In the present case, Plaintiff alleges that Chase violated California Civil Code §§ 2924c and 2924f. For the reasons stated above, Plaintiff has failed to raise material issues of fact regarding these predicate claims. Plaintiff's § 17200 claim under the unlawful theory therefore also fails.

Plaintiff's third cause of action is for fraud. "The elements of fraud are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or

14

scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damages." Charnay v. Cobert, 145 Cal. App. 4th 170, 184 (Ct. App. 2006) (internal quotation marks omitted). In addition, Federal Rule of Civil Procedure 9(b) requires all fraud allegations be plead with particularity.

Plaintiff alleges that Chase Bank committed fraud by "falsely stating in their notice of sale that the reasonable estimate of costs, expenses, and advances is $307,967.68 on a loan principal of $302,600," Compl. ¶ 71, and thereby attempting to "mislead and defraud [P]laintiff by requiring him to pay sums of money which he . . . does not owe." Compl. ¶ 72.

Plaintiff's fraud claim against Chase not only fails to allege the elements of scienter, intent to defraud, and justifiable reliance, but also lacks the requisite particularity. Thus, the fraud claim fails against Chase Bank.

Plaintiff's fourth cause of action is for unconscionability. Plaintiff alleges that the mortgage agreement he entered into with Defendant BNC is unconscionable. Plaintiff concedes, however, that he has not entered into a contract with Chase Bank. Chase Bank was not a party to the initial mortgage agreement. The Deed of Trust ("DOT") encumbering Plaintiff's property, as recorded pursuant to the terms of the mortgage agreement now at issue, identifies Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominal beneficiary and Defendant BNC as the lender. Compl. Ex. 6. The DOT was subsequently assigned to LaSalle Bank National Association as trustee for the structured asset

15

investment loan trust (SAIL) 2004-BNC2.  RJN Ex. 1 Assignment of Deed of Trust.  A Substitution of Trustee for the DOT was later recorded naming Defendant NDEX West as the trustee.  RJN Ex. 2. As there is no agreement between Chase Bank and Plaintiff, Plaintiff's claim of unconscionability against Chase Bank fails as a matter of law.

15 U.S.C. § 1641(f) supports this conclusion.  Section 1641(f) states:  "A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation."  Nothing in the record indicates that Chase Bank is anything but the loan servicer.  Dismissal of Plaintiff's unconscionability claim against Chase Bank is therefore proper.

Plaintiff's fifth cause of action for contractual breach of the covenant of good faith and fair dealing against Chase Bank fails for the same reason: there is no agreement between Plaintiff and Chase Bank.

Plaintiff's sixth cause of action is for accounting. Specifically, Plaintiff seeks a detailed description of all of his financial obligations in relation to the loan at issue.  At the hearing, it was determined that Plaintiff's current loan obligation is $331,302.[8]  Thus, Plaintiff's cause of action for accounting against Chase Bank is moot.

Finally, as noted above, Plaintiff has not made any payments

---

[8] This figure is explained in detail in section III.B., <u>supra</u>.

16

on his mortgage since May 2007. Plaintiff has been living rent-free for 12 months. At the hearing held on Friday, April 4, Plaintiff conceded that he has not set aside any money for the payments that he owes in the event a judgment were rendered in his favor. Plaintiff also conceded that he is unable to make any back-payments for the period during which no payments were made. In essence, Plaintiff asks the Court to waive his mortgage obligations for the last 12 months. Such a request is beyond what the Court is able or willing to do.

## V. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's Motion for Preliminary Injunction and GRANTS Defendant Chase Bank's Motion to Dismiss with Prejudice Plaintiff's action against Defendant Chase Bank. Defendant Chase Bank's Motion to Strike the Complaint, Docket No. 13, is MOOT.

IT IS SO ORDERED.

Dated: April 7, 2008

_____
UNITED STATES DISTRICT JUDGE

17